Law Clerk's Copy

(21)

Copy

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                           :
                                          :
    **Plaintiff**                         :
                                          :
    v.                                    :    **No.  1:00-CV-00577**
                                          :    **(Judge Kane)**
W. CONWAY BUSHEY, <u>et al.</u>,          :
                                          :
    **Defendants**                        :

FILED
HARRISBURG, PA

JUL   3 2000

MARY E. D'ANDREA / CLERK
Per _____
    Deputy Clerk

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR ADEQUATE ACCESS TO COURTS

### STATEMENT OF RELEVANT FACTS

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 alleging claims under the First, Eighth and Fourteenth Amendment to the United States Constitution.  The allegations in the complaint stem from alleged unlawful misconducts, grievances,  and conditions of confinement that affected plaintiff while he was incarcerated at various state correctional institutions.  The complaint also alleges that officials of the Pennsylvania Department of Corrections ("DOC") and the Pennsylvania Board of Probation and Parole (hereinafter the "Board") have engaged in other conduct to deny plaintiff's constitutional rights.

Plaintiff, Charles Iseley is a <u>pro se</u> prisoner currently incarcerated at the State Correctional Institution at Coal Township ("SCI-Coal Township").  Defendants are numerous employees or former employees of the Pennsylvania Department of Corrections, who are or were employed at the State Correctional Institution at Rockview ("SCI-Rockview"), the State Correctional Institution at Mahanoy ("SCI-Mahanoy"), and officials at DOC's headquarters located in Camp Hill, Pennsylvania.  Also named as defendants are employees of the Board.

On March 14, 2000, plaintiff was transferred from SCI-Mahanoy to SCI-Coal Township; the transfer occurred approximately five months after he filed the instant complaint.  On May 8, 2000, undersigned counsel received a letter from plaintiff advising her that he had been transferred to SCI-Coal Township and that he had not received his excess property that contained his legal materials. Plaintiff also noted that these materials were being held at SCI-Mahanoy in retaliation for exercising his constitutional rights.  Counsel immediately contacted Carol Dotter, Assistant to the Superintendent and litigation coordinator at SCI-Mahanoy, and requested that she verify the status of Iseley's property held in storage at SCI-Mahanoy.  (See Declaration of Dotter attached as Exhibit "A", ¶10).

Dotter informed counsel that Iseley had approximately 10 boxes in storage and that the boxes were not shipped to him because at the time of his transfer he had insufficient funds in his inmate account.  (See Declaration of Dotter, ¶9).  Under DOC policy, an inmate may ship only two boxes of his property on the bus/van.  (See Declaration of Dotter, ¶4).  Inmates are permitted to ship additional boxes of excess property by the least common carrier available to the receiving institution or to an address outside the prison system chosen by the inmate at the inmate's expense.  (See Declaration of Dotter, ¶5.)  Although Iseley claimed that he had previously submitted a cash slip for shipment of the boxes, no cash slip could be located at that time.  (See Declaration of Dotter, ¶11).

On May 9, 2000, counsel notified Iseley that his boxes were held in storage at SCI-Mahanoy because at the time of his transfer he had inadequate funds in his inmate account to mail the boxes. Counsel also informed Iseley that is if wished to have the boxes mailed to him at SCI-Coal Township, he must send a cash slip to Dotter.

-2-

Counsel received a letter from Iseley dated May 16, 2000, acknowledging receipt of the May 9, 2000 letter, and claiming that he completed a cash slip prior to his transfer from SCI-Mahanoy to SCI-Coal Township. Iseley informed counsel that he would send another cash slip to Dotter's attention. He further noted that if he did not receive his property by May 22, 2000, he would petition the court to intervene.

On June 6, 2000, undersigned counsel contacted Dotter concerning receipt of the cash slip from Iseley for shipment of the boxes and to see if any cash slips of Iseley's were ever located. (See Declaration of Dotter, ¶16). Dotter informed counsel the following day that Iseley's cash slip from March was found on June 7, 2000, under one of Iseley's boxes. Undersigned counsel directed that Iseley's property be sent to him at SCI-Coal Township as soon as possible. (See Declaration of Dotter, ¶18). Iseley's property was mailed to him on June 8, 2000, and he received his property on June 12, 2000.

