JUDGE'S COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA

JUL 14 2000

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

| | |
|---|---|
| CHARLES ISELEY, | : |
| Plaintiff | : |
| v. | : No. 1:00-CV-00577 |
| | : (Judge Kane) |
| W. CONWAY BUSHEY, et al., | : |
| Defendants | : |

**DEFENDANTS' BRIEF IN OPPOSITION TO MOTION
FOR JUDGMENT/SANCTIONS AGAINST DEFENDANTS**

**STATEMENT OF RELEVANT FACTS**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 alleging claims under the First, Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff, Charles Iseley, is a pro se prisoner currently incarcerated at the State Correctional Institution at Coal Township, Pennsylvania ("SCI-Coal"). Defendants are numerous employees or former employees of the Pennsylvania Department of Corrections who are or were located at the State Correctional Institution at Rockview ("SCI-Rockview"), the State Correctional Institution at Mahanoy (SCI-Mahanoy), and at the Department of Corrections ("DOC") headquarters. Also named as defendants are employees of the Pennsylvania Board of Probation and Parole ("Board').

On March 14, 2000, plaintiff was transferred from SCI-Mahanoy to SCI- Coal Township. At the time of his transfer, Iseley had approximately 10 boxes of excess property, which exceed the permitted amount of property allowed to be transferred with him. (See Dotter Declaration ¶¶11, 9, attached as Exhibit "A").

On May 8, 2000, counsel for defendants received a letter from plaintiff advising that he had been transferred to SCI-Coal and claiming that he had not received his excess property which contained his legal materials. He further stated that the boxes were being held at SCI-Mahanoy in retaliation for exercising his constitutional rights. Counsel immediately contacted Carol Dotter, Assistant to the Superintendent and litigation coordinator at SCI-Mahanoy, and requested that she verify the status of Iseley's property held in storage at SCI-Mahanoy. (See Dotter Declaration ¶ 10).

Dotter informed counsel that Iseley had approximately 10 boxes in storage and that the boxes were not shipped to him because, at the time of his transfer, he had insufficient funds in his inmate account to cover the shipping costs. Although Iseley claimed that he had previously submitted a cash slip for shipment of the boxes, no cash slip could be located at that time. No deductions were made from Iseley's account for the shipment of the boxes. (See Dotter Declaration ¶¶ 11 & 12).

On May 9, 2000, counsel notified Iseley that his boxes were held in storage at SCI-Mahanoy because at the time of his transfer he had inadequate funds in his inmate account to mail the boxes. Counsel also informed Iseley that if he wished to have the boxes mailed to him at SCI-Coal Township, he must send a cash slip to Dotter.

Counsel received a letter from Iseley dated May 16, 2000, acknowledging receipt of the May 9, 2000 letter, and claiming that he had completed a cash slip prior to his transfer from SCI-Mahanoy to SCI-Coal Township. Iseley informed counsel that he would send another cash slip to Dotter's attention. He further noted that if he did not receive his property by May 22, 2000, he would petition the court to intervene. On May 22, 2000, plaintiff filed a Motion and a Brief for Adequate Access to the Court.

On June 6, 2000, counsel contacted Dotter concerning receipt of the cash slip from Iseley for shipment of the boxes and to see if any cash slips of Iseley's could be located. Dotter informed counsel the following day that a cash slip had been found under one of Iseley's boxes, dated March 13, 2000. (See Dotter Declaration ¶ 16 and 17). Counsel directed that Iseley's property be sent to him at SCI-Coal Township as soon as possible. Iseley's property was mailed to him on June 8, 2000.[1]  (See Dotter Declaration ¶ 21).

On June 9, 2000 defendants filed a motion for an enlargement of time to respond to plaintiff's motion for access on the ground that, since Iseley received the relief sought in his motion, he may withdraw the motion. Defendants' request for enlargement of time was granted by the Court on June 26, 2000. Iseley did not withdraw his Motion for Adequate Access to the Court, and defendants filed their Brief In Opposition to that Motion on July 3, 2000. On June 26, 2000, plaintiff filed a Motion for Judgement/Sanctions Against Defendants. This brief is filed in opposition to plaintiff's motion for judgment or sanctions.

## QUESTION PRESENTED

**SHOULD THE COURT IMPOSE SANCTIONS AGAINST DEFENDANTS FOR A DELAY IN SHIPPING ISELEY'S EXCESS PROPERTY?**

---

[1] Counsel for defendants has been informed that Iseley received his property at SCI-Coal Township on June 12, 2000.

