

Law Clerk's Copy

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHARLES ISELEY, | : | |
| | : | |
| Plaintiff | : | PRSLC   Van Wie |
| | : | |
| v. | : | No. 3:00-CV-00577 |
| | : | (Judge Kane) |
| W. CONWAY BUSHEY, et al., | : | |
| | : | |
| Defendants | : | |

FILED
HARRISBURG, PA
AUG 31 2000
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**STATEMENT OF THE CASE**

This is a pro se prisoner civil rights action filed pursuant to 42 U.S.C. § 1983 alleging claims

under the First, Eighth and Fourteenth Amendments to the United States Constitution.  The

allegations in the complaint stem from alleged unlawful misconducts, grievances and conditions of

confinement that affected plaintiff while he was incarcerated at various state correctional institutions.

Plaintiff, Charles Iseley, is a prisoner currently incarcerated at the State Correctional

Institution at Coal Township ("SCI-Coal Township").  Defendants are numerous employees or

former employees of the Pennsylvania Department of Corrections ("DOC"), or employees of the

Pennsylvania Board of Probation and Parole ("Board").

Iseley filed a complaint in the United States District Court for Eastern of Pennsylvania on

October 29, 1999.  Thereafter, the  complaint was transferred to the Middle District of Pennsylvania,

and defendants answered the complaint on May 30, 2000.  Iseley served the defendants with a

request for production of documents on June 28, 2000, and the defendants responded to the request

on July 31, 2000.  Defendants objected to four of the six requests as seeking documents that contain

privileged or confidential information. Primarily, the documents objected to are in Iseley's prison, medical and parole files and contain mental impressions, notes and decisions of DOC and Board staff and security related information. In addition, defendants objected to producing the job descriptions of the defendants which contain confidential personnel and security related information.

Iseley filed a motion to compel the production of the documents and a supporting brief. This brief is in opposition to plaintiff's motion to compel discovery.

## QUESTION PRESENTED

**SHOULD THE COURT DENY ISELEY'S MOTION TO COMPEL DISCOVERY AS THE DEFENDANTS HAVE INTERPOSED VALID AND LEGITIMATE OBJECTIONS TO INFORMATION WHICH IS PRIVILEGED AND CONFIDENTIAL?**

## ARGUMENT

**THE COURT SHOULD DENY ISELEY'S MOTION TO COMPEL AS THE DEFENDANTS HAVE INTERPOSED VALID AND LEGITIMATE OBJECTIONS TO INFORMATION WHICH IS PRIVILEGED AND CONFIDENTIAL.**

Iseley, as the moving party, bears the burden of demonstrating he is entitled to the relief he now seeks. Compagnie des Bauxites de Guinee v. Insurance Company of North America, 551 F.Supp. 1239, 1243 (W.D. Pa. 1982). In this situation, this means that Iseley must show that he has made permissible discovery requests and that defendants have unjustifiably declined to provide him with what he seeks. He has done neither in his motion or his brief, and cannot otherwise do so.

-2-

A review of plaintiff's requests justifies defendants' objections that his requests seeks documents that are confidential and privileged. For example, in request for production number 1, Iseley asks for "the job descriptions of all of the defendants and each of them." Although vague, defendants assume that Iseley is seeking a copy of the job description of each of the defendants. As stated in defendants' response to that request, "job descriptions contain information that are unique to each individual's position including hours that employees work, shift and schedule rotation, and the specific security measures of work assignments." (See Defendants' Response to Request for Production of Documents, Exhibit "A" ¶1) Moreover, this type of information, if released, could jeopardize the security of the institution. (Declaration of Martin Horn, Exhibit "B" ¶4, Declaration of William Ward, Exhibit "C" ¶4)

Furthermore, Iseley has named thirty-six defendants in his complaint who are employees or former employees of three different correctional facilities, employees at DOC headquarters, and employees at the Board of Probation and Parole. Some defendants do not have a job description, including the Secretary of the Board and the Secretary of the DOC. In addition, various correctional officers do not have job descriptions because their duties and responsibilities require them to be assigned to a myriad of posts, each of which has specific, sensitive and confidential orders. (See Horn Declaration, ¶4)

In the remaining requests, Iseley seeks his complete prison file, complete medical records, and his complete parole file. Defendants objected to these requests as confidential and privileged, and clearly stated the security concerns of both the DOC and the Board in releasing the information found in those files. In response to plaintiff's motion to compel, defendants now provide declarations from Martin F. Horn, the Secretary [Commissioner] of the DOC and William F. Ward,

the Chairman of the Board. Horn and Ward outline the basis of the privileges asserted. These declarations comply with the requirements of United States v. O'Neill, 619 F.2d 222 (3d Cir. 1980).[1]

