ORIGINAL

72
1-23-01
SC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FILED
HARRISBURG

JAN 2 2 2001

MARY E. D'ANDREA, CLERK
Per/_____
DEPUTY CLERK

CHARLES ISELEY,                    :

        Plaintiff          :

                           :

v.                                 :     No. X:00-CV-00577

                           :     (Judge Kane)

W. CONWAY BUSHEY, et al.,           :

                           :

        Defendants         :


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**STATEMENT OF THE CASE**

This is a pro se prisoner civil rights action filed pursuant to 42 U.S.C. § 1983 alleging claims

under the First, Eighth and Fourteenth Amendments to the United States Constitution.  The

allegations in the complaint stem from alleged unlawful misconducts, grievances and conditions of

confinement that affected plaintiff while he was incarcerated at various state correctional institutions.

Plaintiff, Charles Iseley, is a prisoner currently incarcerated at the State Correctional

Institution at Coal Township ("SCI-Coal Township").  Defendants are numerous employees or

former employees of the Pennsylvania Department of Corrections ("DOC"), or employees of the

Pennsylvania Board of Probation and Parole ("Board").

Iseley filed a complaint in the United States District Court for Eastern of Pennsylvania on

October 29, 1999.  Thereafter, the complaint was transferred to the Middle District of Pennsylvania,

and defendants answered the complaint on May 30, 2000.  The parties have engaged in discovery.

Iseley served the defendants with a second request for production of documents and interrogatories

directed to defendants Horn and Bushey on November 23, 2000. Defendants responded to the

request for production of documents and the interrogatories directed to defendant Horn on December 21, 2000. Defendants objected to document request numbers one through five and nine as either overbroad, or irrelevant and unlikely to lead to admissible evidence. Defendants also objected to producing documents that contain privileged or confidential information of the DOC and Board concerning parole related criteria. In addition, while defendant Horn objected to four of the nineteen interrogatories, he provided responses to all the interrogatories, notwithstanding their objections.

On December 18, 2000, defendants returned the interrogatories directed to defendant Bushey to Iseley. Counsel to defendants explained that Bushey in his current position as the Board's Director of Grants and Standards, or in his past position as Board Secretary did not have personal knowledge regarding the requests. Counsel further informed Iseley that some of the interrogatories were irrelevant to the claims in his complaint and were unlikely to lead to admissible evidence. Counsel suggested to Iseley that he review the interrogatories and resubmit them to the appropriate party. (See Exhibit "A" attached). Notwithstanding counsel's offer, Iseley immediately filed the instant motion to compel. Iseley made no good faith effort to resolve the discovery issues before seeking court intervention.

On January 4, 2001, Iseley filed a motion to compel discovery and a supporting brief. This brief is in opposition to plaintiff's motion to compel discovery.

-2-

## QUESTION PRESENTED

**SHOULD THE COURT DENY ISELEY'S MOTION TO COMPEL DISCOVERY AS THE DEFENDANTS HAVE INTERPOSED VALID AND LEGITIMATE OBJECTIONS TO INFORMATION WHICH IS IRRELEVANT, OVERBROAD, PRIVILEGED AND CONFIDENTIAL?**

## ARGUMENT

**THE COURT SHOULD DENY ISELEY'S MOTION TO COMPEL DISCOVERY AS THE DEFENDANTS HAVE INTERPOSED VALID AND LEGITIMATE OBJECTIONS TO INFORMATION WHICH IS IRRELEVANT, OVERBROAD, PRIVILEGED AND CONFIDENTIAL.**

Iseley, as the moving party, bears the burden of demonstrating he is entitled to the relief he now seeks. <u>Compagnie des Bauxites de Guinee v. Insurance Company of North America</u>, 551 F.Supp. 1239, 1243 (W.D. Pa. 1982). This means that Iseley must show that he has made permissible discovery requests and that defendants have unjustifiably declined to provide him with what he seeks. He has done neither in his motion or his brief, and cannot otherwise do so. A review of plaintiff's document requests and interrogatories justify defendants' objections that his requests are vague, irrelevant or confidential and privileged.

## STATISTICAL INFORMATION

In request for production number one, Iseley seeks "any and all documents concerning statistics regarding prisoners who have received 'other' reports." Defendants objected to this request as vague in that they do not know what Iseley is referring to as 'other' reports. In requests two through five, Iseley seeks any and all documentation concerning statistical information regarding prisoners who have received misconduct reports, parolees, parole violators, prisoners and pre-

release. Defendants responded to these requests as seeking information that was overbroad and irrelevant to his claims and unlikely to lead to admissible evidence. (See Defendants' Response to Request for Production of Documents, Exhibit "B" ¶¶1-5).

