IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,
    Plaintiff,

    V.

W. CONWAY BUSHEY, et al,
    Defendants.

Civil Action No.
1:CV-00-0577

FILED
HARRISBURG, PA

FEB 1 2001

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

SUPPLEMENTAL BRIEF FOR MOTION TO COMPEL DISCOVERY

The following is the disputed discovery material and its relevance:

1. Job descriptions of defendants and each of them.

Relevant because plaintiff must know the responsibilities and qualifications for each defendant's position regarding, for example, grievance review, disciplinary review, administrative review, appeal review, etc. Without them a defendant can claim that it was not his job and plaintiff has no way to impeach the witness or otherwise challenge his veracity/credibility. ~~as his fill's prison file~~ The court should note that plaintiff has in the past, had numerous job descriptions of upper/lower echelon DOC employees' positions.

2. Plaintiff's prison file.

The court is well aware that the defendants have stolen all of plaintiff's documentation concerning this matter. Consequently, plaintiff needs copy of same to get copies of misconduct/administrative reports, grievances, appeals, parole recommendations, request forms, investigation reports, etc. regarding this matter.

3. Rules/Policies/Procedures/Memos/Manuals concerning procedures to secure access to prison/medical/dental/parole records.

Relevant because plaintiff avers that his files contain false data and the defendants will claim that he could have followed some procedure they have to correct it.

1

4. Medical Records

Relevant because mental health and psych data which is false is in files and plaintiff needs access to them. The court should note that plaintiff did have them until stolen by defendants.

5. Parole files

Relevant because contains false data and "John Doe" defendants true identities

6. Statistical data concerning repeat offenders, prisoners receiving favorable parole review/recommendation, recidivism rate, rehabilitation success rates, etc.

Relevant because defendants continually claim that all their actions were for the rehabilitation of plaintiff when in fact, that is not true because most prisoners who receive favorable parole review come back to prison. The rehabilitation success rate of the DOC is key because the parole board almost never paroles a prisoner, especially a Black prisoner, without its recommendation. The PBPP almost exclusively defers to the DOC whose criteria for favorable parole recommendation has absolutely no positive correlation with successful integration of a prisoner into society. In fact, it has been known for decades that there is no correlation between behavior in prison and behavior out of prison. U.S. ex rel Johnson v. Chairman 500 F.2d 925 (2d Cir. 1974); Kohlman v. Norton 380 F. Supp. 1073 (D. Conn. 1974). In essence, plaintiff needs the discovery to prove that the defendants' criteria for parole are illogical, nonsensical, ineffective, inefficient and capricious and arbitrary. The statistical data exists.

7. Interrogatories (attached).

They are relevant because plaintiff avers that he was denied parole because of false data and/or retaliatory reasons. The answers to the interrogatories would provide admissible evidence which supports plaintiff's averments

in his complaint.

Date: January 30, 2001

Respectfully submitted

Charles Isley
Charles Isley
AM-9320, 1 Kelley Dr.
Coal Twp., PA 17866

3

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,
   Plaintiff,
      v.
W. CONWAY BUSHEY, et al.,
   Defendants.

Civil Action No.
1:00-CV-00577

## INTEROGATORIES TO DEFENDANT BUSHEY

Pursuant to Rule 33, FRCP, plaintiff submits the following interogatories. You are directed to answer each of the interogatories in writing under oath within thirty days of service:

1. Explain why, exactly, plaintiff must receive a favorable DOC recommendation before he may become eligible for parole release.

2. Explain exactly why plaintiff's misconduct reports bar him from obtaining parole release.

3. What are the PBPP's obligations/responsibilities to the DOC?

4. State exactly what the criteria are for determining whether a prisoner is suitable for parole release.

5. Explain exactly what the PBPP's duties/obligations/responsibilities are to its client (ie, plaintiff).

6. Explain exactly what the policies/procedures/rules/practices are for investigating asserted false/inaccurate data in a client's records/files.

7. Explain exactly what the PBPP's penological goals/procedures are.

1

8. State exactly what the PBPP's penological goals/procedures are.

9. State exactly why plaintiff was not reviewed at the minimum expiration of any of his sentences (i.e., his concurrent sentences, his consecutive sentence, his aggregated sentence.

10. State exactly how plaintiff could be serving a $12\frac{1}{2}$ to 25 year sentence after 1998 when he served the entirety of all his sentences at that juncture, save one (i.e., plaintiff maxxed out all his 15 year sentences and his 2 year sentence maximums).

11. State exactly why plaintiff was denied parole each time explaining in detail the rationale and reasons for the decisions.

12. State the policies/procedures followed to corroborate the accuracy of plaintiff's records/files.

13. State exactly what the penological/rehabilitave justifications are for denying plaintiff medical care for being beyond his minimum sentence.

14. Provide the true identities for any and all defendants who are not properly identified in the complaint.

15. ~~State exactly~~ Define exactly what good prison adjustment is.

