**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG
JUN 01 2001
MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

| | |
|---|---|
| CHARLES ISELEY, | : |
| Plaintiff | : |
| v. | : No. 1:00-CV-00577 |
| | : (Judge Kane) |
| W. CONWAY BUSHEY, et al., | : |
| Defendants | : |

**DEFENDANTS' STATEMENT OF MATERIAL
FACTS AS TO WHICH THERE IS NO
GENUINE ISSUE IN DISPUTE**

Defendants, pursuant to Middle District Rule 7.4 and through their counsel, submit that the following facts are material to this action and genuinely not in dispute:

1.  Plaintiff is Charles Iseley, an inmate, currently incarcerated at the State Correctional Institution at Huntingdon, Pennsylvania ("SCI-Huntingdon").

2.  Defendants are Conway Bushey, Robert Myers, Terry Whitman, Gregory Gaertner, Sam Mazzotta, Sara Craig, Charles Mitchell, Gregory Tressler, David Wakefield, Martin Horn and Robert Bitner, Martin Dragovich, Carol Dotter, Kermit Breon, Robert Novotney J. Kevin Kane, Kerry Dennison, Thomas Chesney, Marva Cerullo, Richard Spaide, Robert Yarnell, Sally Gennarini, James Unell, John

Corbacio, Thomas Hornung, Brenda Wildenstein, Michael Youron, John Eichenberger, Jerome Fryzel, Gerald Gavin, Lawrence Mahally, Bernie Birosaki, Steve Peek, Robert Mackreth, Brian Dropinski, Jason Grow.

3.  On July 2, 1997, Iseley was transferred from SCI-Greene to SCI-Rockview. While at SCI-Rockview, Iseley's prescriptive program plan recommended educational and vocational programming, drug and alcohol programming and therapeutic community unit programming. The plan also recommended that Iseley remain misconduct free and maintain contact with his counselor. (See Whitman Dec.)

4.  On August 25, 1998, Iseley was placed in Administrative Custody pending an investigation of possible involvement in a fight. Information regarding the fight and identification of Iseley was provided by confidential sources of information. (See Mitchell Declaration)

5.  On August 31, 1998, hearing examiner Mitchell conducted an in-camera hearing with Lt. Eaton to determine the reliability of the confidential source of information utilized in the misconduct report. This type of hearing is in accordance with DC ADM 801. (Id.)

6. The reliability hearing was conducted in-camera because the nature of the reliability of the evidence could, by itself, reveal the identity of the informants. Iseley, therefore was not present at this hearing. (Id.)

7. At the reliability hearing, Lt. Eaton explained under oath how the informants were in a position to observe, what information the sources provided and that the information was co-corroborated by others. In addition, information was provided to the hearing examiner that the informant had provided information in the past that was proven to be reliable. (Id.)

8. Hearing Examiner Mitchell found that the testimony of Lt. Easton and informants met the reliability criteria as outlined in DC-ADM 801. (Id.)

9. On September 2, 1998, Iseley had a hearing regarding Misconduct No. A122000. At the hearing Iseley pled not guilty and submitted his version of the incident. (Id.)

10. After hearing the evidence, the hearing examiner believed Lt. Eaton's report and the CSI information over Iseley's denial. Iseley was sanctioned on 90 days Disciplinary Custody. (Id.)

11. Iseley was found guilty of the misconduct because the hearing examiner based his finding on the credibility evidence, testimony, and reports. (Id.)

12. On September 10, 1998, Iseley appealed Misconduct No. A 122000 to the Program Review Committee ("PRC"). The PRC reviewed the misconduct report, the reliability hearing report, Iseley's version and evidence presented, the hearing examiners finding, the sanction, and the issues Iseley raised on appeal. Based upon their review, the PRC's denied Iseley's appeal. (See Whitman Declaration)

13. Iseley appealed the PRC decision regarding Misconduct No. A 122000, to the Chief Hearing Examiner of the DOC, Robert Bitner. Bitner reviewed the misconduct report, the hearing examiners' findings and reviewed the issues raised in Iseley's appeal. Based upon his review, Bitner denied Iseley's appeal of Misconduct No. A122000, on October 6, 1998. (See Bitner Declaration)

14. On December 2, 1998, Iseley was transferred from SCI-Rockview to SCI-Mahanoy. Iseley was not assigned a job at SCI-Mahanoy in December of 1998, because he stated to the Initial Reception Committee that he did not want to work for so little pay. (Id., Chesney Declaration)

15. On December 13, 1998, Iseley filed Grievance No. MAH-0457-98 alleging that he was harassed, threatened and fired from is job by corrections officer McKreth. (Id.)

16. Carol Dotter, the grievance coordinator at SCI-Mahanoy reviewed the grievance and found it to be false and without merit, based upon the information provided to her. (See Dotter Dec., Grievance Record MAH-0457-98.)

