# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,

      Plaintiff

    v.

W. CONWAY BUSHEY, <u>et al.</u>,

      Defendants

    :
    :
    :
    :
    :  No. 3:00-CV-00577
    :  (Judge Kane)
    :
    :
    :

ORIGINAL

FILED
HARRISBURG
JUN 0 1 2001
MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

## DEFENDANTS' RESPONSE TO PLAINTIFF'S
## MOTION FOR ENLARGEMENT OF TIME

### INTRODUCTION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 alleging claims under the First, Eighth and Fourteenth Amendment to the United States Constitution. The allegations in the complaint stem from alleged unlawful misconducts, grievances, and conditions of confinement that affected plaintiff while he was incarcerated at various state correctional institutions. The complaint also alleges that officials of the Pennsylvania Department of Corrections ("DOC") and the Pennsylvania Board of Probation and Parole (hereinafter the "Board") have engaged in other conduct to deny plaintiff's constitutional rights.

Plaintiff, Charles Iseley is a <u>pro se</u> prisoner currently incarcerated at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"). Defendants are numerous employees or former employees of the Pennsylvania Department of Corrections, who are or were employed at the State Correctional Institution at Rockview ("SCI-Rockview"), the State Correctional Institution at Mahanoy ("SCI-Mahanoy"), and officials at DOC's headquarters located in Camp Hill, Pennsylvania. Also named as defendants are employees of the Board.

On May 25, 2001, Iseley filed a Motion for Enlargement of Time in which he seeks a three month enlargement to complete discovery. In support of his motion, Iseley alleges that the defendants did not produce one page of discovery for him; that he does not have a copy of his complaint; and, that he has yet to receive any of his legal materials since his transfer from SCI- Coal Township to SCI-Huntingdon.[1] In addition, Iseley states that he wishes to file a motion to amend the complaint to delete many of the issues in his complaint, based on the fact that he cannot prove them due to his inability to receive the necessary discovery.

---

[1]Undersigned counsel is aware that Iseley did not receive his excess property upon his arrival at SCI-Huntingdon, based upon his refusal to sign a cash slip. On April 11, 2001, undersigned counsel informed Iseley that he need to sign a cash clip. (<u>See</u> Exhibit "F" attached) On May 16, 2001, Superintendent Gillis instructed intake to forward eight boxes of Iseley's remaining property to be mailed to him at SCI-Huntingdon, and instructed inmate accounting to charge him the shipping costs of $50.03 (<u>See</u> Exhibit "G" attached)  Undersigned counsel has been informed that the boxes of Iseley's property has arrived at SCI-Huntingdon.

Discovery in this case closed on May 1, 2001. Although Iseley alleges that defendants have not provided him with "one page of discovery," he has in fact received discovery from the defendants.   On July 31, 2000 defendants responded to Iseley Request for Production of Documents (see Exhibit "A" attached), on December 21, 2000 defendants responded to Iseley's Second Set of Request for Production of Documents (see Exhibit "B" attached), and on December 21, 2001, defendant Horn responded to Iseley's Interrogatories  (see Exhibit "C" attached).

In their response to Iseley's requests for production of documents, defendants instructed Iseley that he may inspect and photocopy the documents upon written request to the Assistant to the Superintendent at SCI-Coal Township. Included in the documents produced for inspection were copies of Iseley's Parole Board Action Sheets known as "Green Sheets"; a copy of the complaint he filed in this case; job specifications for all of the defendants; references to pertinent sections of the Inmate Handbook; copies of numerous grievances submitted by Iseley; copies of numerous misconducts relevant to the complaint and his Prescriptive Program Plan.    In addition, Iseley was afforded the opportunity to review portions of his institutional and medical file that are not considered confidential and/or privileged.

On January 23, 2001, counsel for the defendants deposed Iseley at SCI- Coal Township. During the course of the deposition, Iseley informed counsel that he was going to drop some of the claims in his complaint, pending the filing of an Amended Complaint. Iseley agreed to initial those claims and paragraphs of the complaint that he would drop. (See Exhibit "D" attached)

Subsequent to the deposition, counsel informed Iseley that documents had been available for his inspection at SCI-Coal Township, since the date of the responses and that according to the Assistant to the Superintendent, he had not requested to inspect any of the documents. Included in the documents is a copy of the complaint Iseley filed in this civil action. (See Exhibit "E" attached)

Counsel for the defendants does not oppose Iseley deleting issues or claims from his complaint. Counsel does, however oppose the reopening of discovery and Iseley filling an Amended Complaint that may add additional defendants, claims and issues. In this response, undersigned counsel is providing Iseley copies of the discovery responses and the complaint he initialed at the deposition. In addition, Iseley may request to inspect the documents defendants made available regarding his request(s) for production of documents. He may do so in writing to the Assistant to the Superintendent at SCI-Huntingdon.

Furthermore, defendants' dispositive motions, pursuant to this Court's March

6, 2001 Order, are to be filed on or before June 1, 2001. Iseley has been aware of the scheduling order for over two months. In light of the Court's Order, defendants will be filing their Motion for Summary Judgment and Statement of Material Facts on June 1, 2001. The brief in support of that motion will not be filed until June 15, 2001. Pursuant to the Federal Rules of Civil Procedure, Iseley's response is not due until fifteen days (plus three days for service) after the filing of defendants' brief. In light of the foregoing, Iseley should have ample time and resources to prepare his response.

Wherefore, defendants request that the Court deny Iseley's Motion For an Extension of Time.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

By: _____

MARYANNE M. LEWIS
Deputy Attorney General

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation

OFFICE OF ATTORNEY GENERAL
15th Fl., Strawberry Square
Harrisburg, PA 17120
(717) 787-9719
FAX:  (717) 772-4526
E-MAIL: mlewis@attorneygeneral.gov
DATE:   June 1, 2001

**EXHIBIT "A"**

*original*
*6/7/31*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                  :
                                 :
    Plaintiff             :
                                 :
    v.                    :    No. 1:00-CV-00577
                                 :    (Judge Kane)
W. CONWAY BUSHEY, et al.,         :
                                 :
    Defendants            :

### DEFENDANTS' RESPONSE TO REQUEST
### FOR PRODUCTION OF DOCUMENTS

Defendants hereby respond to plaintiff's request for production of documents. Plaintiff may inspect and photocopy the documents upon written request to the Assistant to the Superintendent at SCI-Coal Township. Plaintiff may photocopy the produced documents at his own expense at the institution rate.

1.    **The job description of all of the defendants and each of them.**

**RESPONSE: OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution. Job descriptions contain information unique to each individual's position including the hours that employees work, their shift and schedule rotation, and duties that pertain to specific security measures of numerous work assignment. Without waiving this objection, plaintiff may inspect copies of the specifications for the job classifications of the defendants, which include their basic duties and responsibilities.

2.    Any and all policies, directives, memorandums, rules, manuals or instructions concerning the procedures for a prisoner to obtain assess/copies of his prison/medical/parole/dental records.

**RESPONSE:**    Department of Corrections Administrative Directive (hereinafter referred to as "DOC-ADM") 003 governs the procedures for a prisoner to obtain access/copies of his prison, medical and dental records.    DOC-ADM 003 is found in the Inmate Handbook which is issued to all inmates.    In addition, page 18 of the handbook, under the heading "Request Slips," states the procedure for requests of this nature. Title 37 of the Pennsylvania Code, § 61.2, governs the access/copies of parole records.    Because these records are considered confidential, no formal policy can be located concerning the procedure for an inmate to obtain access/copies of his parole file. Plaintiff may inspect copies of the DOC Administrative Directives and §61.2 of the Pa Code.

3.    The plaintiff's complete prison file to the date of your response.

**RESPONSE: OBJECTION.**    Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution, as well as compromise the staff's ability to carry out the rehabilitation of the plaintiff.    Included in plaintiff's file are reports of a confidential nature, such as pre-sentence reports, classification and diagnostic information and psychological information.    Documents that reflect inmate behavior encourage staff to write freely their opinion concerning the inmate.    If released, this would deter staff from writing their opinions in a candid manner.    In addition, defendants, object to this request as overbroad and containing information that is irrelevant to the allegations contained in the complaint and unlikely to lead to admissible evidence.    Without waiving this objection, plaintiff may inspect copies of the portion of his inmate file that are authorized pursuant to guidelines established under DC-ADM 003.