**RELEVANT PROCEDURE HISTORY**

Iseley filed this action originally in the United States District Court for the Eastern District of Pennsylvania on October 29, 1999. The case was transferred to the United States District Court for the Middle District of Pennsylvania by order dated February 23, 2000. Defendants answered the complaint on May 30, 2000. Prior to defendants' answering the complaint, plaintiff filed a Motion for Adequate Access to the Court on May 22, 2000. He filed a supporting brief with his motion. On June 9, 2000 defendants filed a motion for an enlargement of time to respond to that motion based upon the fact that Iseley received the relief sought and that he may withdraw the motion thus saving judicial resources from deciding a moot motion. Defendants' enlargement of time was

granted by this Court on June 26, 2000. Iseley has not withdrawn his Motion for Adequate Access

to the Court. This brief is filed in opposition to that motion.

## QUESTION PRESENTED

I.    **WAS PLAINTIFF DENIED ADEQUATE ACCESS TO THE COURTS?**

II.   **SHOULD THE MOTION BE DISMISSED BECAUSE THE RELIEF SOUGHT HAS BEEN GRANTED AND THE MATTER IS MOOT ?**

## ARGUMENT

I.    **PLAINTIFF WAS NOT DENIED ADEQUATE ACCESS TO THE COURT BECAUSE HE HAS NO ACTUAL INJURY**

The Supreme Court in Lewis v. Casey, 518 U.S. 343, 351-352 (1996), expressly held that

an inmate alleging a denial of access to the courts must show actual injury. The Court determined

that an inmate alleging denial of access to the courts "must go one step further and demonstrate that

the alleged shortcomings hindered his efforts to pursue a legal claim." Id. Inmates may demonstrate

actual injury by showing his complaint was dismissed or that he was unable to file a claim. Id.

In Lewis, inmates of various prisons operated by the Arizona Department of Corrections,

brought a class action against prison officials alleging that the prisoners had inadequate research

facilities and therefore were deprived of their right of access to the courts in violation of the First and

Fourteenth Amendments. The Court disagreed. It held that the requirement where an inmate is

alleging a violation of the right to access to the courts, the inmate must show actual injury. The

Court explained that this showing of an actual injury derives from the doctrine of standing, a

constitutional principle that prevents courts of law from undertaking tasks assigned to the political

branches.  The Court noted meaningful access to the courts is the touchstone and therefore,  the

inmate must take the additional step and show the alleged shortcomings actually hindered his efforts

to pursue a legal claim. Under Lewis, the inmate must point to evidence of actual or imminent

interference with access to the courts - - for example, that a complaint he prepared was dismissed

for failure to satisfy some technical requirement, that he could not have known, or that he suffered

arguable harm that he wished to bring before the courts, but was so stymied that he could not file a

complaint. Id.

The Third Circuit followed this reasoning one year later in a class action filed by inmates

alleging denial of access to the courts. See Reynolds v. Wagner, 128 F.3d 166 (3d Cir. 1997).  In

Reynolds the court  held that since the inmates utterly failed to point to any evidence of direct injury

to the courts, their First Amendment challenge failed.

Here, plaintiff alleges that he has been denied access to the courts because he had not

received his property which contained legal materials allegedly for retaliatory reasons by prison

officials.  Specifically Iseley claims that he has been "absolutely barred from access to any of my

legal material and from performing research to file documents with any citation/case law or to serve

documents to opposing party." Iseley's claim fall short of the standard as enunciated by the Lewis

Court in that he  fails to state  how he was actually injured by filling documents without

citations/case law, or not being able to perform research.[1]  Iseley makes no mention of any filing

deadline being  missed, that a complaint or motion was dismissed or that his efforts to pursue a legal

---

[1]SCI-Coal Township contains a law library, which is available to all inmates in general
population.  Inmates in the Restricted Housing Unit have a mini-law library available for their
use.

claim were hindered. Plaintiff has failed to identify what documents could not be served to opposing parties or how he was actually injured by the delay of his excess property.