-3-

## ARGUMENT

### SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANTS BECAUSE ISELEY HAS RECEIVED HIS PROPERTY AND THERE HAS BEEN NO RETALIATION

In his motion and brief, plaintiff seeks judgment and sanctions without citing to any pertinent Federal Rule of Civil Procedure. Moreover, plaintiff does not specify the relief he is seeking from the court, other than an order directing that judgment/sanctions be entered against defendants. Counsel presumes plaintiff is seeking judgment/sanctions for an alleged denial of access to courts.[2]

Assuming that plaintiff is seeking sanctions pursuant to Fed.R.Civ.P. 11, the Third Circuit has consistently held that sanctions may be awarded only in exceptional circumstances, Doering v. Union County Bd. Of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988), and are not to be used routinely when the parties disagree about the correct resolution of a matter in litigation. Morristown Daily Record, Inc. v. Graphic Communications Union, Local 8N, 832 F.2d 31, 32 n.1 (3d Cir. 1987). Rule 11 imposes an affirmative duty on the parties to conduct a reasonable inquiry into the applicable law and facts prior to filing. An inquiry is considered reasonable under the circumstances if it provides the party with an "objective knowledge" or belief at the time of the filing of the challenged paper that the claim or defense was well-grounded in law and fact.

In this case, plaintiff has failed to establish that the defendants acted unreasonably or in bad faith. As disclosed by the declaration of Carol Dotter, Assistant to the Superintendent at SCI-

---

[2] Plaintiff states in his brief that he was supposed to be reviewed for parole in March of 2000, and he has yet to be reviewed or find out when he will be reviewed and no one will respond to his communication or help him. Plaintiff fails to explain how this allegation is related or relevant to the denial of access to the courts claim.

Mahanoy, plaintiff did not have sufficient funds in his inmate account at the time he was transferred from SCI-Mahanoy to SCI- Coal Township to ship the boxes of excess property. The policy at SCI-Mahanoy is for the institution not to incur the costs of shipping an inmate's additional property that cannot fit into the permitted two box limit. The cash slip that plaintiff submitted at the time of his transfer was misplaced in the property room, and fell under the third of the ten of his boxes being held in the property storage room at SCI-Mahanoy. Prior to staff's locating the cash slip, plaintiff was informed that in order to have the boxes shipped to him he needed to fill out a cash slip. Plaintiff chose not to submit another slip, thus delaying the mailing of the boxes. Once the cash slip was located, the boxes were mailed to the plaintiff the following day and he has received his property.

In his brief, plaintiff argues that the defendants intentionally denied him his property in retaliation for his filing the current legal action. He further suggests that SCI-Mahanoy allows inmates to run their accounts in the red to cover the cost of shipping and other costs such as cable television. This is not the current policy at SCI-Mahanoy, nor was it the policy at the time plaintiff was transferred. (See Dotter Declaration ¶ 6).

Defendants did not delay shipment of his excess property for retaliatory reasons. The actions of counsel and defendants concerning this matter have been in good faith and with the intent to track down what happened to plaintiff's property and why he had not received it. Beyond plaintiff's bare allegation, there is nothing supporting an award of sanctions. The simple misplacement of one piece of paper — a cash slip — in a property room for an entire correctional institution does not justify sanctions. Moreover, plaintiff has not demonstrated any credible harm from the short delay in receipt of his excess property. This case is not the stuff of which sanctions are made.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion For Judgement/Sanctions Against the Defendants should be denied.

                                   Respectfully submitted,

                                   D. MICHAEL FISHER
                                   Attorney General

By: *[signature]*
                                   GREGORY R. NEUHAUSER
                                   Senior Deputy Attorney General

For: MARYANNE M. LEWIS
       Deputy Attorney General

       SUSAN J. FORNEY
       Chief Deputy Attorney General
       Chief, Litigation Section

Office of Attorney General
15th Flr., Strawberry Sq.
Harrisburg, PA 17120
FAX: (717) 772-4526
Direct Dial: (717) 787-9719
DATE: July 14, 2000

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY, :
:
    Plaintiff :
:
v. : No. 1:00-CV-00577
: (Judge Kane)
W. CONWAY BUSHEY, et al., :
:
    Defendants :

### UNSWORN DECLARATION OF CAROL DOTTER

I, **Carol Dotter**, hereby declare under the penalty of perjury that the following statements are true and correct and based upon my personal knowledge.

1.    I have been employed by the Pennsylvania Department of Corrections (hereinafter the "Department") since August 1987.

2.    I have been employed in the capacity of Assistant to the Superintendent at the State Correctional Institution at Mahanoy, ("SCI-Mahanoy") since March 1993. In that capacity, I have access to all records maintained by the institution in the course of regularly conducted business.

3.    As Assistant to the Superintendent, I am familiar with the standard operating policies and procedures followed at SCI-Mahanoy and the Department. I also serve as the litigation coordinator between the institution and the Pennsylvania Office of Attorney General.