Secretary Horn has personally reviewed Iseley's requests. (See Declaration of Martin F. Horn ¶¶3, 5) Horn, an expert in the field of corrections, opposes production of these documents because they "could undermine the secure and orderly operation of the Department, SCI-Coal Township and compromise the staff's ability to carry out a significant penological goal--the rehabilitation of the plaintiff." (Id. ¶6) Moreover, Horn explains that these files contain frank observations and staff recommendations, and "[i]f the entire inmate file and medical file were routinely made available to inmates, it would be detrimental to the treatment and safety of the inmates, the safety of our staff and the security and order of our institution, and would significantly increase the difficulty of prison administration." (Id. at ¶14)

Horn also states that disclosure of these documents could be dangerous because, "if plaintiff knows how he is likely to be evaluated by staff and how his responses are likely to be interpreted, he is capable of formulating his response to manipulate the results." (Id. at ¶11) Horn concludes that disclosure of the documents would "undermine the secure and orderly operation of SCI-Coal Township, compromise the staff's ability to carry out penological goals, could ultimately threaten the security of the institution, and have a deleterious effect on the rehabilitation of Mr. Iseley himself." (Id. at ¶ 15)

---

[1]In O'Neill, the Third Circuit set forth the three criteria required of the government when asserting a government documents privilege: 1) the custodian personally reviewed the material subject to the claim of privilege; 2) a designation and description of the document subject to the privilege; and 3) a statement of the reasons for preserving confidentiality of the communications. 619 F.2d at 226.

William F. Ward is the Chairman of the Board. A declaration from Chairman Ward is included with defendants' brief. Chairman Ward objects to the production of documents contained in Iseley's parole file. He states, "[i]n my opinion, disclosure of these documents in their entirety as requested will undermine the secure and orderly operation of the Board and will seriously compromise the Board and its staff's ability to carry out a significant penological goal — the rehabilitation of the inmate." (See Declaration of William F. Ward ¶ 6)

Simply put, two experts in the corrections field have reviewed the documents and files Iseley seeks. It is their mutual belief the disclosure of these documents will threaten security. It is also unfair to the personnel employed at the prison to have their mental impressions, that they thought would be kept confidential, disclosed to the prisoner they were evaluating.

As here, when a valid claim of privilege is invoked, the party who seeks the information must show a need for it so the court can "balance on one hand the policies which give rise to the privilege and the facts at hand against the need for the evidence sought to be obtained." O'Neill, 619 F.2d at 227 quoting Riley v. City of Chester, 612 F.2d 208 ( 3d Cir.1979). In making such a determination, a court normally considers the importance of the documents to the government and the availability of the information elsewhere. U.S. v. Legett v. Platt, Inc., 542 F.2d 655 (6th Cir. 1976) cert denied, 430 U.S. 945 (1976). This deliberative process privilege is designed to protect advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. Resident Advisory Board v. Rizzo, 97 F.R.D. 749, 751 (E.D.Pa. 1983).

The government documents privilege also protects from disclosure certain government documents and "information whose disclosure would be contrary to the public interest." Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D.Pa. 1973). See also Friedman v. Bache Halsey Stuart

-5-

Shields, Inc., 738 F.2d 1336 (D.C. Cir. 1984); Black v. Sheraton Corp. of America, 564 F.2d 531 (D.C. Cir. 1977). This privilege has been extended to cover inter and intra-agency memoranda and prison files. See Note, Discovery of Government Documents and the Official Information Privilege, 76 Col. L.R. 142 (1976) and cases cited therein.

In his brief, Iseley makes the bald assertion that he has received job descriptions of corrections employees in the past. (See Iseley's Declaration attached to his Motion to Compel Discovery, ¶1)  He specifically states he received job descriptions of nearly forty defendants, including the secretary of the DOC.  Currently, no job description exists for the Secretary of the Department of Corrections. (See Horn Declaration, ¶4)   If plaintiff did receive job descriptions in the past, or in conjunction with another case, he is not entitled to them here.  Furthermore, the Court should not be mislead to believe defendants have not provided plaintiff with information responsive to his request.   To the contrary, defendants provided Iseley the opportunity to review and copy the job specifications for the employment classification of all the named defendants.  These specifications contain sufficient information concerning the duties and responsibilities of the defendants.