The production of documents is governed by Fed. R. Civ. P. 34. Rule 34 (b) states that a request for documents "shall set forth either by individual item or by category, the items to be inspected, and described with reasonable particularity." In requests one through five Iseley does not state any time frame for this data, nor does he specify what statistical data he is seeking concerning the "other" reports, parolees, parole violators or pre-release programs. Here, Iseley's requests are written so broadly that it extends to information not relevant to his complaint. Furthermore, in his brief, Isleley makes no attempt to explain the relevancy this information, assuming it exists, would have in relation to his complaint. His request to compel a further response to these requests should therefore be denied.

## MEDICAL CONTRACTS

In request number nine, Iseley seeks " any and all documents concerning any agreements, contracts with any medical care service provider/vendor for the DOC." Defendants objected to this request as irrelevant to Iseley's claim. In his complaint, Iseley alleges that he was wrongfully charged for medical visits while at SCI-Mahanoy and that the ABC Corp. follows a pattern of discrimination. Certainly not all DOC medical care provider/vendor contracts are relevant to an alleged overcharge at SCI-Mahanoy. Assuming that these contracts are not confidential or privileged, Iseley fails to state with reasonable specificity the contracts he wishes to inspect. Here again, Iseley fails to describe the time frame of the contracts and the relevance theses contracts may have to the allegations in his complaint.

-4-

## PAROLE INFORMATION

In the remaining requests, Iseley seeks documents concerning the DOC and Board's parole review criteria. Defendants objected to these requests as confidential and privileged, and stated the security concerns of both the DOC and the Board in releasing this type of information. Nonetheless, defendants informed Iseley that information specific to an individual inmate's parole criteria is found on his/her green sheet and that general parole information is found in the Inmate Handbook. Defendants made available copies of Iseley's green sheets for his inspection. (See Defendants' Response to Request for Production of Documents, Exhibit "B" and Horn's Response to Interrogatories, Exhibit "C").

In objecting to the request for production of documents concerning parole review criteria, defendants objected to producing documents of a confidential nature because if released, the DOC's and Board's ability to rehabilitate prisoners could be compromised. In response to an earlier motion to compel filed by Iseley, defendant Horn and Board Chairman Ward provided declarations outlining the basis of the privileges asserted concerning parole information.

For brevity reasons, defendants will not fully rebrief this argument; rather, they incorporate their argument and declarations filed on August 31, 2000. In particular, defendants reiterate former Secretary Horn's concern that "if an inmate knows how he is likely to be evaluated by staff and how his responses are likely to be interpreted, he is capable of formulating his response to manipulate the results." ( See Horn declaration ¶11, dated August 29, 2000, attached as Exhibit "D"). Horn concluded that disclosure of the documents would "undermine the secure and orderly operation of SCI-Coal Township, compromise the staff's ability to carry out penological goals, could ultimately

threaten the security of the institution, and have a deleterious effect on the rehabilitation of Mr. Iseley himself." (Id. at ¶ 15).

Likewise, Board Chairman Ward objected to the production of parole related documents and information. He stated, "[i]n my opinion, disclosure of these documents in their entirety as requested will undermine the secure and orderly operation of the Board and will seriously compromise the Board and its staff's ability to carry out a significant penological goal — the rehabilitation of the inmate." ( See Declaration of William F. Ward, attached as Exhibit "E").

Defendants also reiterate that when a valid claim of privilege is invoked, the party who seeks the information must show a need for it so the court can "balance on one hand the policies which give rise to the privilege and the facts at hand against the need for the evidence sought to be obtained." O'Neill, 619 F.2d at 227 quoting Riley v. City of Chester, 612 F.2d 208 ( 3d Cir.1979). In making such a determination, a court normally considers the importance of the documents to the government and the availability of the information elsewhere. U.S. v. Legett v. Platt, Inc., 542 F.2d 655 (6th Cir. 1976) cert denied, 430 U.S. 945 (1976). The government documents privilege also protects from disclosure certain government documents and "information whose disclosure would be contrary to the public interest." Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D.Pa. 1973). See also Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336 (D.C. Cir. 1984); Black v. Sheraton Corp. of America, 564 F.2d 531 (D.C. Cir. 1977).