16. Define exactly what poor prison adjustment is.

17. Define exactly what substance abuse is.

18. State exactly what plaintiff's parole rights are pursuant to state/federal law and state/board regulations/policies/rules/procedures/etc.

2

19. Approximately what percentage of prisoners in the past five years were granted parole without favorable DOC recommendation?

20. How useful and accurate are were or plaintiff's psychiatric /psychological evaluation or refusal of same in denying parole to him?

Date: November 23, 2000

Respectfully submitted,

Charles Iseley
Charles Iseley
AM-9320, 1 Kelley Dr.
Coal Twshp., PA 17866

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                          :
                                         :
         Plaintiff                       :
                                         :
    v.                                   :        No. 1:00-CV-00577
                                         :        (Judge Kane)
W. CONWAY BUSHEY, et al.,                :
                                         :
         Defendants                      :

## RESPONSES TO INTERROGATORIES DIRECTED
## TO DEFENDANT HORN

1.      State exactly the reasons why plaintiff was denied a favorable parole recommendation

at each relevant parole opportunity.

**RESPONSE:**

OBJECTION.  Defendant Horn objects to this interrogatory as overbroad, burdensome, and irrelevant to plaintiff's claim; further it is unlikely to lead to the discovery of admissible evidence.

By way of further answer, inmates have no right, constitutional or otherwise, to parole.  In situations where inmates will be reviewed by the Pennsylvania Board of Probation and Parole, the inmate is first reviewed by the Unit Management team along with the inmate's counselor.  If the staff does not recommend parole, the inmate is generally advised of that fact and why.

I have no personal knowledge regarding the reasons why plaintiff was denied a favorable parole recommendation.  As Secretary to the Department of Corrections, I am not involved in these decisions.

2.    Can a prisoner be denied a favorable parole recommendation for being in the hole in

administrative custody?

**RESPONSE:**

There is no set standard or written list of criteria that the Unit Management Team
must follow in determining whether an inmate is recommended for parole.  The
circumstances surrounding an inmate's placement into the Restricted Housing Unit
could certainly be relevant as to whether that inmate is given a parole
recommendation.

3.    State exactly what the criteria are for a prisoner to obtain a favorable parole

recommendation.

**RESPONSE:**

There is no set standard or written list of criteria and the decision would vary from
one inmate to another.  The consideration would include but not be limited to the
sentence imposed by the Court, the inmate's compliance with his or her prescriptive
program plan and with Department Policies, rules and regulations as well as his or
her institutional behavior.

4.      Why was plaintiff given prescriptive program plans that he could not achieve or had

already achieved?

**RESPONSE:**

I have no personal knowledge of plaintiff's prescriptive program. As Secretary to the Department of Corrections, I am not involved in designing a prisoner's prescriptive program. These programs are designed by the Treatment staff at the institution where a prisoner is incarcerated and not the Secretary.

5.      Why is or was beneficial data omitted from plaintiff's prison files?

**RESPONSE:**

I have no knowledge that beneficial data was omitted from plaintiff's prison files.

6.      State exactly what your prisoner rehabilitation success rate has been for the past ten

years.

**RESPONSE:**

**OBJECTION.**    Defendant Horn objects to this interrogatory as overbroad, burdensome, and irrelevant to plaintiff's claim; further it is unlikely to lead to the discovery of admissible evidence.

By way of further answer, this information is not routinely compiled and is not generally available.

7.    For each misconduct report that plaintiff received for assault, identify each one where the alleged victim(s) was injured, hospitalized or pressed criminal charges.

**RESPONSE:**

I have no personal knowledge of plaintiff's misconducts.  As Secretary to the Department of Corrections, I do not routinely review individual inmate misconducts.

By way of further answer, this information was already provided and is already known by the plaintiff.

8.    Define exactly what good prison adjustment is.

9.    Define exactly what poor prison adjustment is.

**RESPONSE:**

No uniform definition exists within the Department of Corrections that defines good prison adjustment or bad prison adjustment.  A number of subjective factors are included in what constitutes good or bad prison adjustment; this includes misconduct status, participation in vocational and educational programs, a prisoner's adherence to a prescriptive program and other factors determined by the Treatment staff at the institution where the inmate is incarcerated.

10.     What is the recidivism rate for prisoners released in the past ten years who secured

favorable parole recommendations.

**RESPONSE:**

> **OBJECTION.**   Defendant Horn objects to this interrogatory as overbroad,
> burdensome, and irrelevant to plaintiff's complaint; it is unlikely to lead to the
> discovery of admissible evidence.
>
> By way of further answer, this information is not routinely compiled and would not
> be available in any event.

11.     State exactly what the rehabilitation goals of the DOC and its agents are for plaintiff.

**RESPONSE:**

> I have no knowledge of what the exact rehabilitation goals are for the plaintiff.  As
> Secretary to the Department of Corrections, I do not personally participate in setting
> individual prisoner's rehabilitation goals.  It is, however, the goal of the Department
> of Corrections to have inmates involved in a program of self improvement which
> includes prescriptive programs such as education, vocational training, and other
> treatment related therapy.