17. Iseley appealed Dotter's findings to the Superintendent on December 24, 1998. On December 29, 1998, Superintendent Dragovich reviewed Iseley's original grievance, the grievance officer's findings and Iseley's appeal. Dragovich found that Iseley did not have a job at SCI-Mahanoy and was belligerent with officer McKreth. The Superintendent denied Iseley's appeal. (See Dotter Dec., Grievance Record MAH-9457-98)

18. Iseley appealed Grievance No. 0457-98 to the Chief Hearing Examiner of the DOC, Robert Bitner. Bitner concurred with the Grievance Coordinator's and the Superintendent's responses and denied Iseley's appeal on January 13, 1999. Bitner's findings were based upon his review of the grievance record. (See Bitner Dec.)

19. On December 14, 1998, Iseley went to Unit Manager's Chesney office and asked permission to go to the commissary, after the block's scheduled commissary. When Chesney refused the request, Iseley became argumentative with Chesney. Chesney then ordered Iseley to leave his office. (See Chesney Dec.)

20. Iseley refused to leave and began using obscene language. Iseley was then issued Misconduct No. A 110205 for refusing to obey and order and using obscene language. (See Chesney Dec.)

21. On December 16, 1998, a hearing was held by hearing examiner Kermit Breon regarding Misconduct No. 110205. Prior to the hearing, Iseley's witnesses were not permitted as Iseley admitted that the staff witnesses he requested were not present at the time and place that the incident took place. (See Misconduct Record 110205)

22. At the hearing Breon considered Chesney's report as well as Iseley's version. Based upon the information presented, Breon believed Chesney's report that Iseley refused to obey an order and sanctioned Iseley to 30 days disciplinary custody. ( Id.)

23. Iseley then appealed the misconduct to the PRC. Upon review of the misconduct report record, Iseley's version, and the hearing examiner's findings, the PRC denied Iseley's appeal. (See Spaide Dec., Misconduct Record 110205)

24. Iseley appealed Misconduct Report No. 110205 to the Chief Hearing Examiner of the DOC, Robert Bitner. Bitner, based upon his review of the misconduct, the hearing examiners finding, Iseley's documentation and the PRC and superintendent review, denied the appeal. (See Bitner Declaration)

25. On December 17, 1998, Iseley submitted inmate grievance No. MAH-0462-98, alleging that his cell lights remain on at night in violation of his constitutional rights. (See Grievance Record MAH 0462-98; Dotter Dec.)

26. Carol Dotter, the Grievance Coordinator, responded to Iseley on December 17, 1998, explaining to him that the Low intensity night lights are necessary for security in the L-5 unit. (Id.)

27. Iseley appealed Dotter's response to the Superintendent Dragovich and to the Chief Hearing Examiner, Robert Bitner. Both Bitner and Dragovich denied Iseley's appeal. (See Grievance Record MAH 0482-98; Bitner Dec.)

28. On December 26, 1998, Iseley filed Grievance No. MAH 0479-98, alleging he is not permitted to receive the alternative protein menu when pork is served. On January 4, 1999, the Food Service Manager, Robert Yarnell advised Iseley that he would be allowed to receive te pork alternative if he signed up for the program. Prior to January 4, 1999, Iseley had not signed up for the protein alternative menu at SCI-Mahanoy. (See Grievance Record MAH-0479-98, Dotter Dec.; Yarnell Dec.)

29. Iseley appealed Yarnell's response to the Superintendent Dragovich and to the Chief Hearing Examiner, Robert Bitner. After a review of the grievance record, both Bitner and Dragovich denied Iseley's appeal. (Id.).

30. In January, 1999, Iseley was placed on grievance restriction, pursuant to DOC-ADM 804, by Superintendent Dragovich. Dragovich believed that Iseley was not making a good faith use of the grievance system, not that Iseley was making a legitimate effort to resolve problems before using the grievance system as outlined in ADM 804 §B. (See Memorandum dated 1/3/99)

31. On December 17, 1998, Iseley was presented with a mental health informed consent document which Iseley reviewed and signed. On December 24, 1998, Iseley wrote the chief psychologist Youron and requested that his consent be revoked and that the original document be returned to him. (See Grievance Record No. 0002-99;Youron Dec.)

32. On December 24, 1999, Youron wrote to Iseley and informed him that his consent was revoked. The original document was returned to Iseley and a note was made on his DC-14 that Iseley revoked his consent and that the document was returned to him. (Id)

33. On January 3, 1999, Iseley filed Grievance No. 0002-99 alleging that Dennsion misrepresented himself to Iseley was a member of the Board of Probation and Parole and that James Unell, the inmate program manager did not explain matters to him satisfactorily. (See Grievance No. 0002-99; Dotter Dec.)

34. On January 14, 1999, Unell responded to Iseley informing him that his consent was withdrawn per his request on December 14, 1998, and that the original document was returned to him, and that all the elements of his grievance has been fully addressed. (See Unell Dec.)