-2-

4.    **The plaintiff's complete medical records to the date of your response.**

**RESPONSE: OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution, as well as compromise the staff's ability to carry out the rehabilitation of the plaintiff.    In particular, these records contain mental health and psychological information.    Without waiving this objection, plaintiff may inspect portions of his medical file, pursuant to guidelines established under DC-ADM 003.    Mental health records, pursuant to DC-ADM 003, D(1), may be discussed with treatment staff. These records as noted in the objection and DC-ADM 003 may not be reviewed by the plaintiff.

5.    **The plaintiff's complete parole file to the date of your response.**

**RESPONSE: OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution, as well as compromise the Board's ability to carry out the rehabilitation of the plaintiff.  Pursuant to 37 Pa. Code §61.2, "[r]ecords, reports and other written things and information, evaluations, opinions and voice recordings in the Board's custody or possession touching on matters concerning a probationer or parolee are private, confidential and privileged; except that a brief statement of the reasons for actions by the Board granting or refusing a parole will at all reasonable times be open to public inspection in the offices of the Board." Included in plaintiff's file are reports of a confidential nature, that are frank observations and recommendations gathered by the Department of Corrections and the Board.  Documents that reflect inmate behavior encourage staff to write freely their opinion concerning the inmate.  If released, this would deter staff from writing their opinions in a candid manner.  Without waiving this objection, plaintiff may inspect the Notices of the Board Decision, which are the  brief statements of the reasons for the action by the Board refusing his parole.

6.     A copy of the civil rights complaint (above-captioned matter).

RESPONSE:   Plaintiff's may inspect a copy of his civil rights complaint filed at No.3: CV-00577.

Objections interposed
on behalf of defendants by:

BY: _____
MARYANNE M. LEWIS
Deputy Attorney General
Attorney ID# 83812

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-
FAX: (717) 77204526
DATE: July 31, 2000

-4-

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,             :

      Plaintiff          :

      v.                :     No. 1:00-CV-00577

                       :     (Judge Kane)

W. CONWAY BUSHEY, et al.,   :

      Defendants        :

## CERTIFICATE OF SERVICE

I, Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this date

I caused to be served the foregoing Defendants' Response to Request for Production of

Documents, by depositing a copy of the same in the United States mail, postage prepaid, in

Harrisburg, PA., addressed to the following:

Charles Iseley, #AM-9320
SCI-Coal Township
1 Kelley Drive
Coal Township, PA 17866-1020

MARYANNE M. LEWIS
DEPUTY ATTORNEY GENERAL

**DATE: July 31, 2000**

**EXHIBIT "B"**

o cp
4/21

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                    :
                                   :
            Plaintiff              :
                                   :
      v.                           :        No. 1:00-CV-00577
                                   :        (Judge Kane)
W. CONWAY BUSHEY, et al.,          :
                                   :
            Defendants             :

## DEFENDANTS' RESPONSES TO SECOND SET
## OF REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants hereby respond to plaintiff's Second Request for Production of Documents. Plaintiff may inspect and photocopy the documents upon written request to the Assistant to the Superintendent at SCI-Coal Township. Plaintiff may photocopy the produced documents at his own expense at the institution's rate.

1.    **OBJECTION**. Defendants object to this request as vague in that defendants do not know what he is referring as to "other reports".

2.-5.    **OBJECTION**. Defendants object to this request as overbroad and irrelevant to plaintiff's claims, and unlikely to lead to admissible evidence.

6.    **OBJECTION**. Defendants object to this request as containing documents that if released could pose a threat to the security of the institution. Without waiving that privilege, plaintiff may inspect a copy of the documents identified in Interrogatory 13.

7.    Counsel for defendants has not identified the documents that will be used at trial. When these documents have been identified, undersigned counsel will supplement this response.

8.    Plaintiff may inspect a copy of the DOC Code of Ethics.

9.    **OBJECTION.** Defendants object to this request as irrelevant to plaintiff's claim and unlikely to lead to admissible evidence.

10.    **OBJECTION.** Defendants object to this request as privileged and containing information that if released could cause a threat to the security of the institution and compromise the DOC's ability to rehabilitate the plaintiff. Without waiving this objection, DOC parole information is found in the Inmate Handbook, which is issued to all inmates. In addition, criteria specific to an individual inmate's parole is found on his/her green sheet.

11.    **OBJECTION.** Defendants object to this request as privileged and containing information that if release could undermine the secure and orderly operation of the Board and compromise the Board and its staff's ability to rehabilitate the plaintiff. In addition, information specific to an individual inmate's parole criteria is found on his/her green sheet.

> **D. MICHAEL FISHER**
> **Attorney General**
>
> BY:
>
> **MARYANNE M. LEWIS**
> **Deputy Attorney General**
>
> **SUSAN J. FORNEY**
> **Chief Deputy Attorney General**
> **Chief, Litigation Section**

**Office of Attorney General**
**Litigation Section**
**15th Fl., Strawberry Square**
**Harrisburg, PA  17120**
**(717) 787-9719**

**DATED:  December 21, 2000**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,            :

       Plaintiff          :

v.                           :      No. 1:00-CV-00577

                               :      (Judge Kane)

W. CONWAY BUSHEY, et al.,    :

       Defendants     :

## CERTIFICATE OF SERVICE

    I, **Maryanne M. Lewis**, Deputy Attorney General, hereby certify that on this date I caused to be served the foregoing **Defendants' Responses to Second Request for Production of Documents**, by depositing a copy of the same in the United States mail, postage prepaid, in Harrisburg, PA., addressed to the following:

Charles Iseley, #AM-9320
SCI-Coal Township
1 Kelley Drive
Coal Township, PA 17866

                                    **MARYANNE M. LEWIS**
                                    **Deputy Attorney General**

**DATE: December 21, 2000**

**EXHIBIT "C"**

cp
12/21

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                    :
                                   :
         Plaintiff                 :
                                   :
    v.                             :    No. 1:00-CV-00577
                                   :    (Judge Kane)
W. CONWAY BUSHEY, et al.,          :
                                   :
         Defendants                :

## RESPONSES TO INTERROGATORIES DIRECTED
## TO DEFENDANT HORN

1.      State exactly the reasons why plaintiff was denied a favorable parole recommendation

at each relevant parole opportunity.

**RESPONSE:**

> **OBJECTION.**   Defendant Horn objects to this interrogatory as overbroad,
> burdensome, and irrelevant to plaintiff's claim; further it is unlikely to lead to the
> discovery of admissible evidence.
>
> By way of further answer, inmates have no right, constitutional or otherwise, to
> parole.  In situations where inmates will be reviewed by the Pennsylvania Board of
> Probation and Parole, the inmate is first reviewed by the Unit Management team
> along with the inmate's counselor.  If the staff does not recommend parole, the
> inmate is generally advised of that fact and why.
>
> I have no personal knowledge regarding the reasons why plaintiff was denied a
> favorable parole recommendation.  As Secretary to the Department of Corrections,
> I am not involved in these decisions.

2.     Can a prisoner be denied a favorable parole recommendation for being in the hole in administrative custody?

**RESPONSE:**

There is no set standard or written list of criteria that the Unit Management Team must follow in determining whether an inmate is recommended for parole. The circumstances surrounding an inmate's placement into the Restricted Housing Unit could certainly be relevant as to whether that inmate is given a parole recommendation.

3.     State exactly what the criteria are for a prisoner to obtain a favorable parole recommendation.

**RESPONSE:**

There is no set standard or written list of criteria and the decision would vary from one inmate to another. The consideration would include but not be limited to the sentence imposed by the Court, the inmate's compliance with his or her prescriptive program plan and with Department Policies, rules and regulations as well as his or her institutional behavior.

4.    Why was plaintiff given prescriptive program plans that he could not achieve or had already achieved?

**RESPONSE:**

I have no personal knowledge of plaintiff's prescriptive program. As Secretary to the Department of Corrections, I am not involved in designing a prisoner's prescriptive program. These programs are designed by the Treatment staff at the institution where a prisoner is incarcerated and not the Secretary.

5.    Why is or was beneficial data omitted from plaintiff's prison files?

**RESPONSE:**

I have no knowledge that beneficial data was omitted from plaintiff's prison files.