Moreover, plaintiff was notified on May 9, 2000 by undersigned counsel that in order to receive his boxes of excess property, plaintiff must send a cash slip to the attention of Dotter at SCI-Coal Township. Plaintiff responded to counsel that while he did fill out a cash slip prior to his transfer, he would send another slip to Dotter. Iseley never submitted another cash slip to Dotter. (See Dotter declaration, ¶15).

Although plaintiff's first cash slip was subsequently found under some boxes, and the boxes were shipped on June 8, 2000, plaintiff could have received his property weeks earlier, if he would have simply filled out another cash slip. He chose not to do so, thereby causing additional delay. Therefore, in light of plaintiffs failure to demonstrate any actual injury in the delay of the shipment of his excess property, coupled with his own conduct, the motion should be denied.

## II.    THE MOTION BE DENIED BECAUSE THE RELIEF SOUGHT HAS BEEN GRANTED AND THE MATTER IS MOOT

It is well-settled that a moot claim should not be addressed by a federal court. A case is moot if it raised a justiciable controversy at the time it was filed, but events occurring after the filing cause the parties to no longer have a live controversy. DeFubis v. Odegaard, 416 U.S. 312 (1974). Due to Iseley receiving the boxes of his excess property at SCI-Coal Township, he has received precisely the relief sought -- his excess property. Therefore, because Iseley received the property he sought, the motion should be denied as moot.

## CONCLUSION

Fore the foregoing reasons, Plaintiff's Motion For Adequate Access to the Courts

should be dismissed.

Respectfully submitted,

**D. MICHAEL FISHER**
**Attorney General**

By: _____
      **MARYANNE M. LEWIS**
      **Deputy Attorney General**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

**Office of Attorney General**
**15th Flr., Strawberry Sq.**
**Harrisburg, PA  17120**
**FAX:  (717) 772-4526**
**Direct Dial:  (717) 787-9719**

**DATE: July 3, 2000**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                              :
                                             :
            Plaintiff                        :
                                             :
      v.                                     :        No.  1:00-CV-00577
                                             :        (Judge Kane)
W. CONWAY BUSHEY, et al.,                    :
                                             :
            Defendants                       :

## UNSWORN DECLARATION OF CAROL DOTTER

I, **Carol Dotter**, hereby declare under the penalty of perjury that the following statements

are true and correct and based upon my personal knowledge.

1.      I have been employed by the Pennsylvania Department of Corrections (hereinafter

the "Department" ) since August 1987.

2.      I have been employed in the capacity of Assistant to the Superintendent at the State

Correctional Institution at Mahanoy, ("SCI-Mahanoy") since March 1993.  In that capacity, I have

access to all records maintained by the institution in the course of regularly conducted business.

3.      As Assistant to the Superintendent, I am familiar with the standard operating policies

and procedures followed at SCI-Mahanoy and the Department.  I also serve as the  litigation

coordinator between the institution and the Pennsylvania Office of Attorney General.

4.      Under the Department policy, an inmate may ship two boxes on the bus/van.  These

boxes are transported along with the inmate on the bus/van that is transporting the inmate to the

receiving institution.  The inmate has the responsibility to select the property he wishes to be shipped

with him. The two boxes limit is because of the limited space available on the bus/van.  Inmates are

permitted one additional box beyond the two box limit to transport a television set.

*Exhibit "A"*

5.     Exceptions to the number of boxes is not permitted. The inmate is permitted to ship the additional boxes of his excess property by the least expensive common carrier available to the receiving institution or to an address outside the prison system chosen by the inmate at the inmate's expense.

6.     Inmates are required to be financially responsible for the costs incurred for shipping excess property from one institution to another by common carrier. It would be financially burdensome to require SCI-Mahanoy to incur the cost of shipping excess property of 2000 inmates incarcerated at the institution each time an inmate is transferred from the institution.