4.    Under the Department policy, an inmate may ship two boxes on the bus/van. These boxes are transported along with the inmate on the bus/van that is transporting the inmate to the receiving institution. The inmate has the responsibility to select the property he wishes to be shipped with him. The two boxes limit is because of the limited space available on the bus/van. Inmates are permitted one additional box beyond the two box limit to transport a television set.

5. Exceptions to the number of boxes is not permitted. The inmate is permitted to ship the additional boxes of his excess property by the least expensive common carrier available to the receiving institution or to an address outside the prison system chosen by the inmate at the inmate's expense.

6. Inmates are required to be financially responsible for the costs incurred for shipping excess property from one institution to another by common carrier. It would be financially burdensome to require SCI-Mahanoy to incur the cost of shipping excess property of 2000 inmates incarcerated at the institution each time an inmate is transferred from the institution.

7. I am familiar with Charles Iseley, AM 9320 ("Iseley").

8. On March 14, 2000, Iseley was transferred from SCI-Mahanoy to the State Correctional Institution at Coal Township ("SCI-Coal Township").

9. Iseley's property which exceeded the permitted amount was inventoried and packaged for storage in the storage room at SCI- Mahanoy because Iseley had insufficient funds to pay for shipping the property to SCI-Coal Township at the time of his transfer.

10. Because of complaints Iseley made in his federal litigation regarding his excess property, on May 8, 2000, Deputy Attorney General, Maryanne Lewis, contacted me and requested that I verify the status of Iseley's property held in storage at SCI- Mahanoy and whether Iseley completed a cash slip to send the property to SCI-Coal Township.

11. I contacted the property room on May 8, 2000 and spoke to Sgt. McGrady, who informed me that Iseley had approximately 10 boxes in storage, and that the boxes were not shipped because he had not paid to have them shipped. Sgt. McGrady informed me that a cash slip would be

needed to ship the boxes to Iseley at SCI-Mahanoy. No cash slip was located among the boxes at that time.

12. I then checked the inmate accounting system and learned that Iseley's boxes were not shipped to him because at the time of his transfer his account contained insufficient funds. I also verified that no deduction for the boxes had been made to Iseley's account for the boxes.

13. I contacted Ms. Lewis and informed her that Iseley's account did not reflect that he was charged for the shipment of his boxes. Although Iseley claimed he had previously submitted a cash slip, I suggested that if he would reissue another cash slip and send it to my attention, I would personally make certain that the boxes would be sent to him.

14. Ms. Lewis informed me that she would notify Iseley in writing that he needed to submit a cash slip to pay for the shipment of the boxes. (See letter dated May 9, 2000 address to Iseley, attached as Exhibit "A").

15. Since the date of her letter, Ms. Lewis has called me numerous times to inquire if I had received a cash slip from Iseley. To date, I have not received a cash slip from Iseley.

16. On June 6, 2000, Ms. Lewis contacted me concerning receipt of Iseley cash slip. She also requested that I again check with the property room to see if any cash slips of Iseley could be located.

17. On June 7, 2000, I was informed by Sgt. Arthur Meyers that a cash slip signed by Iseley dated March 13, 2000 was found under the third box of his eleven boxes of excess property. Apparently, the cash slip was not visible nor kept in the ordinary course and prevented its initial detection by prison officials.

18. I immediately informed Ms. Lewis that a cash slip dated March 13, 2000 had been located, and that Iseley's inmate account currently had sufficient funds to pay for the postage of the boxes.

19. Ms. Lewis directed that Iseley's property be sent to him at SCI-Coal Township as soon as possible.

20. Thereafter, I contacted the property room and directed that they prepare Iseley's boxes for shipment and notified the mail room that the boxes were to be sent to Iseley at SCI-Coal Township and that the shipping amount should be deducted from his inmate account.

21. Iseley property was mailed to him at SCI-Coal from SCI-Mahanoy on June 8, 2000.

6/8/00
DATE

*Carol Dotter*
CAROL DOTTER
**Assistant to the Superintendent**

-4-

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,

    Plaintiff

v.

W. CONWAY BUSHEY, et al.,

    Defendants

No. 1:00-CV-00577
(Judge Kane)

## CERTIFICATE OF SERVICE

I, Gregory R. Neuhauser, Senior Deputy Attorney General, hereby certify that on this date I caused to be served the foregoing Defendants' Brief in Opposition to Motion for Judgment/sanctions Against Defendants, by depositing a copy of the same in the United States mail, postage prepaid, in Harrisburg, PA., addressed to the following:

Charles Iseley, #AM-9320
SCI-Coal Township
1 Kelley Drive
Coal Township, PA 17866-1020

*[signature]*
GREGORY R. NEUHAUSER
SENIOR DEPUTY ATTORNEY GENERAL

DATE: July 14, 2000