In addition, Iseley has been provided with an opportunity under DOC-ADM 003 to view portions of his prison and medical file.  He concedes in his brief that he has recently reviewed his records and possesses information from them.  It must also be noted that Iseley is not being denied access to his entire institutional record, only those parts that contain confidential or security related information are being withheld.  Iseley may inspect those portions of the files and select those documents which he wishes to have copied.  Those documents can be copied for him at his own expense at the institution's rate.

This motion should also be denied insofar as his parole file is concerned because Iseley never had an entitlement to pre-release or parole. Iseley has no constitutionally-based right to parole under the United States Constitution. See, Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979); McCrery v. Mark, 823 F. Supp. 288, 293 (E.D. Pa. 1993). Nor has Pennsylvania created a liberty interest in the possibility of parole. "[U]nder both this court's precedent and the precedent of the United States Supreme Court, the Parole Board's decision to grant or deny parole does not affect an existing enjoyment of liberty. Consequently, appellants fail to establish that they have a liberty interest in parole which is protected by the United States Constitution." Rogers v. Pennsylvania Board of Probation and Parole, supra.724 A.2d 319, 321, n. 2 (Pa. 1999).

Finally, the disclosure of Iseley's entire parole, prison and medical files could make future deliberations more difficult because individuals (civilians, probation and parole staff, correctional staff and inmates), who otherwise would provide information to officials reasonably believing that their identities will remain confidential, would be discouraged from doing so. (See Horn Declaration, ¶¶ 12, 14) Prison staff and inmates are a closed population. Information distributed to one inmate within the prison system is quickly disseminated throughout the inmate population. Information or documents given to one inmate are quickly passed among the inmate population.

In this case, Iseley received a rationale outlining why the documents were withheld. A review of these facts as well as the legal and factual bases for objection discussed above should cause this Court to conclude that plaintiff's motion to compel as it is framed has no merit.

## CONCLUSION

For these reasons, the plaintiff's motion to compel discovery should be denied.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

By: _____
MARYANNE M. LEWIS
Deputy Attorney General
Attorney ID# 82813

SUSAN J. FORNEY
Chief Deputy Attorney General

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg PA 17120
(717) 787-1194
(717) 772-4526 FAX
mlewis@attorneygeneral.gov

DATE:   August 31, 2000

**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                    :
                                   :
         Plaintiff                 :
                                   :
     v.                            :    No. 1:00-CV-00577
                                   :    (Judge Kane)
W. CONWAY BUSHEY, et al.,          :
                                   :
         Defendants                :

## DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants hereby respond to plaintiff's request for production of documents. Plaintiff may inspect and photocopy the documents upon written request to the Assistant to the Superintendent at SCI-Coal Township. Plaintiff may photocopy the produced documents at his own expense at the institution rate.

1.      **The job description of all of the defendants and each of them.**

**RESPONSE: OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution. Job descriptions contain information unique to each individual's position including the hours that employees work, their shift and schedule rotation, and duties that pertain to specific security measures of numerous work assignment. Without waiving this objection, plaintiff may inspect copies of the specifications for the job classifications of the defendants, which include their basic duties and responsibilities.

2.    Any and all policies, directives, memorandums, rules, manuals or instructions concerning the procedures for a prisoner to obtain assess/copies of his prison/medical/parole/dental records.

**RESPONSE:**    Department of Corrections Administrative Directive (hereinafter referred to as "DOC-ADM") 003 governs the procedures for a prisoner to obtain access/copies of his prison, medical and dental records.    DOC-ADM 003 is found in the Inmate Handbook which is issued to all inmates.    In addition, page 18 of the handbook, under the heading "Request Slips," states the procedure for requests of this nature. Title 37 of the Pennsylvania Code, § 61.2, governs the access/copies of parole records.    Because these records are considered confidential, no formal policy can be located concerning the procedure for an inmate to obtain access/copies of his parole file. Plaintiff may inspect copies of the DOC Administrative Directives and §61.2 of the Pa Code.

3.    **The plaintiff's complete prison file to the date of your response.**

**RESPONSE: OBJECTION.**    Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution, as well as compromise the staff's ability to carry out the rehabilitation of the plaintiff.    Included in plaintiff's file are reports of a confidential nature, such as pre-sentence reports, classification and diagnostic information and psychological information.    Documents that reflect inmate behavior encourage staff to write freely their opinion concerning the inmate.    If released, this would deter staff from writing their opinions in a candid manner.    In addition, defendants, object to this request as overbroad and containing information that is irrelevant to the allegations contained in the complaint and unlikely to lead to admissible evidence.    Without waiving this objection, plaintiff may inspect copies of the portion of his inmate file that are authorized pursuant to guidelines established under DC-ADM 003.