Here, Iseley has utterly failed to present any argument or reason why he needs this information. Furthermore, Iseley has been provided documents that reveal the criteria necessary for his parole. Criteria specific to his parole is found on his green sheets, which have been provided to him. Finally, it is worth repeating that Iseley has no constitutionally-based right to parole under

-6-

the United States Constitution.  See, Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979); McCrery v. Mark, 823 F. Supp. 288, 293 (E.D. Pa. 1993).  Nor has Pennsylvania created a liberty interest in the possibility of parole.  See Rogers v. Pennsylvania Board of Probation and Parole, supra.724 A.2d 319, 321, n. 2 (Pa. 1999).

## HORN INTERROGATORIES

Iseley also asserts in his brief that the responses to defendant Horn's interrogatories were inadequate.  A fair reading of Horn's interrogatories show that he did in fact respond to each interrogatory.  ( See Exhibit "C" attached).  In those interrogatories where he stated an objection, he nonetheless provided a response.  Nowhere in his motion or brief does Iseley state why he believes Horn's responses are inadequate.  Because Iseley may not like Horn's response, it is not acceptable to categorize it as inadequate, particularly when Iseley failed to  articulate the  reasons he believes the answers are insufficient.  In addition, Iseley has been provided with an opportunity to inspect certain documents he requested pursuant to  his request for documents and interrogatories to Horn.

## BUSHEY INTERROGATORIES

Finally, Iseley seeks responses to Interrogatories directed to defendant Bushey.  As noted, Iseley was informed by counsel that Bushey neither in his current position, or in his past position as Secretary to the Board, has personal knowledge regarding the requests contained in the Interrogatories.  Counsel suggested that Iseley review the interrogatories and resubmit them  to the appropriate party.  Here, Iseley made no good faith effort to resolve the discovery issue and elected not to resubmit the interrogatories; rather he filed this motion to compel. [1]

---

[1]Defendants note that they remain willing to answer relevant discovery requests to the proper individuals.  Plaintiff has not chosen to accept defendants' offer.

## CONCLUSION

In this case, Iseley received responses outlining why certain documents were withheld. A review of these facts as well as the legal and factual bases for objections discussed above should cause this Court to conclude that plaintiff's motion to compel as it is framed has no merit. For these reasons, the plaintiff's motion to compel discovery should be denied.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

By: MARYANNE M. LEWIS
Deputy Attorney General
Attorney ID# 82813

SUSAN J. FORNEY
Chief Deputy Attorney General

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg PA 17120
(717) 787-1194
(717) 772-4526 FAX
mlewis@attorneygeneral.gov

DATE:    January 22, 2001

**EXHIBIT "A"**



COMMONWEALTH OF PENNSYLVANIA
**OFFICE OF ATTORNEY GENERAL**

· **December 18, 2000**

MIKE FISHER
ATTORNEY GENERAL

15th Floor, Strawberry Sq.
Harrisburg, PA 17120
DIRECT DIAL: (717) 787-9719
FAX: (717) 772-4526

Charles Iseley, #AM-9320
SCI-Coal Township
1 Kelley Drive
Coal Township, PA 17866

Re:   *Iseley v. Bushey, et al.*
       No. 1:00-CV-0577 (M.D.Pa.)

Dear Mr. Iseley:

I am returning your Interrogatories to Defendant Bushey. Please be advised that defendant Bushey in his present position at the Pennsylvania Board of Probation and Parole, as Director of Grants and Standards Division, nor in his past position as Secretary to the Board, has no personal knowledge regarding the requests contained in the Interrogatories.

In addition, some of the interrogatories are irrelevant to the claims in your complaint and unlikely to lead to admissible evidence. I suggest you review these interrogatories and resubmit them to the appropriate party.

Very truly yours,

MARYANNE M. LEWIS
Deputy Attorney General

lls
Enclosure

**EXHIBIT "B"**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,     :
          :
  Pl.       :
          :
  v.        :  No. 1:00-CV-00577
          :  (Judge Kane)
W. CONWAY BUSHEY, <u>et al.</u>,  :
          :
  Defendants    :

## DEFENDANTS' RESPONSES TO SECOND SET
## OF REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants hereby respond to plaintiff's Second Request for Production of Documents. Plaintiff may inspect and photocopy the documents upon written request to the Assistant to the Superintendent at SCI-Coal Township. Plaintiff may photocopy the produced documents at his own expense at the institution's rate.