12.     Identify any and all defendants whose true identities are unknown, as indicated in the

complaint, by providing their true identities.

**RESPONSE:**

> After a review of plaintiff's complaint, I have no idea as to the identities of the
> unknown defendants.

13.   Identify any and all documents which either directly or indirectly substantiate the answer to the complaint including the relevant defenses raised.

**RESPONSE:**

The following documents were used by counsel in the Answer to the Complaint:

| | |
|---|---|
| DOC-ADM-801, 803, and 804 | Grievance Library - West Fed. Digest |
| Plaintiff's Prescriptive Program | Grievances - Order of Prescriptive Eyeglass |
| Misconduct Report No. 122000 | Grievance - Inmate Accounting West |
| Grievance No. MAH-0449-98 | Grievance - Guitar Bag |
| Grievance No. MAH-0457-98 | Grievance - Mailroom Money Order |
| Misconduct Report No. 110205 | Grievance - Money Order ($200) |
| Grievance No. MAH-002-99 | Grievance - Medical Charges |
| Grievance No. MAH-0011-99 | Grievance - Property Inventory Sheet |
| Grievance No. ROC-1015-98 | Grievance - Retaliation |
| Grievance No. MAH-0462-98 | Grievance - Serious asthma attacks; |
| Grievance No. MAH-0480-98 |    medication |
| Grievance No. MAH-0347-99 | Inmate Request - Account statement for six |
| Grievance No. MAH-0035-99 |    months for Federal Courts |
| Grievance - Harassed by guards | Grievance - Legal Material |
| Grievance - Chronic Health | Grievance - Books |
| Grievance - Medical Staff | Grievance - Cable Fees |
| Grievance - Magazines | Grievance - Librarian holding money |
| Grievance - Medical Care | Grievance - Law library inadequate |
| Grievance - Medical Staff | Plaintiff's Notice of Board Decisions |
| Grievance - Radio Purchase |    (Green Sheets) 11/3/95; 10/3/97; 11/18/97; |
| |    2/1/99; and 7/7/00 |

14.   Identify all persons to be called as witnesses at trial in this action indicating with respect to each such person the specific substance of his/her testimony and whether he/she will be called as an expert witness.

**RESPONSE:**

To date, witnesses other than the named defendants have not been identified by defendants' counsel.

15.    What are the DOC's obligations/responsibilities to the P.B.P.P.?

**RESPONSE:**

The Department of Corrections' responsibilities to the Pennsylvania Board of Probation and Parole are to provide a recommendation concerning an inmate's parole and facilitate the availability of inmates for the Parole Board's interviews.

16.    Why does plaintiff's sentencing order state that his consecutive sentence was to begin at the minimum expiration of all his other sentences.

**RESPONSE:**

I have no personal knowledge what plaintiff's sentencing orders state, as I have never looked at or reviewed his sentence orders. In addition, I would have absolutely no idea of what may have been in the sentencing judge's mind at the time that her or she issued the sentencing order.

17.    Explain how after 1998 plaintiff could be serving a 12½ to 25 year sentence when he served the entirety of all his concurrent sentences (five 15 year sentences and a 2 year sentence) at that juncture.

**RESPONSE:**

**OBJECTION.** Defendant objects to this request as vague. In addition, defendant Horn has no personal knowledge of the sentence or sentences which the Court imposed upon plaintiff.

18.    State exactly what the penalogical and/or rehabilitative justifications are for denying

plaintiff medical care for being beyond his minimum sentence.

**RESPONSE:**

I have no personal knowledge of the medical care plaintiff has received or that the plaintiff has been denied medical care. I am not aware that being beyond his minimum sentence has ever been a penalogical or rehabilitative basis for denying medical care.

19.    State exactly when plaintiff became eligible for prerelease programs.

**RESPONSE:**

*See* DC-ADM 805 which sets forth the Department's general policy on Pre-release.

20.     Explain   exactly   what   the   policies/practices/procedures/regulations   are   for
disciplinary proceedings (including appeals thereof and review of same).

**RESPONSE:**

See DC-ADM 801.

**D. MICHAEL FISHER**
**Attorney General**

BY:   _____

**MARYANNE M. LEWIS**
**Deputy Attorney General**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

**Office of Attorney General**
**Litigation Section**
**15ᵗʰ Fl., Strawberry Square**
**Harrisburg, PA  17120**
**(717) 787-9719**

**DATED:       December 21, 2000**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY
    Plaintiff

    V.

W. CONWAY BUSHEY, et al,
    Defendants

Civil Action No.
1:CV-00-0577

CERTIFICATE OF SERVICE

    I hereby certify that I caused to be served the foregoing Supplemental Brief for Motion to Compel Discovery by mailing a copy of same to:

Maryanne Lewis, dag.
Office of Atty Genl
Strawberry Sq. 15th Fl
Harrisburg PA 17120

Date: January 30, 2001

Charles Iseley