35. On January 26, 1999, Iseley appealed Unell's response to Superintendent Dragovich, who after review of the grievance and Unells' response, informed Iseley that Dennsion and Unell followed proper procedures. Dragovich denied Iseley's appeal. (See Grievance Record No. 000299)

36. Iseley further appealed Grievance No. MAH-0002-99 to the Chief Hearing Examiner Robert Bitner. Bitner, who after a review of the grievance, the response, and the Superintendent's findings, denied the appeal. (See Bitner Dec.)

37. On March 4, 1999, Iseley submitted an inmate's request to staff member, directed to superintendent Dragovich. Iseley alleged that Islamic materials were confiscated and that Lt. Gavin made threats physical injury and racial slurs toward him. (See Inmate Request To Staff Member dated 3/4/99)

38. Dragovich responded to Iseley on March 5, 1999 and informed him that the two letters in question were confiscated because they had no return address on them and contained material which violated DOC policy governing incoming publications. (Id.)

39. On January 27, 1999, Iseley filed grievance No. MAH-0035-99, alleging that upon his release from the Restricted Housing Unit, he discovered items of his personal property missing, including twelve publications/magazines. (See Grievance Record No. MAH 0035-99; Dotter Dec.)

40. On January 28, 1999, Lt. Mahally responded to Iseley grievance informing him that his personal property inventory sheet that accompanied him to SCI-Mahanoy reflected that he had seven magazines/publications. Mahally further explained to Iseley that following his confinement to the RHU his property was packed and secured in the property room. (See Grievance Record No. MAH 0035-99.; Dotter Dec.)

41. Iseley appealed the response to Grievance No. MAH-0035-99 to Dragovich and Bitner, who denied Iseley's appeal. (See Grievance Report No. MAH 0035-99; Bitner Dec.)

42. In March of 1999, Iseley filed grievance No. MAH-0076-99 alleging that the medical department wrongfully charged him for stick call regarding a chronic condition, that he was being charged for glasses that he did not want and that the medical department refused to refer him for corneal implants. (See Grievance Report No. MAH-0076-98; Dotter Dec.)

43. In his response to Iseley's grievance, Superintendent Dragovich informed Iseley that he did not order photo gray lenses or sign a cash slip for the photo grey lenses and that treatment of his visual imperfection would not be corrected through corneal transplants or photo refractive keratotmy because this procedure is cometic and be corrected through lenses. Dragovich denied Iseley's appeal of the grievance. Bitner, based upon the information and documentation provided, also upheld the responses provided to Iseley at the institutional level. (See Grievance Report No. MAH 0076-99; Bitner Dec.)

44. On March 15, 1999, Iseley's guitar bag was confiscated for security reasons because the case had excessive soft padding which could be used to conceal contraband. Iseley then filed a Grievance No. MAH-0014-99 concerning the confiscation of the bag. It was explained to Iseley that the bag was confiscated for security reasons. (See Grievance Record No. MAH 0014-99)

45. In February of 1999, Iseley ordered a radio which he then wished to exchange and then receive a refund. Iseley refused to send out the cassette player to the vender for the refund; rather he elected to file a grievance. Iseley filed a grievance No. MAH-0014-99 concerning the return of the radio. (See Grievance Record No. MAH-0014-99; Dotter Dec. )

46. On August 27, 1999, a safety and security check was conducted on Iseley's cell. Officer Dropinski ordered Iseley to remove an air freshener from his light fixture. After given the order, Iseley aggressively approached Dropinski and threatened to harm the him. Iseley was then issued Misconduct No. A27518, Threatening An Employee with Bodily Harm. (See Misconduct Report No. A27518; Dropinski Dec.)

47. On August 30, 1999, a hearing was held regarding Misconduct No. A27518. After reviewing the misconduct report and Iseley's version, the hearing examiner found the officer's report credible and sanctioned Iseley to 60 days disciplinary custody. (See Kane's Dec.)

48. In September, 1999 Chief Hearing Examiner Bitner reviewed Iseley's final appeal of Misconduct No. A27518. Based upon his review of the misconduct report, and the hearing examiner's report, he denied Iseley's appeal. Bitner believed that there was sufficient evidence to sustain a finding of guilt. (See Bitner Dec.)

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

By: _____
MARYANNE M. LEWIS
Deputy Attorney General

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

Office of Attorney General
15th Flr., Strawberry Sq.
Harrisburg, PA 17120
FAX: (717) 772-4526
Direct Dial: (717) 787-9719

DATE: June 1, 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY, :
:
Plaintiff :
:
v. : No. 1:00-CV-00577
: (Judge Kane)
W. CONWAY BUSHEY, et al., :
:
Defendants :

## CERTIFICATE OF SERVICE

I, Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this date I caused to be served the foregoing Defendants' Statement of Material Facts As To Which There Is No Genuine Issue In Dispute, by depositing a copy of the same in the United States mail, postage prepaid, in Harrisburg, PA., addressed to the following:

Charles Iseley, #AM-9320
SCI-Huntingdon
1100 Pike St.
Huntingdon, PA 16654

MARYANNE M. LEWIS
DEPUTY ATTORNEY GENERAL

DATE: June 1, 2001