6.    State exactly what your prisoner rehabilitation success rate has been for the past ten years.

**RESPONSE:**

**OBJECTION.**    Defendant Horn objects to this interrogatory as overbroad, burdensome, and irrelevant to plaintiff's claim; further it is unlikely to lead to the discovery of admissible evidence.

By way of further answer, this information is not routinely compiled and is not generally available.


7.    For each misconduct report that plaintiff received for assault, identify each one where the alleged victim(s) was injured, hospitalized or pressed criminal charges.

**RESPONSE:**

I have no personal knowledge of plaintiff's misconducts.  As Secretary to the Department of Corrections, I do not routinely review individual inmate misconducts.

By way of further answer, this information was already provided and is already known by the plaintiff.

8.    Define exactly what good prison adjustment is.

9.    Define exactly what poor prison adjustment is.

**RESPONSE:**

No uniform definition exists within the Department of Corrections that defines good prison adjustment or bad prison adjustment.  A number of subjective factors are included in what constitutes good or bad prison adjustment; this includes misconduct status, participation in vocational and educational programs, a prisoner's adherence to a prescriptive program and other factors determined by the Treatment staff at the institution where the inmate is incarcerated.

10.     What is the recidivism rate for prisoners released in the past ten years who secured favorable parole recommendations.

**RESPONSE:**

**OBJECTION.**   Defendant Horn objects to this interrogatory as overbroad, burdensome, and irrelevant to plaintiff's complaint; it is unlikely to lead to the discovery of admissible evidence.

By way of further answer, this information is not routinely compiled and would not be available in any event.

11.     State exactly what the rehabilitation goals of the DOC and its agents are for plaintiff.

**RESPONSE:**

I have no knowledge of what the exact rehabilitation goals are for the plaintiff.  As Secretary to the Department of Corrections, I do not personally participate in setting individual prisoner's rehabilitation goals.  It is, however, the goal of the Department of Corrections to have inmates involved in a program of self improvement which includes prescriptive programs such as education, vocational training, and other treatment related therapy.

12.     Identify any and all defendants whose true identities are unknown, as indicated in the complaint, by providing their true identities.

**RESPONSE:**

After a review of plaintiff's complaint, I have no idea as to the identities of the unknown defendants.

13. Identify any and all documents which either directly or indirectly substantiate the answer to the complaint including the relevant defenses raised.

**RESPONSE:**

The following documents were used by counsel in the Answer to the Complaint:

DOC-ADM-801, 803, and 804
Plaintiff's Prescriptive Program
Misconduct Report No. 122000
Grievance No. MAH-0449-98
Grievance No. MAH-0457-98
Misconduct Report No. 110205
Grievance No. MAH-002-99
Grievance No. MAH-0011-99
Grievance No. ROC-1015-98
Grievance No. MAH-0462-98
Grievance No. MAH-0480-98
Grievance No. MAH-0347-99
Grievance No. MAH-0035-99
Grievance - Harassed by guards
Grievance - Chronic Health
Grievance - Medical Staff
Grievance - Magazines
Grievance - Medical Care
Grievance - Medical Staff
Grievance - Radio Purchase

Grievance Library - West Fed. Digest
Grievances - Order of Prescriptive Eyeglass
Grievance - Inmate Accounting West
Grievance - Guitar Bag
Grievance - Mailroom Money Order
Grievance - Money Order ($200)
Grievance - Medical Charges
Grievance - Property Inventory Sheet
Grievance - Retaliation
Grievance - Serious asthma attacks;
   medication
Inmate Request - Account statement for six
   months for Federal Courts
Grievance - Legal Material
Grievance - Books
Grievance - Cable Fees
Grievance - Librarian holding money
Grievance - Law library inadequate
Plaintiff's Notice of Board Decisions
   (Green Sheets) 11/3/95; 10/3/97; 11/18/97;
   2/1/99; and 7/7/00

14. Identify all persons to be called as witnesses at trial in this action indicating with respect to each such person the specific substance of his/her testimony and whether he/she will be called as an expert witness.

**RESPONSE:**

To date, witnesses other than the named defendants have not been identified by defendants' counsel.

-6-

15.    What are the DOC's obligations/responsibilities to the P.B.P.P.?

**RESPONSE:**

The Department of Corrections' responsibilities to the Pennsylvania Board of Probation and Parole are to provide a recommendation concerning an inmate's parole and facilitate the availability of inmates for the Parole Board's interviews.

16.    Why does plaintiff's sentencing order state that his consecutive sentence was to begin at the minimum expiration of all his other sentences.

**RESPONSE:**

I have no personal knowledge what plaintiff's sentencing orders state, as I have never looked at or reviewed his sentence orders.  In addition, I would have absolutely no idea of what may have been in the sentencing judge's mind at the time that her or she issued the sentencing order.

17.    Explain how after 1998 plaintiff could be serving a 12½ to 25 year sentence when he served the entirety of all his concurrent sentences (five 15 year sentences and a 2 year sentence) at that juncture.

**RESPONSE:**

**OBJECTION.**  Defendant objects to this request as vague.  In addition, defendant Horn has no personal knowledge of the sentence or sentences which the Court imposed upon plaintiff.

18.    State exactly what the penalogical and/or rehabilitative justifications are for denying plaintiff medical care for being beyond his minimum sentence.

**RESPONSE:**

I have no personal knowledge of the medical care plaintiff has received or that the plaintiff has been denied medical care. I am not aware that being beyond his minimum sentence has ever been a penalogical or rehabilitative basis for denying medical care.

19.    State exactly when plaintiff became eligible for prerelease programs.

**RESPONSE:**

*See* DC-ADM 805 which sets forth the Department's general policy on Pre-release.

20.   Explain   exactly   what   the   policies/practices/procedures/regulations   are   for
disciplinary proceedings (including appeals thereof and review of same).

**RESPONSE:**

*See* DC-ADM 801.

**D. MICHAEL FISHER**
**Attorney General**

BY: _____

**MARYANNE M. LEWIS**
**Deputy Attorney General**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

**Office of Attorney General**
**Litigation Section**
**15th Fl., Strawberry Square**
**Harrisburg, PA  17120**
**(717) 787-9719**

**DATED:**      **December 21, 2000**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                    :
                                   :
    Plaintiff              :
                                   :
    v.                     :       No.  1:00-CV-00577
                                   :       (Judge Kane)
W. CONWAY BUSHEY, <u>et al</u>.,   :
                                   :
    Defendants              :


## <u>VERIFICATION</u>

I, **MARTIN F. HORN,** declare under penalty of perjury that the foregoing

Responses to Interrogatories Directed to Defendant Horn are true and correct to the best of my

knowledge.


12/28/00
_____
**DATE**

_____
**MARTIN F. HORN, Secretary**
**Department of Corrections**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES ISELEY, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | No.  1:00-CV-00577 |
| | : | (Judge Kane) |
| W. CONWAY BUSHEY, et al., | : | |
| | : | |
| Defendants | : | |

### CERTIFICATE OF SERVICE

I,  **Maryanne M. Lewis**, Deputy Attorney General, hereby certify that on this date

I caused to be served the foregoing **Responses to Interrogatories Directed to Defendant Horn,**

by depositing a copy of the same in the United States mail, postage prepaid, in Harrisburg, PA.,

addressed to the following:

**Charles Iseley, #AM-9320**
**SCI-Coal Township**
**1 Kelley Drive**
**Coal Township, PA  17866**


**MARYANNE M. LEWIS**
**Deputy Attorney General**


**DATE:  December 21, 2000**

**EXHIBIT "D"**

$150.00

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,
        Plaintiff,

        V.

W. CORWAY BUSHEY, JANE DOE,
MIKE MOE, ROBERT MEYERS,
TERRY WHITMAN, GREGORY GAERTNER,
SAM MAZZOTTA, SARA CRALEY,
CHARLES MITCHELL, TRESSLER,
WAKEFIELD, MARTIN HORN,
ROBERT BITNER, CAROL DOTTER,
MARTIN DRAGOVICH, K. BREON,
J. KEVIN KANE, NOVOTNEY,
K. DENNISON, THOMAS CHESNEY,
MARVA CERULLO, RICHARD SPAIDE,
ROBERT YARNELL, SALLY GENNARINI,
JAMES SNELL, JAMES CORBACI O,
THOMAS HORNUNG, BRENDA WILDENSTEIN,
YOUNON, EICHENBERG, FRYZEL,
GAVIN, MAHALLY, FRED FOE,
BIROSAK, HARRY HOE, PEER,
MACKRETH, DROBINSKY,
RBC Corp., RAA Corp., JASON GROW,
        Defendants.