7.     I am familiar with Charles Iseley, AM 9320 ("Iseley").

8.     On March 14, 2000. Iseley was transferred from SCI-Mahanoy to the State Correctional Institution at Coal Township ("SCI-Coal Township").

9.     Iseley's property which exceeded the permitted amount was inventoried and packaged for storage in the storage room at SCI- Mahanoy because Iseley had insufficient funds to pay for shipping the property to SCI-Coal Township at the time of his transfer.

10.     Because of complaints Iseley made in his federal litigation regarding his excess property, on May 8, 2000, Deputy Attorney General, Maryanne Lewis, contacted me and requested that I verify the status of Iseley's property held in storage at SCI- Mahanoy and whether Iseley completed a cash slip to send the property to SCI-Coal Township.

11.     I contacted the property room on May 8, 2000 and spoke to Sgt. McGrady, who informed me that Iseley had approximately 10 boxes in storage, and that the boxes were not shipped because he had not paid to have them shipped. Sgt. McGrady informed me that a cash slip would be

-2-

needed to ship the boxes to Iseley at SCI-Mahanoy.  No cash slip was located among the boxes at that time.

12.    I then checked the inmate accounting system and learned that Iseley's boxes were not shipped to him because at the time of his transfer his account contained  insufficient funds.  I also verified that no deduction for the boxes had been made to Iseley's account for the boxes.

13.    I contacted Ms. Lewis and informed her that Iseley's account did not reflect that he was charged for the shipment of his boxes.  Although Iseley claimed he had previously submitted a cash slip, I suggested that if he would reissue another cash slip and send it to my attention, I would personally make certain that the boxes would be sent to him.

14.    Ms. Lewis informed me that she would notify Iseley in writing that he needed to submit a cash slip to pay for the shipment of the boxes.  (See letter dated May 9, 2000 address to Iseley , attached as Exhibit "A" ).

15.    Since the date of her letter, Ms. Lewis has called me numerous times to inquire if I had received a cash slip from Iseley.  To date, I have not received a cash slip from Iseley.

16.    On June 6, 2000. Ms. Lewis contacted me concerning receipt of Iseley cash slip.  She also requested that I again check with the property room to see if any cash slips of Iseley could be located.

17.    On June 7, 2000, I was informed by Sgt. Arthur Meyers that a cash slip signed by Iseley dated March 13, 2000 was found under the third box of his eleven boxes of excess property.  Apparently, the cash slip was not visible nor kept in the ordinary course and prevented its initial detection by prison officials.

-3-

18.      I immediately informed Ms. Lewis that a cash slip dated March 13, 2000 had been located, and that Iseley's inmate account currently had sufficient funds to pay for the postage of the boxes.

19.      Ms. Lewis directed that Iseley's property be sent to him at SCI-Coal Township as soon as possible.

20.      Thereafter, I contacted the property room and directed that they prepare Iseley's boxes for shipment and notified the mail room that the boxes were to be sent to Iseley at SCI-Coal Township and that the shipping amount should be deducted from his inmate account.

21.      Iseley property was mailed to him at SCI-Coal from SCI-Mahanoy on June 8, 2000.

6/8/00
**DATE**

*Carol Dotter*
**CAROL DOTTER**
**Assistant to the Superintendent**

-4-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                          :
                                         :
    Plaintiff                    :
                                         :
    v.                           :        No. 1:00-CV-00577
                                         :        (Judge Kane)
W. CONWAY BUSHEY, et al.,                 :
                                         :
    Defendants                    :

### CERTIFICATE OF SERVICE

I, Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this date I caused to be served the foregoing Defendants' Brief in Opposition To Plaintiff's Motion For Adequate Access to Courts, by depositing a copy of the same in the United States mail, postage prepaid, in Harrisburg, PA., addressed to the following:

Charles Iseley, #AM-9320
SCI-Coal Township
1 Kelley Drive
Coal Township, PA 17866-1020


MARYANNE M. LEWIS
DEPUTY ATTORNEY GENERAL


DATE: July 3, 2000