-2-

4.   **The plaintiff's complete medical records to the date of your response.**

**RESPONSE: OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution, as well as compromise the staff's ability to carry out the rehabilitation of the plaintiff.   In particular, these records contain mental health and psychological information.  Without waiving this objection, plaintiff may inspect portions of his medical file, pursuant to guidelines established under DC-ADM 003.  Mental health records, pursuant to DC-ADM 003, D(1), may be discussed with treatment staff. These records as noted in the objection and DC-ADM 003 may not be reviewed by the plaintiff.

5.   **The plaintiff's complete parole file to the date of your response.**

**RESPONSE: OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution, as well as compromise the Board's ability to carry out the rehabilitation of the plaintiff.  Pursuant to 37 Pa. Code §61.2, "[r]ecords, reports and other written things and information, evaluations, opinions and voice recordings in the Board's custody or possession touching on matters concerning a probationer or parolee are private, confidential and privileged; except that a brief statement of the reasons for actions by the Board granting or refusing a parole will at all reasonable times be open to public inspection in the offices of the Board." Included in plaintiff's file are reports of a confidential nature, that are frank observations and recommendations gathered by the Department of Corrections and the Board.   Documents that reflect inmate behavior encourage staff to write freely their opinion concerning the inmate.  If released, this would deter staff from writing their opinions in a candid manner.  Without waiving this objection, plaintiff may inspect the Notices of the Board Decision, which are the  brief statements of the reasons for the action by the Board refusing his parole.

-3-

6.    A copy of the civil rights complaint (above-captioned matter).

RESPONSE:  Plaintiff's may inspect a copy of his civil rights complaint filed at No.3: CV-

00577.

Objections interposed
on behalf of defendants by:

BY: _____

MARYANNE M. LEWIS
Deputy Attorney General
Attorney ID# 83812

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA  17120
(717) 787-
FAX:  (717) 77204526
DATE: July 31, 2000

-4-

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,           :
                        :

    Plaintiff          :
                        :

    v.                :     No.  1:00-CV-00577
                        :     (Judge Kane)

W. CONWAY BUSHEY, et al.,    :
                        :

    Defendants      :

## CERTIFICATE OF SERVICE

I,  Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this date

I caused to be served the foregoing Defendants' Response to Request for Production of

Documents, by depositing a copy of the same in the United States mail, postage prepaid, in

Harrisburg, PA., addressed to the following:

Charles Iseley, #AM-9320
SCI-Coal Township
1 Kelley Drive
Coal Township, PA  17866-1020


MARYANNE M. LEWIS
DEPUTY ATTORNEY GENERAL


DATE: July 31, 2000

**EXHIBIT "B"**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                     :
                                    :
        Plaintiff                   :
                                    :
        v.                          :       No.  1:00-CV-00577
                                    :       (Judge Kane)
W. CONWAY BUSHEY, et al.,           :
                                    :
        Defendants                  :

## UNSWORN DECLARATION OF MARTIN F. HORN

I, **MARTIN F. HORN,** hereby declare under the penalty of perjury that the following is

true and correct and based upon my personal knowledge:

1.      I am employed as the Secretary of the Pennsylvania Department of Corrections

and have held this position since February, 1995.  I have been employed in the field of

Corrections in the State of New York and Pennsylvania since 1969.

2.      As Secretary, I serve as the highest governmental official and administrative head

of the Pennsylvania Department of Corrections, ( hereinafter "Department").   I am familiar with

standard policies, procedures and documents utilized by State Correctional Institutions and the

Department, understand their reasoning and purpose,  and have overseen the development and

implementation of the Department of Corrections' policy.

3.      In the course of this litigation the plaintiff has requested his complete medical

records to date, and his complete prison file to date; and "policies, memorandums, rules or

manuals or instructions concerning the procedures for a prisoner to obtain access/copies of his

prison/medical/parole/denial records."   He also seeks the descriptions of all of the defendants

employed by the Department  (See Request for Production of Documents ¶¶1,2,3,4).