1.  **OBJECTION.** Defendants object to this request as vague in that defendants do not know what he is referring as to "other reports".

2.-5. **OBJECTION.** Defendants object to this request as overbroad and irrelevant to plaintiff's claims, and unlikely to lead to admissible evidence.

6.  **OBJECTION.** Defendants object to this request as containing documents that if released could pose a threat to the security of the institution. Without waiving that privilege, plaintiff may inspect a copy of the documents identified in Interrogatory 13.

7.  Counsel for defendants has not identified the documents that will be used at trial. When these documents have been identified, undersigned counsel will supplement this response.

8.  Plaintiff may inspect a copy of the DOC Code of Ethics.

9.     **OBJECTION.** Defendants object to this request as irrelevant to plaintiff's claim and unlikely to lead to admissible evidence.

10.     **OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and compromise the DOC's ability to rehabilitate the plaintiff. Without waiving this objection, DOC parole information is found in the Inmate Handbook, which is issued to all inmates. In addition, criteria specific to an individual inmate's parole is found on his/her green sheet.

11.     **OBJECTION.** Defendants object to this request as privileged and containing information that if release could undermine the secure and orderly operation of the Board and compromise the Board and its staff's ability to rehabilitate the plaintiff. In addition, information specific to an individual inmate's parole criteria is found on his/her green sheet.

<div style="margin-left: 50%;">

**D. MICHAEL FISHER**
**Attorney General**

BY: _____

**MARYANNE M. LEWIS**
**Deputy Attorney General**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

</div>

**Office of Attorney General**
**Litigation Section**
**15th Fl., Strawberry Square**
**Harrisburg, PA 17120**
**(717) 787-9719**

**DATED: December 21, 2000**

**EXHIBIT "C"**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                    :
                                   :
            Plaintiff              :
                                   :
      v.                           :     No. 1:00-CV-00577
                                   :     (Judge Kane)
W. CONWAY BUSHEY, et al.,          :
                                   :
            Defendants             :

## RESPONSES TO INTERROGATORIES DIRECTED TO DEFENDANT HORN

1.    State exactly the reasons why plaintiff was denied a favorable parole recommendation at each relevant parole opportunity.

**RESPONSE:**

> **OBJECTION.** Defendant Horn objects to this interrogatory as overbroad, burdensome, and irrelevant to plaintiff's claim; further it is unlikely to lead to the discovery of admissible evidence.

> By way of further answer, inmates have no right, constitutional or otherwise, to parole. In situations where inmates will be reviewed by the Pennsylvania Board of Probation and Parole, the inmate is first reviewed by the Unit Management team along with the inmate's counselor. If the staff does not recommend parole, the inmate is generally advised of that fact and why.

> I have no personal knowledge regarding the reasons why plaintiff was denied a favorable parole recommendation. As Secretary to the Department of Corrections, I am not involved in these decisions.

2.    Can a prisoner be denied a favorable parole recommendation for being in the hole in administrative custody?

**RESPONSE:**

There is no set standard or written list of criteria that the Unit Management Team must follow in determining whether an inmate is recommended for parole. The circumstances surrounding an inmate's placement into the Restricted Housing Unit could certainly be relevant as to whether that inmate is given a parole recommendation.

3.    State exactly what the criteria are for a prisoner to obtain a favorable parole recommendation.

**RESPONSE:**

There is no set standard or written list of criteria and the decision would vary from one inmate to another. The consideration would include but not be limited to the sentence imposed by the Court, the inmate's compliance with his or her prescriptive program plan and with Department Policies, rules and regulations as well as his or her institutional behavior.

4.    Why was plaintiff given prescriptive program plans that he could not achieve or had already achieved?

**RESPONSE:**

I have no personal knowledge of plaintiff's prescriptive program. As Secretary to the Department of Corrections, I am not involved in designing a prisoner's prescriptive program. These programs are designed by the Treatment staff at the institution where a prisoner is incarcerated and not the Secretary.

5.    Why is or was beneficial data omitted from plaintiff's prison files?

**RESPONSE:**

I have no knowledge that beneficial data was omitted from plaintiff's prison files.

6. State exactly what your prisoner rehabilitation success rate has been for the past ten years.

**RESPONSE:**

**OBJECTION.** Defendant Horn objects to this interrogatory as overbroad, burdensome, and irrelevant to plaintiff's claim; further it is unlikely to lead to the discovery of admissible evidence.