FILED

OCT - 9 1999
MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

Civil Action No.

99 CV-5380

Jury Trial Demanded

CIVIL RIGHTS COMPLAINT


EXHIBIT
C

## Jurisdiction

1. This is a civil rights action authorized pursuant to 42 U.S. sections 1981, 1983, 1985 (3) and 1986, to redress the deprivatio under color of state law, of rights secured by the United States Constitution. The court has jurisdiction under 28 USC sections 1331 and 1343 and the aforementioned statutory provisions. Plain tiff further invokes the pendent jurisdiction of the court to hear and decide claims arising under state law. Plaintiff al seeks declaratory relief pursuant to 28 U.S.C. sections 2201 and 2202

## Plaintiff

2. Plaintiff, Charles Iseley, is an state prisoner curre imprisoned at Mahanoy state prison and is and was at all times relevant to this complaint a prisoner in the custody of the Pennsylvania Department of Corrections (hereinafter "DOC").

## Defendants

3. W. Conway Bushey is the secretary of the Pennsylvania Board of Probation and Parole (hereinafter, PBPP).

4. Jane Doe, True name currently unknown, is a PBPP employe

5. Mike Moe, true name currently unknown, is a PBPP employee

6. The above defendants can be reached at Pa. Bd. of Prob. & Parole, P.O. Box 1661, 3101 North Front St, Harrisburg, PA 17105

7. Robert Meyers is the warden at Rockview state prison (hereinafter "RSP")

8. Terry Whitman is the deputy warden at RSP.

9. Gregory Gaertner is the deputy warden at RSP.

10. Sam Mazzotta is the grievance coordinator at RSP.

11. Sara Craig is a psychologist at RSP.

12. Charles Mitchell is a hearing examiner at RSP.

13. Tressler, first name unknown, is a prison guard of the rank of captain at RSP.

14. Wakefield, first name unknown, is a prison guard of the rank of major at RSP.

15. The address for RSP is SCI-Rockview, Box A, Bellefonte, PA 16823.

16. Defendant Martin Horn is the secretary for the DOC.

17. Robert Bitner is the chief hearing examiner for the DOC.

17. The address for the Pa. Dept. of Cor. is P.O. 598 Camp Hill, PA 17001.

18. Martin Dragovich is the warden at Mahanoy state prison (hereinafter, "MSP").

19. Carolo Dotter is the grievance coordinator at MSP.

20. K. Breon is the hearing examiner at MSP.

21. J. Kevin Kane is a hearing examiner at MSP.

22. Novotney, first name unknown, is the deputy warden at MSP.

23. Dennison, first name unknown, is a psychologist at MSP.

24. Thomas Chesney is a unit manager at MSP.

25. Marva Cerullo is the healthcare administrator at MSP.

26. Richard Spaide is a unit manager at MSP.

27. Robert Ynrnell is a MSP employee

28. Sally Gennarini is the mailroom supervisor at MSP.

29. James Vnell is a MSP employee.

30. James Corbacio is the activities supervisor at MSP.

31. Thomas Hornung is a unit manager at MSP.

32. Brenda Wildenstein is a unit manager at MSP.

33. Yovrin, first name unknown is a psychologist supervisor at MSP.

34. Eichenberg, first name unknown, is a prison guard of the rank of lieutenant at MSP.

36. Gavin, first name unknown, is a prison guard at the rank of lieutenant at MSP.

37. Mahally, first name unknown, is a prison guard at the rank of lieutenant at MSP.

38. Fred Foe, true name unknown, is a prison guard at the rank of lieutenant at MSP

39. Birosak, first name unknown, is a prison guard at the rank of sergeant at MSP.

40. Harry Hoe, true name unknown, is a prison guard at the rank of sergeant at MSP.

41. Peek, first name unknown, is a prison guard at MSP.

42. Mackreth, first name unknown, is a prison guard at MSP.

43. Dropinsky, first name unknown, is a prison guard at MSP.

44. ABC Corp., true identity unknown, provides medical services at MSP.

45. AAA Corp., true identity unknown, provides optical and optician services to MSP.

46. Jason Brow is a parole agent at MSP.

47. The address for MSP is SCI-Mahaney, 301 Mor.
Rd., Frackville, PA 17932.

48. Each defendant is sued individually and in his/her
official capacity. At all times mentioned herein, each
defendant acted under color of Pennsylvania law.

## Facts

49. In the past, plaintiff has filed legal actions agai. numerous DOC employees at various state prisons including those at Greene, Graterford, Dallas, Camp Hill and Rockview

50. Plaintiff was transferred from Greene state prison RSP on July 2, 1997, in retaliation for his filing legal act. and was capriciously and arbitrarily kept in the hole for approximately three months in retaliation for his filing leg. actions and grievances against prison officials. Plaintiff was wrongfully retained in the hole by defendants Whit man, Gaertner and Meyers.

51. The day after plaintiff was released from the hole. was escorted to defendant Meyers's office and informed that "they" did not like troublemakers such as plaintiff a RSP and that if plaintiff would refrain from filing legal actions and grievances they would try and arrange for h. to be transferred to another prison closer to home and h. would not be harassed during the interim.

52. Nonetheless, that was not true as plaintiff was not transferred soon and was retaliated against for filing lega. actions and grievances at other prisons.

53. For example, plaintiff must secure a favorable DS recommendation for parole to make parole. In order to obtain same he must participate in his prescriptive program plan (hereinafter, "PPP").

54. Plaintiff's PPP at RSP consisted of participating in an vcation program, drug program and stress and anger program as direc

55. However, plaintiff was informed by the education department that there were no programs available for him

Plaintiff was not permitted to attend the drug program because he was not allowed on the drug program prison block.

56. Moreover, it should be taken into consideration that none of plaintiff's criminal charges were for narcotics nor has he ever tested positive for drug use or receive a misconduct or other report for controlled substances or suspicion thereof.

57. Plaintiff was not permitted to attend the stress and anger program (temper control unit) because he was not allowed on that program's prison block.

58. In addition, it should be noted that plaintiff also completed a stress and anger program at another prison

59. Plaintiff notified defendants Mazzotta, Bitner, Horn, Meyers and Whitman regarding the intentional and capricious and arbitrary denial of his PPP but they refused to assist plaintiff in retaliation for his filing legal actions and grievances.

60. On August 26, 1998, plaintiff and two other prisoners were thrown in the hole pending an investigation of their alleged involvement in a fight on August 24, 1998, at 6:00 p.m. of that date. The other two prisoners are Blue

61. They were allegedly identified by numerous other prisoners known as "confidential source informants" who allegedly witnessed them fighting another prisoner who is wh

62. Nevertheless, one of the other prisoners was releas from the hole because he had an alibi, revealing that ti alleged witnesses to the alleged incident were incredible

63. On August 31, 1998, plaintiff received a miscond. report. The charge was Criminal Conspiracy to Commit A ravated assault concerning an alleged assault on anot prisoner on August 24, 1998, at 12:30 p.m.

64. The other prisoner received an identical charge p an additional charge of Aggravated assault.

65. Plaintiff received the misconduct report at 10:3 and had a hearing regarding same at 11:20 a.m. — less one hour after receiving the aforesaid relevant report. T hearing examiner was defendant Mitchell.

66. Pursuant to state regulations, state law, and DO policy, plaintiff could not have a hearing in less than twen hour (24) hours after receipt of the pertinent miscond report and had a right to be present at the hearing, be call witnesses, offer documentary evidence, challenge adver witness credibility, et cetera.

67. Nevertheless, plaintiff was not present at the hear and was not even made aware of the hearing until days late

68. Defendant Mitchell intentionally lied in his hear report stating that plaintiff was present at the hearing when plaintiff was not there.

69. On September 2, 1998, plaintiff had another hear Defendant Mitchell was the hearing examiner. Defendant

Mitchell asked plaintiff three questions and had plain
escorted out by the prison guards.

70. Plaintiff was then notified by a prison guard th
the hearing was continued and plaintiff was taken an
thrown back in the hole. Plaintiff did not receive a cop
of the decision or reason for the continuance despite
requesting same numerous times.