4.  In plaintiff's first request he seeks job descriptions of all the defendants. Where they exist, job descriptions contain information unique to each individual's position, hours worked, shift and schedule rotation and duties which pertain to specific security measures. Release of this information could pose a threat to the security of the correctional institution. Some DOC employees do not have a generic, standard Commonwealth job description, but have a specification sheet. There is no job description for a Corrections Officer I, because the corrections officer may be assigned to a myriad of posts, each of which has specific, sensitive and confidential orders. I do not have a standard Commonwealth job description.

5.  I have personally reviewed plaintiff's remaining requests for production of documents, defendants' responses and objections. I am familiar with the kind of information contained in the documents, plaintiff, Charles Iseley, seeks and have reviewed portions of the specific documents he has requested to verify that they contain this information.

6.  In my opinion, disclosure of these documents in their entirety could undermine the secure and orderly operation of the Department and could seriously compromise the Department, SCI-Coal Township and their staff's ability to carry out a significant penological goal--the rehabilitation of the plaintiff.

7.  In administering the Commonwealth's penal system, various operational policies exist relating to a wide variety of subjects including the identification, management, security and treatment of prisoners. In addition these policies also cover a very broad spectrum of different treatment-related activities, including, but not limited to: diagnostic testing, classification assessment, evaluations, prescription of treatment, and monitoring of institutional placement.

-2-

8.     The files Iseley seeks contain documents, correspondence, commitment orders, psychological and psychiatric evaluations, corrections counselor's reports, conduct records, adjustment records, transfer petitions, work and quarters assignment records, misconduct reports and resolutions, requests to staff and responses, classification summaries, sentence status summaries, and identification documents.

9.     In addition, the treatment and medical file contains entries by numerous corrections treatment personnel, including counselors, physicians, and treatment staff.  This portion of the jacket is considered a treatment document and enables the appropriate treatment staff to candidly record their impressions, evaluations, and recommendations with respect to the inmate's treatment program.

10.     It contains notations of inmate complaints and staff reaction and responses thereto, status reports on adjustment progress, staff members' opinions of the inmates attitude and behavior, narratives by counselors and information regarding the relationship of the subject inmate with staff and with his fellow inmates.

11.     If an inmate were to learn  how he will be evaluated by staff, such as in the parole vote sheets which plaintiff seeks, and how particular responses are likely to be interpreted, he would then be  capable of manipulating the results. The results of this could be devastating to the Department.  First and foremost, the individual's situation may not be assessed accurately, and therefore, a valid course of rehabilitative treatment would not  be prescribed.  Second, these inaccuracies could lead to improper institutional placement, with the inmate being  placed where he is a danger to others or visa versa.  Finally, the inaccurate information may allow the inmate

-3-

to be prematurely released from custody, e.g. to be paroled, and thus may an unacceptable risk to the community at large.

12.    To allow release of treatment information and related records to inmates could seriously impair the treatment process.   Much of what is contained in inmate treatment-related files, such as the psychiatric record, are frank observations and recommendations of treating professionals and institutional counseling staff.  If this information or related records were to be disclosed to others, including the inmate involved, it would necessarily inhibit the staff from performing their duties in a professional manner.  The value of staff comments and observations would be lessened, and those making decisions regarding the inmate and his security level and risk factors, would be placed at a distinct disadvantage in that they would not have the benefit of candid and honest appraisals.

13.    The nature of the documents in the inmate's file makes it important from a security, administrative,  and sound correctional practices standpoint to maintain their confidentiality.  Administrative decisions are routinely made based upon the recommendation and comments contained in these documents.  The value of these comments lies in their frankness; if the documents were readily available to the inmate or the public, the staff at the institutions would tend to refrain from entering their honest opinion and evaluations, especially in those very situations or where candid and concise information and observation are most important.  Consequently, the staff who make treatment and programming decisions based on these documents would not have the benefit of candid observations.

14.    It is my considered opinion, based upon years of experience in the field of corrections,  that if the entire inmate file and medical file were routinely made available to

-4-

inmates, it would be detrimental to the treatment and safety of the inmates, the safety of our staff and the security and order of our institution, and would significantly increase the difficulty of prison administration. DOC-ADM 003 addresses the specific information contained in their institution and medical files that is available to all inmates. In accordance with this directive, plaintiff may review these portions of his institutional and medical file.

15.   Based upon my review of the documents requested and available documents, I believe that disclosure of Mr. Iseley's the entire medical and prison file would undermine the secure and orderly operation of SCI-Coal Township, compromise the staff's ability to carry out penological goals, could ultimately threaten the security of the institution, and have a deleterious effect on the rehabilitation of Mr. Isley himself.