By way of further answer, this information is not routinely compiled and is not generally available.

7. For each misconduct report that plaintiff received for assault, identify each one where the alleged victim(s) was injured, hospitalized or pressed criminal charges.

**RESPONSE:**

I have no personal knowledge of plaintiff's misconducts. As Secretary to the Department of Corrections, I do not routinely review individual inmate misconducts.

By way of further answer, this information was already provided and is already known by the plaintiff.

8. Define exactly what good prison adjustment is.

9. Define exactly what poor prison adjustment is.

**RESPONSE:**

No uniform definition exists within the Department of Corrections that defines good prison adjustment or bad prison adjustment. A number of subjective factors are included in what constitutes good or bad prison adjustment; this includes misconduct status, participation in vocational and educational programs, a prisoner's adherence to a prescriptive program and other factors determined by the Treatment staff at the institution where the inmate is incarcerated.

10. What is the recidivism rate for prisoners released in the past ten years who secured favorable parole recommendations.

**RESPONSE:**

**OBJECTION.** Defendant Horn objects to this interrogatory as overbroad, burdensome, and irrelevant to plaintiff's complaint; it is unlikely to lead to the discovery of admissible evidence.

By way of further answer, this information is not routinely compiled and would not be available in any event.

11. State exactly what the rehabilitation goals of the DOC and its agents are for plaintiff.

**RESPONSE:**

I have no knowledge of what the exact rehabilitation goals are for the plaintiff. As Secretary to the Department of Corrections, I do not personally participate in setting individual prisoner's rehabilitation goals. It is, however, the goal of the Department of Corrections to have inmates involved in a program of self improvement which includes prescriptive programs such as education, vocational training, and other treatment related therapy.

12. Identify any and all defendants whose true identities are unknown, as indicated in the complaint, by providing their true identities.

**RESPONSE:**

After a review of plaintiff's complaint, I have no idea as to the identities of the unknown defendants.

13.    Identify any and all documents which either directly or indirectly substantiate the

answer to the complaint including the relevant defenses raised.

**RESPONSE:**

The following documents were used by counsel in the Answer to the Complaint:

DOC-ADM-801, 803, and 804
Plaintiff's Prescriptive Program
Misconduct Report No. 122000
Grievance No. MAH-0449-98
Grievance No. MAH-0457-98
Misconduct Report No. 110205
Grievance No. MAH-002-99
Grievance No. MAH-0011-99
Grievance No. ROC-1015-98
Grievance No. MAH-0462-98
Grievance No. MAH-0480-98
Grievance No. MAH-0347-99
Grievance No. MAH-0035-99
Grievance - Harassed by guards
Grievance - Chronic Health
Grievance - Medical Staff
Grievance - Magazines
Grievance - Medical Care
Grievance - Medical Staff
Grievance - Radio Purchase
Grievance Library - West Fed. Digest

Grievances - Order of Prescriptive Eyeglass

Grievance - Inmate Accounting West

Grievance - Guitar Bag

Grievance - Mailroom Money Order

Grievance - Money Order ($200)

Grievance - Medical Charges

Grievance - Property Inventory Sheet

Grievance - Retaliation

Grievance - Serious asthma attacks;
   medication

Inmate Request - Account statement for six
   months for Federal Courts

Grievance - Legal Material

Grievance - Books

Grievance - Cable Fees

Grievance - Librarian holding money

Grievance - Law library inadequate

Plaintiff's Notice of Board Decisions
   (Green Sheets) 11/3/95; 10/3/97; 11/18/97;
   2/1/99; and 7/7/00

14.     Identify all persons to be called as witnesses at trial in this action indicating with respect to each such person the specific substance of his/her testimony and whether he/she will be called as an expert witness.

**RESPONSE:**

To date, witnesses other than the named defendants have not been identified by defendants' counsel.

15.     What are the DOC's obligations/responsibilities to the P.B.P.P.?

**RESPONSE:**

The Department of Corrections' responsibilities to the Pennsylvania Board of Probation and Parole are to provide a recommendation concerning an inmate's parole and facilitate the availability of inmates for the Parole Board's interviews.

16.     Why does plaintiff's sentencing order state that his consecutive sentence was to begin at the minimum expiration of all his other sentences.