71. On September 3, 1998, plaintiff's hearing continue
and defendant Mitchell simply gave plaintiff a copy
of the decision and sentence, which was drafted the
prior day and prior to any testimony or evidence by
plaintiff or his witnesses.

72. When plaintiff pointed this out, defendant M
ell stated that it did not matter. Plaintiff requeste
his witnesses and to offer documentary/physical evidence
and to have all his objections entered into the record but
defendant Mitchell denied all save for the witnesses.

73. Plaintiff was subsequently found guilty and ser
tenced to ninety (90) days in the hole (actually plaintif
was found guilty and sentenced the prior day) — thirty da
beyond the maximum sentence allowed — because of his da

74. When plaintiff pointed out that there was no evid.
to support the charge and that he saw the parole board st
and would have to spend many more years in prison as a
result of the bogus charge, defendant Mitchell stated th
he did not care because he can just look at a "nigger" a
tell he is guilty and that people (i.e., "niggers") such as
plaintiff should never be allowed out of prison but should be kille

75. There was no evidence That plaintiff conspired with anyone to commit aggravated assault.

76. There was no evidence That an assault even occurred as the alleged victim claimed he was not asse and was seen by numerous witnesses after the alleged ass was supposed to have occurred and he had no injuries (th alleged victim was allegedly severely injured).

77. The alleged victim did not receive a misconduc report for lying to an employee.

78. It is believed That defendant Mitchell was one a prison guard who was viciously and brutally raped and sodomized by black prisoners, with a cleaning utensil poss because of his superlative racism.

79. Plaintiff notified defendants Wakefield, Gaert Whitman, Meyers, Bitner, Tressler and Horn but they refused to assist plaintiff or denied his appeals in retalia for his filing prison grievances and legal actions and because o his race and status as a prisoner.

CIV 80. On September 9, 1998, a publication was confis wrongfully, from plaintiff's mail and plaintiff appealed defendants Meyers, Horn and Bitner who denied same in retaliation for plaintiff's filing prison grievances, legal actions and assertions of racism by DOC employee

81 Plaintiff's retaliatory transfer from Greene prison RSP was a result of defendant Varner's retaliatory actions against plaintiff for filing legal actions and prison grievances

82. In December of 1998 plaintiff was transferred from RSP to MSP, in retaliation for filing legal actions and grievances

83. On December 14, 1998, plaintiff exited his cell to work but was informed by defendant Mackreth "fuckin' lock up right now!" Plaintiff complied immediately.

84. After the entire prison was locked down, at approximately 9:20 p.m., defendant Mackreth had plaintiff's cell door opened and, in violation of DOC policy, entered plaintiff's cell and informed him that he, plaintiff is a "troublemaker" and a "stupid fuckin' asshole" who would not have a job tomorrow.

85. Plaintiff was fired from his job the next day.

86. Plaintiff appprised defendant Chesney of the wrongful employment termination but defendant Chesney prevaricated, stating that plaintiff never had a job.

87. It is a fact that plaintiff had worked the whole afternoon on the pertinent date in question. Nonetheless he never received his pay/salary for said work.

88. The denial of the job and pay was in retaliation for plaintiff's filing legal actions and prison grievances

89. Plaintiff filed a prison grievance to defendant Dotter regarding the denial of his job and pay but it was denied in retaliation for plaintiff's filing legal actions and prison grievances.

90. Defendant Dotter intentionally lied in order to cover the the wrongful retaliatory actions against plaintiff.

91. Plaintiff appealed to defendants Dragovich Bitner, and Horn who denied same in retaliation to plaintiff's filing legal actions and prison grievances.

92. On December 12, 1998, plaintiff requested to be permitted to go to the prison commissary, on makeup day, but was denied by defendant Chesney.

93. When plaintiff notified defendant Chesney that he had allowed other prisoners to go and that it was very unfair to bar plaintiff, Defendant Chesney replied, "So what! You like filing grievances. You like filing lawsuits I guarantee you won't be on my block much longer. You're a troublemaker. You should never have been released from the RHU..."

94. Plaintiff did not respond and simply exited the office while Chesney continued to rant and rave and threaten plaintiff.

95. Plaintiff subsequently received an intentionally false and fabricated misconduct report by defendant Chesney stating that plaintiff used obscene and abusive language and refused an order to leave the office.

96. Plaintiff received the report in retaliation for filing prison grievances and legal actions.

97. On December 16, 1998, plaintiff had a disciplinary hearing before defendant Breon concerning the above-mentioned relevant false and retaliatory misconduct report.

98. However, defendant Breon refused to consider plaintiff's defenses and refused to allow plaintiff to offer any documentary or exculpatory evidence and refused to take into consideration plaintiff's written and oral versions and refused plaintiff's witnesses for false and retaliatory purposes and reasons.

99. Defendant Breon was intentially biased against plaintiff and made illogical rulings supported by no evidence and found plaintiff guilty of refusing to obey an order in retaliation for plaintiff's filing legal actions and grievances.

100. There was insufficient evidence to support the charge because the false report and the biased hearing examiner specifically stated that plaintiff apparently complied with the alleged order (although none was given).

101. Defendant Breon was so biased that he utterly refused to ascertain any true facts concerning the incident.

102. While plaintiff was waiting outside for the verdict he heard defendant Breon speaking to someone on the phone requesting orders on what should be done with plaintiff and agreeing to follow the orders given which apparently were to drop one charge and sentence plaintiff to thirty (30) days in the hole. Plaintiff was then brought back into the hearing room and sentenced to thirty days in the for refusing to obey an order.

103. Clearly, plaintiff was set up. Plaintiff does no know the identity of the person defendant Brecia spoke on t phone to.

104. Plaintiff appealed to defendants Cerullo, Yarn Spaide, Dragovich, Bitner and Horn who denied sam in retaliation for plaintiff's filing legal actions and priso grievances and because of his status as a prisoner.

C I ✓ 105. While plaintiff was in the hole he was denied shaves, showers, recreation and harassed by defendants Fryzel and Eichenberg who threatened plaintiff with physical harm and death in retaliation for his filing grievances and legal actions.

C I ✓ 106. Defendant Eichenberg often kicked plaintiff's cell door and threatened to kill him in retaliation for his filing lawsuits.

C I ✓ 107. Plaintiff's cell light was used as a psychologi weapon by being kept on from approximately 6:00 p.m. to 11:0 (and 24 hrs. a day at times) in order to mentally, emotionally psychological damage plaintiff via disrupted sleep patt and sleep deprivation which adversely affected plaintiff with same, decreasing his mental psychological and emotion awareness and acuity.

C I ✓ 108. Plaintiff notified defendants Dotter, Dragovich Bitner, and Horn but they condoned and sanctioned th actions against plaintiff in retaliation for his filing legal actions and grievances.

109. Plaintiff, because of his Islamic beliefs, does n eat pork.

110. While at MSP, plaintiff is not permitted to rec the alternative main course (non-animal protein substitu in lieu of the normal main course when pork is served.

111. Plaintiff informed defendants Yarnell, Dotter, Dragovich, Bitner and Horn via grievance and appeals thereof but they refused to assist plaintiff in retaliation for his filing legal actions and grievances.

112. In essence, the defendants are punishing plai tiff for his Islamic beliefs and rewarding others for their beliefs (ie, vegetarians).

113. At other state prisons, such as Rockview, Huntin et cetera, plaintiff is permitted to have a substitute wh pork is served.

114. Pursuant to DOC policy such a format is followed at other prisons but not at MSP.

115 In January of 1999, plaintiff was placed o grievance restriction by defendant Dragovich in retaliation for filing grievances. The January 8, 1999, grievance restriction was condoned and sanctioned by defendants Horn and Bitner in retaliation for plainti filing legal actions and grievances.

116. On or about ___ 17, 1918, defendant Dennison appeared before plaintiff's prison cell gate in the nude and stated that plaintiff had to sign a paper, a psychiatric consent form, to be evaluated for parole.

117. Plaintiff apprised defendant Dennison that he never had to sign anything before to be seen by the parole board but defendant Dennison stated to plaintiff that it is a new policy and must be signed pursuant to the "Lutin Litigation".

118. Based on the above, which was later to be found completely false, plaintiff placed his signature on the document so he could see the parole board.