_____
**DATE**

**MARTIN F. HORN, SECRETARY**
**Pennsylvanian Department of Corrections**

**EXHIBIT "C"**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHARLES ISELEY,              :

                   :

       Plaintiff          :

                   :

       v.                :      No. 1:00-CV-00577

                   :      (Judge Kane)

W. CONWAY BUSHEY, et al.,    :

                   :

       Defendants     :

## UNSWORN DECLARATION OF WILLIAM F. WARD

I, William F. Ward, hereby state under the penalty of perjury that the following is true and correct based upon my personal knowledge:

1.    I am employed by Commonwealth of Pennsylvania, Board of Probation and Parole ("Board"). I am the Chairman of the Board and have held this position since March 31, 1997.

2.    As chairman, I am the chief executive and responsible for the overall administration of the Board. I am familiar with the standard policies, procedures and documents utilized by the Board and understand their reasoning and purpose. I am also familiar with the Board's record keeping practices and the policies concerning dissemination of the various records and information we maintain concerning inmates .

3.    In the course of this litigation the plaintiff has requested a variety of institutional records. Specifically, he seeks his complete parole file to the date, and copies of job descriptions of the defendants employed by the Board.

4.    No standard Commonwealth of Pennsylvania job description exists for the Secretary to the Board. In addition, job descriptions of parole agents contain work assignments, personnel,

and security related information. Because of this information, job descriptions are regarded as confidential.

5.      I have personally reviewed plaintiff's request for production of documents and defendants responses and objections. I am familiar with the kind of information contained in the parole file of Charles Iseley and I have reviewed portions of the specific documents he has requested to verify that they contain this information.

6.      In my opinion disclosure of his file in its entirety as requested will undermine the secure and orderly operation of the Board and will seriously compromise the Board and their staff's ability to carry out a significant penological goal — the rehabilitation of the plaintiff.

7.      Much of what is contained in parole files are documents such as Board and counselor's notes, parole reviews, vote sheets and psychological files contain frank observations and recommendations of the Board and the Department of Corrections. This information is kept confidential and is not made available to inmates. If this information or the related documents were disclosed it would inhibit the candor of those professionals in making their observation and remarks and, as a result impair rehabilitation efforts. In addition, if plaintiff knows how he is likely to be evaluated by staff and how his responses are likely to be interpreted, he is capable of formulating his response to manipulate the results. This could lead to inappropriate decisions regarding his eligibility to be released into the community through parole which might present a risk to the community at large.

8.      In addition, pursuant to 37 Pa.Code §61.2, "[r]ecords, reports and other written things, information, evaluation, opinions and voice recordings in the Board's custody or possession or touching on matters concerning probation or parole are private, confidential, and privileged;

-2-

except that a brief statement of the reasons for actions by the Board granting or refusing parole will at all reasonable times be open to public inspection in the offices of the Board." Other than the Notices of the Board's Decision or "green sheets" information contained in parole files is not available to inmates.

9.    In his request, Iseley is seeking his entire parole file. After a review of his file, it is my opinion that release of this information could compromise the Board's and staff's ability to rehabilitate the plaintiff. The information contained in his file contains the same sort of remarks and observations described in paragraph 6 of this declaration and it is this type of information that is kept confidential and privileged pursuant to 37 Pa. Code §61.2.

10.    For these reasons, I conclude that disclosure of the information plaintiff seeks in document request 5 would undermine the legitimate penological goals of rehabilitating and paroling the plaintiff and other inmates, as well as create internal security concerns for the Department of Corrections.

August 29, 2000
_____
DATE

William F. Ward
_____
**WILLIAM F. WARD**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHARLES ISELEY,                          :
                                         :
        Plaintiff                        :
                                         :
    v.                                   :        No. 3:00-CV-00577
                                         :        (Judge Kane)
W. CONWAY BUSHEY, <u>et al</u>.,         :
                                         :
        Defendants                       :

## CERTIFICATE OF SERVICE

I, Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this date I

caused to be served the foregoing, Defendants' Memorandum of Law in Opposition To Plaintiff's

Motion to Compel Discovery, by depositing a copy of the same in the United States mail, postage

prepaid, in Harrisburg, PA., addressed to the following:

> Charles Iseley, #AM-9320
> SCI- Coal Township
> 1 Kelly Drive
> Coal Township, PA   17866-1020

_____
MARYANNE M. LEWIS
DEPUTY ATTORNEY GENERAL

**DATE: August 31, 2000**