**RESPONSE:**

I have no personal knowledge what plaintiff's sentencing orders state, as I have never looked at or reviewed his sentence orders. In addition, I would have absolutely no idea of what may have been in the sentencing judge's mind at the time that her or she issued the sentencing order.

17.   Explain how after 1998 plaintiff could be serving a 12 ½ to 25 year sentence when he served the entirety of all his concurrent sentences (five 15 year sentences and a 2 year sentence) at that juncture.

**RESPONSE:**

> **OBJECTION.** Defendant objects to this request as vague. In addition, defendant Horn has no personal knowledge of the sentence or sentences which the Court imposed upon plaintiff.

18.     State exactly what the penalogical and/or rehabilitative justifications are for denying plaintiff medical care for being beyond his minimum sentence.

**RESPONSE:**

I have no personal knowledge of the medical care plaintiff has received or that the plaintiff has been denied medical care.  I am not aware that "being beyond his minimum sentence" has ever been a penalogical or rehabilitative basis for denying medical care.

19.     State exactly when plaintiff became eligible for prerelease programs.

**RESPONSE:**

*See* DC-ADM 805 which sets forth the Department's general policy on Pre-release.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                          :
                                         :
        Plaintiff                        :
                                         :
        v.                               :        No. 1:00-CV-00577
                                         :        (Judge Kane)
W. CONWAY BUSHEY, <u>et al.</u>,         :
                                         :
        Defendants                       :

## VERIFICATION

I, **MARTIN F. HORN,** declare under penalty of perjury that the foregoing

Responses to Interrogatories Directed to Defendant Horn are true and correct to the best of my

knowledge.

_12/28/00_
**DATE**

_Martin F. Horn_
**MARTIN F. HORN, Secretary**
**Department of Corrections**

**EXHIBIT "D"**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHARLES ISELEY,                    :
                                   :
      Plaintiff                  :
                                   :
      v.                         :    No. 1:00-CV-00577
                                   :    (Judge Kane)
W. CONWAY BUSHEY, <u>et al</u>.,            :
                                   :
      Defendants                 :

## <u>UNSWORN DECLARATION OF MARTIN F. HORN</u>

    I, **MARTIN F. HORN,** hereby declare under the penalty of perjury that the following is

true and correct and based upon my personal knowledge:

    1.    I am employed as the Secretary of the Pennsylvania Department of Corrections

and have held this position since February, 1995. I have been employed in the field of

Corrections in the State of New York and Pennsylvania since 1969.

    2.    As Secretary, I serve as the highest governmental official and administrative head

of the Pennsylvania Department of Corrections, ( hereinafter "Department"). I am familiar with

standard policies, procedures and documents utilized by State Correctional Institutions and the

Department, understand their reasoning and purpose, and have overseen the development and

implementation of the Department of Corrections' policy.

    3.    In the course of this litigation the plaintiff has requested his complete medical

records to date, and his complete prison file to date; and "policies, memorandums, rules or

manuals or instructions concerning the procedures for a prisoner to obtain access/copies of his

prison/medical/parole/denial records." He also seeks the descriptions of all of the defendants

employed by the Department (<u>See</u> Request for Production of Documents ¶¶1,2,3,4).

4.     In plaintiff's first request he seeks job descriptions of all the defendants.  Where they exist, job descriptions contain information unique to each individual's position, hours worked, shift and schedule rotation and duties which pertain to specific security measures. Release of this information could pose a threat to the security of the correctional institution. Some DOC employees do not have a generic, standard Commonwealth job description, but have a specification sheet.  There is no job description for a Corrections Officer I, because the corrections officer may be assigned to a myriad of posts, each of which has specific, sensitive and confidential orders. I do not have a standard Commonwealth job description.

5.     I have personally reviewed plaintiff's remaining requests for production of documents, defendants' responses and objections. I am familiar with the kind of information contained in the documents, plaintiff, Charles Iseley, seeks and have reviewed portions of the specific documents he has requested to verify that they contain this information.

6.     In my opinion, disclosure of these documents in their entirety could undermine the secure and orderly operation of the Department  and could seriously compromise the Department, SCI-Coal Township  and their staff's ability to carry out a significant penological goal--the rehabilitation of the plaintiff.

7.     In administering the Commonwealth's penal system, various operational policies exist relating to a wide variety of subjects including the identification, management, security and treatment of prisoners.  In addition these policies also cover a very broad spectrum of different treatment-related activities, including, but not limited to: diagnostic testing, classification assessment, evaluations, prescription of treatment, and monitoring of institutional placement.