119. Plaintiff later ascertained that defendant Dennison is not employed by the PBPP and that he did not have to sign any consent form to be reviewed for parole.

120. Plaintiff informed defendants Grow and Youron and the latter immediately informed the PBPP that plaintiff refused to sign the form to punish plaintiff for exercising his rights.

121. Defendant Youron did not state the reason why plaintiff did not wish consent because of his covering up for defendant Dennison's intentional misrepresentation of himself to trick plaintiff into giving consent.

122. Plaintiff filed a prison grievance and defendants Dotter and Unell responded via mendacity, stating that defendant did nothing wrong and that plaintiff was informed of numerous things by defendant Unell in person when, in truth, defendant Unell only told plaintiff one thing.

123 Plaintiff informed defendants Drayovich, Bitner and Horn via appeal but they denied same in retaliation for plaintiff's filing grievances and legal actions.

124 Defendants Dotter and Unett lied in order to retaliate against plaintiff for filing grievances and legal actions.

125 Defendant Dennison allegedly performed, approximately in December of 1997, a psychological evaluation of plaintiff in less than three minutes and did not inform plaintiff that such an evaluation was being performed or identify himself as a psychologist.

126 Approximately in November of 1997, Defendant Craig allegedly performed a psychological evaluation of plaintiff. However, the only thing plaintiff ever spoke to her about concern his PPP and his transfer, pending, to another prison.

127 The relevant psychological evaluations were deliberately inadequately administered and intentionally included false or misleading information and were purposefully created to be detrimental to plaintiff in order to deny and quash any opportunity for plaintiff to make parole in retaliation for filing prison grievances and legal actions.

128. Defendant Bushey intentionally permits his agents, in violation of law, to capriciously and arbitrarily deny parole by relying on psychological and DOC reports which he knows deliberately include inadequate/false data and are capricious and arbitrarily created to adversely affect the opportunities of plaintiff for freedom. Defendant Bushey knowingly condones and sanctions such actions and retaliation against plaintiff for his filing grievances and legal actions.

129. On February 17, 1999, plaintiff was seen for a parole interview by defendants Grow, Doe and Moe

130. Plaintiff notified them of prison officials' intentional retaliation against him over many years for his filing grievance and legal actions and of their deliberate deletion of beneficial data from his files and intentional addition of adverse data and false data in his prison files to ensure adverse parole recommendations to guarantee parole denial to plaintiff.

131. Defendant Moe specifically notified plaintiff that he was well aware that plaintiff files numerous lawsuits and grievances and has even filed actions against the parole board which was stupid for plaintiff to do because plaintiff should expect retaliation for his actions.

132. Defendant Moe further stated to plaintiff that the only way plaintiff will ever make parole is if he cease filing legal actions and prison grievances

133. When plaintiff noted that he felt it was unfair to retaliate against him and allow retaliation against him for exercising his rights defendant Moe stated "Well, that's how things are".

134. Plaintiff was subsequently denied parole in retalia for his filing legal actions and grievances

135. In February of 1999, plaintiff received two envelopes in the mail which contained two letters and Islamic literature which was confiscated by defendant Gennarini, because of plaintiff's race or beliefs.

136. Defendant Gennarini refused to give plaintiff a reason for the confiscations.

137. On February 25, 1999, defendant Gavin notified plaintiff in person, while referring to plaintiff as a, inter alia, "nigger" and threatening plaintiff with physical injury, that plaintiff mail was confiscated, because the "muslim nigger stuff" is "gang related material" and that plaintiff is going in the "muslim nigger file".

138. Defendant Gavin further stated that plaintiff would be retaliated against via harassment and false misconduct reports for being a "muslim nigger" if plaintiff continued to complain. Plaintiff never received his Islamic literature.

139. Plaintiff contacted defendants Dragovich and Bitner concerning the aforementioned wrongful confiscation but they sanctioned, condoned and approved of the intentional discriminatory and unlawful confiscation in retaliation for his race, beliefs and filing of grievances and legal action.

140. In January of 1999 plaintiff was released from the hole and afterward discovered numerous items were missing from his personal property.

141. The missing property consisted of, inter alia, approximately twelve publications that were exhibits in a federal lawsuit in the Western District Court. Plaintiff never received any confiscation forms or reasons as to why his property was confiscated. Plaintiff's case has been seriously hampered by the denial of the publications since they were to be exhibits for appeal purposes in the Third Circuit Court of Appeals and in the Western District Court.

142. Plaintiff contacted defendants Dotter, Dragovich, Bitner and Ikson but they refused to assist plaintiff in retaliation for plaintiff's filing grievances and legal action

143. On May 24, 1999, plaintiff was wrongfully charged $2.00 (two dollars) for a medical visit concerning a chronic condition.

144. However, pursuant to state regulations and law and DOC policy plaintiff is not to be charged for medical visits for chronic conditions.

145. As a result of the charge, which was improper, plaintiff had to pay an additional $5.00 surcharge.

146. Plaintiff attempted to be reimbursed for his stolen money and contacted defendants Cerullo, Dotter, Dragovich and Bitner who all denied same in retaliation for plaintiff's filing grievances and legal actions.

147. Defendant ABC Corp. specifically follows a pattern and practice of discriminating against prisoners by refusing to reimburse them for wrongful charges if possible and by charging wrongful fees to prisoners anyway.

148. On February 4, 1999, plaintiff was wrongfully charged $2.00 (two dollars) for a medical visit regarding a chronic condition.

149. However, pursuant to state regulations and law and DOC policy plaintiff is not to be charged for chronic condition medical visits.

150  Plaintiff attempted to be reimbursed for his stolen money and contacted defendants Cerullo, Diaz, Dotter and ABC Corp. but nothing was done in retaliation for plaintiff's filing grievances and legal actions.

151  Defendant ABC Corp. specifically follows a pattern an practice of discriminating against prisoners by refusing to reimburse them for wrongful charges and by wrongfully charging prisoners for fees they should not be charged for.

152  On February 11, 1999, plaintiff ordered a pair of prescription eyeglasses. On the same date plaintiff dispatched a written communication requesting that the lenses be made photo-gray but defendant Foe refused to alter or cancel the order to deny plaintiff his money.

153  Plaintiff subsequently contacted defendants Bitner Cerullo, Dotter, AHK Corp. and Dragovich who refused to a or cancel the order or reimburse plaintiff for the glasses he has never received and does not want and their actions are in retaliation for plaintiff's filing grievances and legal actions.

154  Defendant AHK Corp. has a pattern and practice or policy of discrimination by not allowing plaintiff a refund because he is a prisoner but allowing refunds to others.

155  On April 15, 1999, a guitar bag was confiscated from plaintiff's mail by prison officials despite the fact that such items are permitted and plaintiff had received prior approval from prison officials to purchase one.

156 Plaintiff subsequently contacted defendants Sgt Mahully, Novotney, Dragovich and Bitner for the return of his guitar bay but they refused in retaliation for plaintiff's filing grievances and legal actions.

157 Plaintiff has yet to receive or be reimbursed for his intentionally stolen guitar bag.

158 On January 15, 1999, plaintiff purchased a radio from the prison store.

159 Subsequently, plaintiff received a radio from the prison store which was not what he wanted.

160 Defendant Birosak, in retaliation for plaintiff's filing prison grievances, then ordered plaintiff to send the radio out, at plaintiff's expense, to an outside prison store for a refund despite the fact that plaintiff did not purchase it from that store but from the prison store.

161 On March 19, 1999, defendant Birosak informed plaintiff that the outside store sent plaintiff a different radio and then ordered plaintiff to mail the radio back to the outside store for a refund, at plaintiff's expense.

162 However, plaintiff refused to sign because he purchased the radio from the prison store and not any outside store, but defendant Birosak stated that plaintiff would never get his money back if he filed a grievance.

163 Plaintiff refused to sign and further stated that he would file a prison grievance to get his money back.

164. Plaintiff contacted defendant Detter who refused to assist plaintiff pursuant to the orders and sanctions of defendants Dragovich, Bitner and Horn in retaliation for plaintiff's filing legal actions and grievances.

165. Plaintiff has yet to receive his money back for the radio.

166. On August 27, 1999, plaintiff's cell was searched and his legal material was read by defendant Dropinsky, who then order plaintiff to throw all of his legal material in the trash save for one folder because plaintiff would be going to trial soon for a federal lawsuit against numerous DOC employees.