8.    The files Iseley seeks contain documents, correspondence, commitment orders, psychological and psychiatric evaluations, corrections counselor's reports, conduct records, adjustment records, transfer petitions, work and quarters assignment records, misconduct reports and resolutions, requests to staff and responses, classification summaries, sentence status summaries, and identification documents.

9.    In addition, the treatment and medical file contains entries by numerous corrections treatment personnel, including counselors, physicians, and treatment staff. This portion of the jacket is considered a treatment document and enables the appropriate treatment staff to candidly record their impressions, evaluations, and recommendations with respect to the inmate's treatment program.

10.    It contains notations of inmate complaints and staff reaction and responses thereto, status reports on adjustment progress, staff members' opinions of the inmates attitude and behavior, narratives by counselors and information regarding the relationship of the subject inmate with staff and with his fellow inmates.

11.    If an inmate were to learn how he will be evaluated by staff, such as in the parole vote sheets which plaintiff seeks, and how particular responses are likely to be interpreted, he would then be capable of manipulating the results. The results of this could be devastating to the Department. First and foremost, the individual's situation may not be assessed accurately, and therefore, a valid course of rehabilitative treatment would not be prescribed. Second, these inaccuracies could lead to improper institutional placement, with the inmate being placed where he is a danger to others or visa versa. Finally, the inaccurate information may allow the inmate

-3-

to be prematurely released from custody, e.g. to be paroled, and thus may an unacceptable risk to the community at large.

12.    To allow release of treatment information and related records to inmates could seriously impair the treatment process.   Much of what is contained in inmate treatment-related files, such as the psychiatric record, are frank observations and recommendations of treating professionals and institutional counseling staff.  If this information or related records  were to be disclosed to others, including the inmate involved, it would necessarily inhibit the staff from performing their duties in a professional manner.  The value of staff comments and observations would be lessened, and those making decisions regarding the inmate and his security level and risk factors, would be placed at a distinct disadvantage in that they would not have the benefit of candid and honest appraisals.

13.    The nature of the documents in the inmate's file makes it important from a security, administrative,  and sound correctional practices standpoint to maintain their confidentiality.  Administrative decisions are routinely made based upon the recommendation and comments contained in these documents.  The value of these comments lies in their frankness; if the documents were readily available to the inmate or the public, the staff at the institutions would tend to refrain from entering their honest opinion and evaluations, especially in those very situations or where candid and concise information and observation are most important.  Consequently, the staff who make treatment and programming decisions based on these documents would not have the benefit of candid observations.

14.    It is my considered opinion, based upon years of experience in the field of corrections,  that if the entire inmate file and medical file were routinely made available to

-4-

inmates, it would be detrimental to the treatment and safety of the inmates, the safety of our staff and the security and order of our institution, and would significantly increase the difficulty of prison administration. DOC-ADM 003 addresses the specific information contained in their institution and medical files that is available to all inmates. In accordance with this directive, plaintiff may review these portions of his institutional and medical file.

15.     Based upon my review of the documents requested and available documents, I believe that disclosure of Mr. Iseley's the entire medical and prison file would undermine the secure and orderly operation of SCI-Coal Township, compromise the staff's ability to carry out penological goals, could ultimately threaten the security of the institution, and have a deleterious effect on the rehabilitation of Mr. Isley himself.

8/29/00
_____
**DATE**

_____
**MARTIN F. HORN, SECRETARY**
**Pennsylvanian Department of Corrections**

**EXHIBIT "E"**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                            :
                                           :
          Plaintiff                        :
                                           :
     v.                                    :          No. 1:00-CV-00577
                                           :          (Judge Kane)
W. CONWAY BUSHEY, et al.,                   :
                                           :
          Defendants                       :

### UNSWORN DECLARATION OF WILLIAM F. WARD

I, William F. Ward, hereby state under the penalty of perjury that the following is true and correct based upon my personal knowledge:

1.      I am employed by Commonwealth of Pennsylvania, Board of Probation and Parole ("Board"). I am the Chairman of the Board and have held this position since March 31, 1997.

2.      As chairman, I am the chief executive and responsible for the overall administration of the Board. I am familiar with the standard policies, procedures and documents utilized by the Board and understand their reasoning and purpose. I am also familiar with the Board's record keeping practices and the policies concerning dissemination of the various records and information we maintain concerning inmates .