167. When plaintiff refused and attempted, pursuant to DOC policy to speak to a superior officer, defendant Dropinsky became abusive and aggresive, stated that plaintiff would not see anyone and referred to plaintiff as a "nigger" and physically pushed plaintiff, clad only a towel and shower shoes, back into the cell causing him to slip and fall backward, hitting his head on the steel table and his shoulder on the floor. Defendant Dropinsky slammed the cell door closed. This occur at 18:20.

168. Plaintiff informed defendant Hoe, via cell intercom, of the retaliatory and racially motivated assault on his person but was told by defendant Hoe "So what" in retaliation for his filing prison grievances and legal actions.

169. Subsequently, plaintiff again attempted to speak to a superior officer by notifying defendant Hoe via cell intercom but was informed by defendant Hoe that he got what he deserved and was locked in his cell pursuant to defendant Foe's orders.

170. Defendant Dropinsky would then periodically come to plaintiff's cell door and taunt and threaten him with death and refer to plaintiff as a "nigger", among other things, and told plaintiff he would not make parole.

171. Subsequently, plaintiff was thrown in the hole and received a false and conspiratorially planned misconduct report in retaliation for plaintiff's filing a legal action against prison officials. Specifically civil action number 96-1693 which was filed in the federal western district court of Pennsylvania and was set for trial on September 20, 1999.

172. On August 30, 1999, plaintiff had a hearing before defendant Kane who refused to even read plaintiff's written version form and stated that plaintiff should not have bothered writing one because his officers do not lie. Defendant Kane refused to comply with state regulations, DOC policy and state law because of plaintiff's status as a prisoner, black man and muslim. Plaintiff was found guilty and sentenced to 60 days in the

173. Defendant Kane has a long and well known bias against the above and of violating prisoners' rights. It is believed that the innate bias stems from the killing of his father by a black prisoner who was a muslim.

174. Plaintiff appealed the decision to defendants, Dragovich, Corbacio, Wildenstein, Hornung and Bitner but they refused to address plaintiff's issues in retaliation for plaintiff's filing grievances and legal actions and because of his status as a prisoner.

175. On August 31, 1999, plaintiff found out that a large percentage of his personal property was missing, including almost all of his legal material.

176. Plaintiff subsequently contacted, in person, defendants Birosa and Peck and contacted, via written communication, defendants Novotney, Dragovich, Bitner, Dotter and Mahally concerning his missing property but nothing has been done in retaliation for his filing prison grievances and legal actions and because he is a prisoner.

177. One box of missing legal material contained all of plaintiff's trial documents concerning his then upcoming federal trial schedule on September 20, 1999. The denial of the legal material barred plaintiff from adequately representing himself in trial since he had none of the photocopies of documents (marked and ordered), possible examination and cross-examination questions for each witness, exhibits, notes, reference and cross-reference, etc., he required. Plaintiff believes that the legal material was intentionally taken by defendant Prypinsky in retali

178. Other missing property includes a chess set, numerous b magazines (approximately eight which were exhibits in a legal action among other things.

179. Plaintiff has thus far been unable to adequately chec his property to ascertain exactly what is missing as of this date.

180. In all instances concerning plaintiff's property, the pertinent defendants had care, custody and control of same and a duty to hold and/or track plaintiff's property or reimburse him for his losses or return the property to him.

181. In all instances regarding discipline, the relevant defendants had a duty to ensure that plaintiff was not punished capriciously or arbitrarily or because of his race or his belie or his status as a prisoner.

182. In all instance regarding plaintiff's money, the releva defendants had a duty not to wrongfully charge plaintiff and to reimburse for any wrongful charges

183. Plaintiff exhausted the available administrative remedies as far as he was permitted or he was allowed to prior to the filing of this complaint.

## Legal Claims

184. The facts, acts and conduct of defendants related above disclose a concerted and systematic effort by the defendants and their agents to deprive plaintiff of constitutionally secured rights, including, but not limited to, those enumerated in the succeeding paragraphs.

## First Cause of Action

185. The actions of defendants violated plaintiff's secured First Amendment rights guaranteed under the United States Constitution when he was retaliated against for filing legal actions, retaliated against for filing grievances, retaliated against for not giving permission for his psychological records to be disseminated, denied his legal material for trial, denied a pork-free alternative meal, denied his Islamic literature

## Second Cause of Action

186. The actions of defendants violated plaintiff's secured Fourth Amendment rights guaranteed under the United States Constitution when he was denied employment and pay, denied opportunity to obtain a favorable parole recommendation, denied opportunity to obtain parole, denied accurate psychological reports, and denied property and money.

## Third Cause of Action

187 The actions of defendants violated plaintiff's secure Eighth Amendment rights guaranteed under the United States Constitution when he was denied accurate psychological records/file and when his cell lights were kept on all night, when he was denied showers and recreation.

## Fourth Cause of Action

188. The actions of defendants violated plaintiff's secure Fourteenth Amendment rights to procedural due process guarantee under the United States Constitution when he was denied a opportunity to be heard, had a partial hearing examiner, denied opportunity to offer evidence, denied his personal property, denied h money, denied his employment and pay, and retaliated against for filing legal actions or prison grievances and denied his Islamic literature, and capriviously and arbitrarily denied parole and found guilty

## Fifth Cause of Action

189. The actions of defendants violated plaintiff's secure Fourteenth Amendment rights to substantive due process guarantee under the United States Constitution when he was punished bec of his race, punished because of his beliefs, he was denied adequate disciplinary proceeding, found guilty with no evidence, denied hi personal property and money, retaliated against for filing legal action or prison grievances and denied his Islamic literature and denied opportunity to make parole and not have inaccurate psychological information in his files

## Sixth Cause of Action

190. The actions of defendants violated plaintiff's secured Fourteenth Amendment rights to equal protection guaranteed under the United States Constitution when he was denied the pork-free alternative meals, denied his Islamic literature and punished for his status as a prisoner.

## Seventh Cause of Action

191. The actions of defendants violated plaintiff's secured rights guaranteed under the laws of the Commonwealth of Pennsylvania and the court has pendent jurisdiction to hear and adjudicate such claims which are in regard to, but not limited to:

a) negligence
b) gross negligence
c) due process
d) equal protection
e) invasion of privacy
f) fictitious report
g) theft by unlawful taking or disposition

## Equity

192. The plaintiff has no plain, adequate or complete rem at law to redress the wrongs described herein. Plaintiff has bee and will continue to be irreparably injured by the conduct of th defendants unless the court grants the declaratory and injunct relief which plaintiff seeks.

_Relief_

WHEREFORE, plaintiff prays and respectfully requi the court to enter a judgement granting him the following rel

A. A declaratory judgement that the defendants' acts, policies, and practices herein described and complained o: violated plaintiff's rights under the United State Constitution and the laws of the Commonwealth of Pennsylvania

B. A permanent injunction which:

   1) bars defendants from retaliating against plaintiff

   2) allows plaintiff to receive the pork-free alternat meal when pork is served

   3) allows plaintiff to receive accurate only data i his records/files.

   4) bars defendants and their agents from placing fal data in plaintiff's records/files.

C. Compensatory damages from defendants, and each of them, to plaintiff.

D. Punitive damages from defendants, and each of them to plaintiff.

E. A jury trial on all issues triable by jury.

F. Plaintiff's costs of this action

G. Such other and further relief as the court deem ju proper or equitable.

Respectfully submitted

Date: _October 12, 1999_

_Charles Iseley_

Charles Iseley, AM-93:
301 Morea Rd
Frackville, M 17932

# VERIFICATION

I declare, pursuant to 28 USC sec. 1746, That I have read the foregoing complaint and hereby verify under penalty of perjury That the matters asserted therein are true and correct to the best of my knowledge.

Date: _October 12, 1999_

_Charles Isley_
Charles Isley

EXHIBIT - A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,          :
    Plaintiff,          :
    v.          :
W. CONWAY BUSHEY, et al.,          :
    Defendants.          :

## REQUEST FOR LEAVE TO PROCEED IN FORMA PAUPERIS

    Plaintiff, Charles Iseley, pursuant to 28 U.S.C. sec. 1915, hereby respectfully requests the court for permission to proceed in forma pauperis in this matter for the following reasons:

    1. Plaintiff has approximately fifty dollars on his prison account and has been unemployed for nearly twenty years and in prison for nearly that period of time.