3.      In the course of this litigation the plaintiff has requested a variety of institutional records. Specifically, he seeks his complete parole file to the date, and copies of job descriptions of the defendants employed by the Board.

4.      No standard Commonwealth of Pennsylvania job description exists for the Secretary to the Board. In addition, job descriptions of parole agents contain work assignments, personnel,

and security related information.   Because of this information, job descriptions are regarded as confidential.

5.    I have personally reviewed plaintiff's request for production of documents and defendants responses and objections.  I am familiar with the kind of information contained in the parole file of Charles Iseley and I have reviewed portions of the specific documents he has requested to verify that they contain this information.

6.    In my opinion disclosure of his file in its entirety as requested will undermine the secure and orderly operation of the Board and will seriously compromise the Board and their staff's ability to carry out a significant penological goal — the rehabilitation of the plaintiff.

7.    Much of what is contained in parole files are documents such as Board and counselor's notes, parole reviews, vote sheets and psychological files contain frank observations and recommendations of the Board and the Department of Corrections.  This information is kept confidential and is not made available to inmates.  If this information or the related documents were disclosed it would inhibit the candor of those professionals in making their observation and remarks and, as a result impair rehabilitation efforts.  In addition, if plaintiff knows how he is likely to be evaluated by staff and how his responses are likely to be interpreted, he is capable of formulating his response to manipulate the results.  This could lead to inappropriate decisions regarding his eligibility to be released into the community through parole which might present a risk to the community at large.

8.    In addition, pursuant to  37 Pa.Code §61.2, "[r]ecords, reports and other written things, information, evaluation, opinions and voice recordings in the Board's custody or possession or touching on matters concerning probation or parole are private, confidential, and privileged;

-2-

except that a brief statement of the reasons for actions by the Board granting or refusing parole will at all reasonable times be open to public inspection in the offices of the Board." Other than the Notices of the Board's Decision or "green sheets" information contained in parole files is not available to inmates.

9.    In his request, Iseley is seeking his entire parole file. After a review of his file, it is my opinion that release of this information could compromise the Board's and staff's ability to rehabilitate the plaintiff. The information contained in his file contains the same sort of remarks and observations described in paragraph 6 of this declaration and it is this type of information that is kept confidential and privileged pursuant to 37 Pa. Code §61.2.

10.    For these reasons, I conclude that disclosure of the information plaintiff seeks in document request 5 would undermine the legitimate penological goals of rehabilitating and paroling the plaintiff and other inmates, as well as create internal security concerns for the Department of Corrections.

_August 29, 2000_
**DATE**

_William F. Ward_
**WILLIAM F. WARD**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                             :
                                            :
          Plaintiff                         :
                                            :
     v.                                     :          No. 3:00-CV-00577
                                            :          (Judge Kane)
W. CONWAY BUSHEY, et al.,                    :
                                            :
          Defendants                        :

### CERTIFICATE OF SERVICE

I, Maryanne M. Lewis,  Deputy Attorney General, hereby certify that on this date I

caused to be served the foregoing, Defendants' Memorandum of Law in Opposition To Plaintiff's

Motion to Compel Discovery, by depositing a copy of the same in the United States mail, postage

prepaid, in Harrisburg, PA., addressed to the following:

> Charles Iseley, #AM-9320
> SCI- Coal Township
> 1 Kelly Drive
> Coal Township, PA  17866-1020

MARYANNE M. LEWIS
DEPUTY ATTORNEY GENERAL

**DATE: August 31, 2000**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                           :

       Plaintiff                        :

                        :

    v.                                    :          No. 3:00-CV-00577
                        :          (Judge Kane)

W. CONWAY BUSHEY, et al.,                  :

       Defendants                       :

**FILED**
**HARRISBURG**

JAN 2 2 2001

MARY E. D'ANDREA, CLERK
Per_____
      DEPUTY CLERK

### CERTIFICATE OF SERVICE

    I, Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this date I

caused to be served the foregoing, Defendants' Memorandum of Law in Opposition To Plaintiff's

Motion to Compel Discovery, by depositing a copy of the same in the United States mail, postage

prepaid, in Harrisburg, PA., addressed to the following:

> Charles Iseley, #AM-9320
> SCI- Coal Township
> 1 Kelly Drive
> Coal Township, PA   17866-1020

**MARYANNE M. LEWIS**
**DEPUTY ATTORNEY GENERAL**

**DATE: January 22, 2001**