    2. The filing fee has been paid.

    3. The prison officials refuse to give plaintiff an account statement covering the past six months unless the court itself requests it (see attached Exhibit "A").

    4. Plaintiff requires his funds for personal hygiene items and medical services purchases, as well as for stationery supplies and postage costs/fees.

Date: October 22, 1999

Respectfully submitted,

Charles Iseley
Charles Iseley
AM-9320, 301 Morea Rd.
Frackville, PA 17932

**EXHIBIT "E"**



COMMONWEALTH OF PENNSYLVANIA
**OFFICE OF ATTORNEY GENERAL**

**January 26, 2001**

MIKE FISHER
ATTORNEY GENERAL

15th Floor, Strawberry Sq.
Harrisburg, PA 17120
DIRECT DIAL: (717) 787-9719
FAX: (717) 772-4526

Charles Iseley, #AM-9320
SCI-Coal Township
1 Kelley Drive
Coal Township, PA 17866

      Re:   Iseley v. Bushey,
           No. 1:00-CV-00577

Dear Mr. Iseley:

    Please be advised that I spoke with Kandis Dascani, Assistant to the Superintendent at SCI-Coal Township, concerning your Request(s) For Production of Documents. According to her records, you did not request to inspect the documents produced for your inspection in regard defendants' July 31, 2000 or the December 21, 2000 responses to your request for production of documents.

    As noted in both responses, the documents are available for your inspection and photocopying upon written request to the Assistant to the Superintendent at SCI-Coal Township. You may photocopy the produced documents at your own expense at the institution's rate.

Very truly yours,

MARYANNE M. LEWIS
Deputy Attorney General

MML/ld

cc: Kandis Dascani, Assistant to the Superintendent



COMMONWEALTH OF PENNSYLVANIA
## OFFICE OF ATTORNEY GENERAL

**MIKE FISHER**
**ATTORNEY GENERAL**

**April 11, 2001**

15th Floor, Strawberry Sq.
Harrisburg, PA 17120
**DIRECT DIAL: (717) 787-9719**
**FAX: (717) 772-4526**

**Charles Iseley, #AM-9320**
**SCI-Huntingdon**
**1100 Pike St.**
**Huntingdon, PA  16654**

      Re:    <u>Iseley v. Bushey</u>,
              No. 1:00-CV-00577

Dear  Mr. Iseley:

      Please be advised that I spoke with the assistant to the superintendent at SCI-Coal Township. I was informed that eight boxes of property were not mailed to you at SCI-Huntingdon because at the time of your transfer you refused to fill out a cash slip to pay for the postage.

      If you wish to have the boxes mailed to you at SCI-Huntingdon, you must sent a cash slip to SCI-Coal Township in the amount of $50.03.  This cash slip may be sent directly to Kandis Dascani, Assistant to the Superintendent at SCI-Coal Township, 1 Kelly Drive, Coal Township, PA 17866.

Very truly yours,

**MARYANNE M. LEWIS**
**Deputy Attorney General**

MML/ld

bcc:  Kandis Dascani
      Asst. to the Supt.

**EXHIBIT "F"**

**EXHIBIT "G"**

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**State Correctional Institution At Coal Township**
(570) 644-7890
May 11, 2001

**SUBJECT:**    Appeal to Initial Inmate Grievance #0242-01

RECEIVED
Office of Attorney General

MAY 1 6 2001

Litigation Section

**TO:**    Charles Isley, AM-9320
SCI Huntingdon

*Frank D. Gillis*

**FROM:**    Frank D. Gillis
Superintendent

I am in receipt of you appeal of the Initial response to Inmate Grievance #0242-01. I have reviewed your initial grievance and the response you received. Appropriate staff were contacted in reference to your appeal.

When you were transferred from SCI Coal Township you were permitted to take with you the allowable amount of property by policy.

In order to resolve this issue I am instructing intake to forward your eight (8) boxes of remaining property to the mailroom to be mailed to you at SCI Huntingdon. I also am instructing Inmate Accounts, according to policy, to charge the shipping costs of $50.03 to your account.

Taking all information above into consideration, I find that this grievance appeal is resolved.

cc:    Lt. Gooler
Lt. Smith, SCI Huntingdon
Intake
Mr. Voeckler
Mailroom
Inmate Accounts
DC-15
File

bcc: *Mary Ann Lewis*

Received
SCI Coal Township

01 APR 23 PM 1:58

Re: ~~Bypass~~ Grievance Appeal                                        Charles Isley
    # 0242-01                                                          AM-9320, 1100 Pike St

                                                                      Huntingdon, PA 1665_

Frank Gillis, Supt
1 Kelley Dr.                                              20010419
Coal Twp., PA 17866


Gillis:


     I am appealing the above grievance because:
     1. I was not permitted to take property with pursuant to DOC policy. I was
not permitted to be present when my property was inventoried (as clearly states in
DOC procedure manual: Classification & Transfers). You deliberately took all my legal materia_
out of my Footlocker and withheld it in retaliation for my exercising my rights.
     2. I was not advised by anyone of anything — I am not at Coal Twp.
     3. I filled out cash slips to have my remaining property shipped to the
destination prison (Huntingdon) which is easily verified since my property inve_
receipt clearly states "U P S" for the remaining property.
     4. I wish my property shipped forthwith
     CC: Maryanne Lewis dag                                  C. Isley

DC-ADM 804, Inmate Grievance System                                      Attachment B

DC-804
Part 2

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE

GRIEVANCE NO.  **0242-01**

| TO: (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| **Charles Isley, AM-9320** | COAL | SCI Huntingdon | 3/25/01 |

The following is a summary of my findings regarding your grievance:

Appropriate staff were contacted in reference to your grievance.  You were permitted to take with you the property permitted by policy.  You were advised that the remainder of your property would be shipped upon receipt of signed cash slips and the mailing address where you wanted the property to be mailed to.

Upon receipt of the above your property will be mailed out.


cc:   Intake
      DC-15

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| **Kandis K. Dascani** | *Kandis K Dascani* | 4/9/01 |
| **Corrections Superintendent's Assistant** | | |

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001-0598
01 MAR 29 AM 11:23

FOR OFFICIAL USE ONLY

0242-01

GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: Coal Twp./ | DATE: |
|---|---|---|
| Dascani | Huntingdon | 20010325 |

FROM: (INMATE NAME & NUMBER)   SIGNATURE of INMATE:
C. Isley AM-9320                 C. Isley

WORK ASSIGNMENT: Nil    HOUSING ASSIGNMENT:
G-B/K B-1012

**INSTRUCTIONS:**
1  Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2.  State your grievance in Block A in a brief and understandable manner.
3.  List in Block B any actions you may have taken to resolve this matter.  Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance.  Additional paper may be used, maximum two pages.

I was transferred to Huntingdon on 20010321 and on 20010324 my property was inventoried and I was informed that all my property was ~~here~~ not here. I wish to know if the rest of my property has been mailed here or not and, if not, the reason why not.

**B.** List actions taken and staff you have contacted, before submitting this grievance.

Actions taken: Contacted staff

Staff contacted: Huntingdon prison guards who inventoried property

Your grievance has been received and will be processed in accordance with DC-ADM 804.

KK Dascani                          3/29/01

Signature of Facility Grievance Coordinator              Date

**WHITE** - Facility Grievance Coordinator Copy    **CANARY** - File Copy   **PINK** - Action Return Copy    **GOLDENROD** - Inmate Copy
Revised

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                          :
                                         :
    Plaintiff                         :
                                         :
    v.                                :    No.  1:00-CV-00577
                                         :    (Judge Kane)
W. CONWAY BUSHEY, et al.,                 :
                                         :
    Defendants                        :

### CERTIFICATE OF SERVICE

I,  Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this

date I caused to be served the foregoing Defendants' Response to Plaintiff's Motion

for Enlargement of Time, by depositing a copy of the same in the United States mail,

postage prepaid, in Harrisburg, PA., addressed to the following:

Charles Iseley, #AM-9320
SCI-Huntingdon
1100 Pike St.
Huntingdon, PA  16654


_____
MARYANNE M. LEWIS
DEPUTY ATTORNEY GENERAL


DATE:   June 1, 2001