ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,      :

        Plaintiff      :

        v.      :      No. 1:00-CV-00577

             :      (Judge Kane)

W. CONWAY BUSHEY, <u>et</u> <u>al.</u>,      :

        Defendants      :

**FILED**
**HARRISBURG**

JUN 1 5 2001

MARY E. D'ANDREA, CLE[RK]
Per_____
        DEPUTY CLERK

## BRIEF IN SUPPORT OF DEFENDANTS'
## <u>MOTION FOR SUMMARY JUDGMENT</u>

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

By:    MARYANNE M. LEWIS
       Deputy Attorney General

       SUSAN J. FORNEY
       Chief Deputy Attorney General
       Chief, Litigation Section

Office of Attorney General
15th Flr., Strawberry Sq.
Harrisburg, PA 17120
FAX: (717) 772-4526
Direct Dial: (717) 787-9719
DATE: June 15, 2001

# TABLE OF CONTENTS

**PAGE(S)**

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF MATERIAL FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**QUESTIONS PRESENTED** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    **I.**    **DEFENDANTS ARE ENTITLED TO JUDGMENT ON ISELEY'S TRANSFER AND CUSTODY PLACEMENT CLAIMS AT SCI-ROCKVIEW BECAUSE THEY ARE BARRED BY THE STATUTE OF LIMITATIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    **II.**    **ISELEY CANNOT ESTABLISH A CLAIM OF RETALIATION OR VIOLATIONS OF THE FIRST, FOURTH, EIGHTH AND FOURTEENTH AMENDMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**CERTIFICATE OF SERVICE**

# TABLE OF AUTHORITIES

**CASE**                                                                                  **PAGE(S)**

**Allah v. Seiverling,**
  229 F.3d 220 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Board of Regents v. Roth,**
  408 U.S. 564 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Celotex v. Catrett,**
  477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Connecticut Board of Pardons v. Dumschat,**
  452 U.S. 458 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Deary v. Three Un-named Police Officers,**
  746 F.2d 185 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Greenholtz v. Nebraska Penal Institution,**
  442 U.S. 1 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Kentucky Dep't. of Corrections v. Thompson,**
  409 U.S. 454 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Meachum v. Fano,**
  427 U.S. 215 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Montanye v. Haymes,**
  427 U.S. 236 (`976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Olim v. Wakinekona,**
  461 U.S. 238 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,17

**Rauser v. Horn,**
  241 F.3d 330 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6,11

**TABLE OF AUTHORITIES, cont'd.**

Sandutch v. Muroski,
    684 F.2d 252 (3d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Smith v. City of Pittsburgh,
    764 F.2d 188 (3d Cir. 1985),
    cert. denied, 474 U.S. 950 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Somers v. Bradford Area School District,
    694 F.Supp. 125 (W.D.Pa. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Superintendent v. Hill,
    472 U.S. 445 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Thaddeus-X v. Blanter,
    175 F.3d 378 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Weston v. Commonwealth of Pennsylvania,
    2001 WL 539470 *9(3d Cir., May 22, 2001) . . . . . . . . . . . . . . . . . . . 16,20

Wolff v. McDonnell,
    418 U.S. 539 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11


**UNITED STATES CONSTITUTION:**

First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Eighth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,12

## TABLE OF AUTHORITIES, cont'd.

### STATUTES:

42 U.S.C. §1983  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## TABLE OF AUTHORITIES, cont'd.

### STATUTES:

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATEMENT OF THE CASE

This is a <u>pro se</u> prisoner civil rights action filed pursuant to 42 U.S.C. § 1983 alleging claims under the First, Eighth and Fourteenth Amendments to the United States Constitution.  The allegations in the complaint stem from alleged unlawful misconducts, grievances and conditions of confinement that affected plaintiff while he was incarcerated at various Pennsylvania state correctional institutions.  Plaintiff, Charles Iseley, is a prisoner currently incarcerated at the State Correctional Institution at Huntingdon ("SCI-Huntingdon").  Defendants are numerous employees or former employees of the Pennsylvania Department of Corrections ("DOC"), or employees of the Pennsylvania Board of Probation and Parole.  ("Board")

Iseley filed a complaint in the United States District Court for Eastern of Pennsylvania on October 29, 1999.  Thereafter, the  complaint was transferred to the Middle District of Pennsylvania, and defendants answered the complaint on May 30, 2000.  The parties then engaged in discovery.   Discovery in this case closed on May 1, 2001.  Defendants filed a Motion for Summary Judgment and Statement of Material Facts on June 1, 2001.  This brief is filed in support of defendants' motion.

## STATEMENT OF MATERIAL FACTS

An amended statement of material facts is appended to defendants' documents submitted in support of their motion for summary judgment and, in the interest of

brevity, will not be repeated here. Defendants respectfully call the Court's attention to that statement, and will reference facts therefrom at appropriate points in this brief.

## QUESTIONS PRESENTED

I.    Whether Iseley's Claims Regarding His Transfer to SCI-Rockview and Placement in the Restricted Housing Unit are Barred by the Statute of Limitations ?

II.   Whether Iseley Has Failed to Establish a Claim of Retaliation Or Violations Under the First, Fourth, Eighth and Fourteenth Amendments ?

## ARGUMENT

**I.    DEFENDANTS ARE ENTITLED TO JUDGMENT ON ISELEY'S TRANSFER AND CUSTODY PLACEMENT CLAIMS AT SCI-ROCKVIEW BECAUSE THEY ARE BARRED BY THE STATUTE OF LIMITATIONS**

In his complaint, Iseley alleges that on or about July 2, 1997 he was transferred from SCI-Greene to SCI-Rockview. (Comp. ¶50)  He further claims he was transferred in retaliation for filing legal actions and capriciously and arbitrarily kept in the restricted housing unit ("RHU") for approximately three months by defendants Whitman, Gaertner and Meyers. (Id.)

A two-year statute of limitations applies to §1983 claims brought in Pennsylvania. Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3rd Cir. 1985), cert. denied, 474 U.S. 950 (1985). Under federal law, a §1983 claim accrues when the

-2-

plaintiff knows, or has reason to know, of the injury that constitutes the basis of the action. <u>Deary v. Three Un-named Police Officer</u>, 746 F.2d 185, 193 (3rd Cir. 1984); <u>Sandutch v. Muroski</u>, 684 F.2d 252, 254 (3rd Cir. 1982) (per curiam). The date when "plaintiff becomes aware, or should have become aware of both fact and injury and its causal connection to the defendant, triggers the limitations period even if the plaintiff did not realize the defendant's conduct was tortuous or unlawful." <u>Somers v. Bradford Area School District</u>, 694 F. Supp. 125, 136 (W.D. Pa. 1988).

Here, Iseley states he was transferred on July 2, 1997 and was "kept in the hole" for approximately three months. Iseley filed his complaint in the Eastern District on October 29, 1999. Iseley's claim against these claim defendants regarding the July 1997 transfer and placement in administrative custody fails to comply with the applicable statute of limitations. In order to be timely, any claims against defendants Whitman, Gaertner and Meyers or any other named defendant concerning the transfer and RHU placement should have been filed on or before October 2, 1999. Therefore, summary judgment should be granted in favor of the defendants regarding the July, 1997 transfer claims to SCI-Rockview and plaintiff's placement in restricted housing.

## II. ISELEY CANNOT ESTABLISH A CLAIM OF RETALIATION OR VIOLATIONS OF THE FIRST, FOURTH, EIGHTH AND FOURTEENTH AMENDMENTS

In his complaint, Iseley alleges that he had been issued misconduct reports at both SCI-Rockview and SCI-Mahanoy in retaliation for filing legal actions, grievances and for his status as a jailhouse lawyer.  (Comp. ¶¶60-79; 95-104; 166-174.) Likewise, Iseley alleges that his numerous institutional grievances were dismissed because of his prior lawsuits and jailhouse lawyer status.  He claims that he was denied a prescriptive program plan, employment and pay, favorable parole recommendations, accurate psychological reports,  medical treatment,  property, religious literature and pork free meals in retaliation for filing lawsuits and grievances. (Comp. ¶¶ 80-94; 105-130; 134-139; 155)  In addition, Iseley alleges that he was denied his legal property, which barred him from adequately representing himself at trial and on appeal. (Comp. ¶¶140-146; 175-180.)  Although Iseley claims retaliation, he fails to establish that the defendants were in fact retaliatory.  Moreover, as established by  the material facts, the actions and the decisions of the defendants' actions were reasonably related to legitimate needs of prison administration.

Recently, the Third Circuit Court of Appeals addressed the issue of retaliation claims regarding government actions.  In <u>Allah v. Seiverling</u>, 229 F. 3d 220, 224-25

-4-

(3rd Cir. 2000), the Court held that , "government actions, while standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right," (*quoting* Thaddeus-X v. Blanter, 175 F.3d 378, 386 (6th Cir. 1999) (*en banc*). Accordingly, the law of this circuit is clear that a prisoner who presents a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied. Allah, *supra.* at 225.

In Rauser v. Horn, 241 F. 3d 330 (3rd Cir. 2001),   the Third Circuit revisited government action-retaliation claims, and set forth the elements of a prisoner's cause of action  and the burden of proof he must carry to succeed.

As a threshold matter, a prisoner-plaintiff must show that the conduct which lead to the alleged retaliation was constitutionally protected. Rauser, *supra.* at 332. The prisoner must then show he suffered some "adverse action" at the hands of prison officials.  Once these two threshold criteria are met, the prisoner must prove a causal link between the exercise of the constitutional right and the adverse action taken against him.  Prison officials may still prevail, however, by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological goal. Rauser, *supra.* at 333.   Applying these standards to the facts of this case, Iseley has failed to assert a proper claim of

-5-

retaliation against the defendants regarding his transfers, misconducts, grievances, alleged missing property or his remaining claims of conditions of confinement.

### A. Iseley Cannot Demonstrate That His Transfers to SCI-Rockview and SCI-Mahanoy Were Retaliatory

Iseley claims that his transfers to both SCI-Rockview and SCI-Mahanoy were in retaliation for filing prior lawsuits and grievances and because of his status as a jailhouse lawyer.

It is well established that a prisoner has no constitutional right to be or not to be transferred, or to be confined or not to be confined in any particular prison. Olim v. Wakinekona, 461 U.S. 238 (1982); Meachum v. Fano, 427 U.S. 215 (1976); Montanye v. Haymes, 427 U.S. 236 (1976).   Transfer to or from one correctional facility, or placement in any particular unit within a prison is not a federally protected right. Iseley cannot therefore establish a claim of retaliation based upon his transfer to SCI-Rockview or SCI-Mahanoy.

Simply claiming that he was transferred in retaliation is insufficient.  Under Rauser, plaintiff must show some adverse action occurred in retaliation for the protected activity.  Plaintiff offers no reasons why his transfers could be regarded as "adverse" actions, even of he were correct that they were taken as a result of his

-6-

lawsuits.  Absent more, the simple fact of transfer from one institution to another is not "adverse," within the meaning of the <u>Rauser</u> standard.

Furthermore, other than making conclusionary or speculative comments about his belief that actions were taken because of his status as a jailhouse lawyer, Iseley can offer no proof that his transfers or placement in administrative custody occurred for reasons other than legitimate needs of prison administration, even assuming they could qualify as "adverse."   All that Iseley can produce is his "belief" that these actions occurred in retaliation.[1]  Such unsupported belief is insufficient to carry plaintiff's burden.  *See* <u>Celotex v. Catrett</u>, 477 U.S. 317 (1986).

Therefore, summary judgment should be granted in favor of defendants Whitman, Gaertner, and Meyers regarding his retaliatory transfer related claims.

### B. Iseley Cannot Prove That The Misconducts Were Issued for Retaliatory Purposes

In addition to his retaliatory transfer claims, Iseley alleges that he was issued misconduct reports at both SCI- Rockview and SCI-Mahanoy because he has filed legal actions and grievances and because he is a jailhouse lawyer.  To the contrary,

---

[1] In his deposition, Iseley states that Meyers retaliated against him"for his status as a jailhouse lawyer, set me up, refused to address my grievances all because, like I said, my status as a jailhouse lawyer and because I'm black." (<u>See</u> Dep. Trans. Pg. 147)  In addition, Iseley stated that "they all set me up to get me out of the jail, found me guilty of misconducts." (<u>Id</u>.)

and as established by the material facts, these misconducts were issued and upheld for reasons related to the legitimate enforcement of prison regulations.

In his complaint, Iseley alleges that defendants Wakefield, Gaertner, Whitman, Mitchell, Meyers, Bitner, Tressler and Horn refused to assist him and denied his misconduct appeals in retaliation for his filing prison grievances and legal actions, his status as a prisoner and because of his race. (Comp. ¶ 79)   Iseley further alleges he was denied adequate disciplinary proceedings. (Id.¶66-68; 189)

Iseley was placed in administrative custody pending an investigation of possible involvement in a fight.  Information regarding the fight and identification of Iseley was provided by confidential sources of information ("CSI"). (SMF ¶4)  Hearing examiner Mitchell conducted an in-camera hearing to determine the reliability of the CSI in accordance with DC ADM 801.  Thereafter, Iseley had a disciplinary hearing regarding Misconduct No. A 122000.  The hearing examiner found Iseley guilty of the misconduct based on the credibility of the evidence, testimony and reports. (Id. ¶5-11)

Pursuant to Iseley's appeals, the Program Review Committee ("PRC"),[2] Superintendent Meyers, and Chief Hearing Examiner Bitner reviewed all the relevant

---

[2]Members of the PRC who reviewed Iseley's appeal were defendants Wakefield, Whitman and Gaertner.  (See Exhibit "B" attached to Whitman's declaration)

documentation regarding the misconduct report and the issues Iseley raised on appeal. (Id. ¶12-13)

Iseley also alleges in his complaint that another misconduct, Misconduct No. A 110205 was issued to him in retaliation. According to Iseley, defendants Chesney, Breon, Cercullo, Yarnell, Spaide, Dragovich, Bitner and Horn retaliated against him by finding him guilty of a misconduct because he filed prison grievances and legal actions.

The material facts, however, establish that Iseley refused to obey an order given to him by the unit manager. Iseley became argumentative and began using obscene language in response to order. In accordance with DC-ADM 801, Iseley was issued a misconduct for refusing to obey an order and using obscene language. Iseley was afforded a hearing regarding the misconduct. His witnesses were not permitted because Iseley admitted that they were not present at the time and place of the incident. (Id.) Hearing Examiner Breon, based upon the information presented, believed that Iseley refused to obey the order and found him guilty of the misconduct. Iseley then appealed the misconduct to the PRC,[3] the superintendent, and Bitner. The PRC, the superintendent and Bitner reviewed the misconduct report, the relevant

_____

[3]Members of the PRC that reviewed Iseley's appeal were defendants Cercullo, Yarnell and Spaide.  (See Spaide Dec. Exhibit "A")

documentation and information, and the issues Iseley raised on appeal. ( SMF ¶19-25)

Finally, Iseley alleges he was thrown in the hole and received a false misconduct in retaliation for filing a legal action against prison officials.[4] (Comp. 171)  He states that hearing examiner Kane found him guilty of the misconduct and failed to comply with regulations and policies because of his status as a prisoner and because he is a  black man and Muslim.  In addition, Iseley alleges that Dragovich, Corbacio, Wildstein Hornung and Bitner refused to address the issues of the misconduct in retaliation for filing grievances and legal actions.

According to the material facts and supporting documents, a safety and security check was conducted on Iseley's cell.   After given the order by a corrections officer, Iseley approached the officer and threatened to harm the him.  Iseley was then issued a misconduct, pursuant to DOC regulations.   (SMF ¶ 46)

Hearing examiner Kane presided at the misconduct hearing and after reviewing the misconduct report and Iseley's version, he found the officer's report credible and sanctioned Iseley to 60 days disciplinary custody. Bitner reviewed Iseley's final appeal of the misconduct and based upon a review of the documentation, he believed that there was sufficient evidence to sustain a finding of guilt. (Id. 46-47)

---

[4]In his deposition, Iseley stipulated that he intended to drop this allegation from his complaint. (See Dep. Trans. Pg. 128) Nonetheless, we address the allegations in this brief.

-10-

Iseley is unable to present any proof of retaliation other than bald statements that the defendants found him guilty of a misconduct based upon his race or in retaliation for filing lawsuits or prison grievances.   In his deposition, Iseley could offer no proof that the defendants' actions were grounded in retaliation.[5]   Rather, he made the repeated conclusory statements that the hearing examiners, members of the PRC, superintendent Dragovich and Meyers, and Bitner "didn't address my appeal because of my history as a jailhouse lawyer and my race."  Iseley further states that Horn retaliated because he knew "everything in the complaint" and retaliated by his inaction." (See Dep. Trans. Pgs.147-152;157-160) These accusations and speculations are simply not enough to establish a causal link between a constitutional right and an adverse action.   See Rauser, supra.

To the extent that Iseley is alleging that his Fourteenth Amendment due process rights have been violated during these misconduct proceedings, he cannot establish a claim.  Iseley was afforded the process that was due to him under the applicable DOC administrative remedies. See Wolff V. McDonnell, 418 U.S. 539

---

[5] In his deposition, Iseley supports his claim that Wakefield, Gaertner, Whitman, Meyers, Tressler and Horn retaliated against him by making statements such as "they refused to look into the facts of the situation regarding the appeal," [and] "by covering up what Mitchell did," [or] "because they were supposed to do an investigation and they didn't do anything."  In support of his claim against Mitchell, Iseley states that he retaliated against him by calling him a "nigger." (See Dep. Trans. Pgs. 149-150)

(1974). The record demonstrates that here was at least "some evidence" supporting the findings against him. *See* <u>Superintendent v. Hill</u>, 472 U.S. 445 (1985). Iseley received administrative hearings and an appeal process pursuant to DC-ADM 801. Therefore, any Fourteenth Amendment Due Process claims regarding these misconducts cannot be established.

Here, the facts establish that Iseley was found guilty of the misconducts based upon the information presented and that he violated prison regulations by either conspiring to commit aggravated assault, refusing to obey an order, or threatening an officer with bodily harm. The defendants in this case were simply acting enforcing the disciplinary regulations of the DOC. Iseley has not and cannot prove that these defendants acted for any other reason. Therefore, summary judgment should be granted in favor of defendants Chesney, Breon, Cercullo, Yarnell, Spaide, Dragovich, Wakefield, Gaertner, Whitman, Meyers, Tressler, Mitchell, Kane Dragovich, Corbacio, Wildstein, Hornung, Bitner and Horn regarding the claim surrounding the misconducts.

## C. Iseley Cannot Prove That His Grievances Were Denied For Retaliatory Purposes

In addition to his claim that he was issued and found guilty of misconducts for filing legal actions and grievances, Iseley claims that his inmate grievances were denied for the same retaliatory reasons.

In his complaint, Iseley alleges that was fired from his job as a block worker; that his cell lights remain on at night in violation of his constitutional rights; that he is not permitted to receive the alternative protein menu when pork is served; that Islamic materials were confiscated; that he was placed on grievance restriction; that the medical department wrongfully charged him for stick call regarding a chronic condition; that he was being charged for glasses that he did not want; that the medical department refused to refer him for corneal implants; that his guitar bag was illegally confiscated; and, that he was never refunded for a radio he then wished to exchange. Iseley states that he filed grievances regarding all these issues; but, all the grievances

were denied in retaliation for filing legal actions and grievances.[6]  Iseley also alleges

he was not afforded a prescriptive program plan at SCI-Rockview.

Irrespective of whether Iseley has abandoned these claims or not, he is unable

to prove that the denials of these grievances were motivated by retaliation.  Here

again, the material facts establish that, in every instance, legitimate DOC policy and

regulations were enforced concerning Iseley's complaints.

For example, an investigation found that Iseley did not have a job at SCI-

Mahanoy and was belligerent with officer MacKreth.  (SMF ¶ 17)  It was explained

to Iseley that the low intensity night lights are necessary for security in the L-5 unit.

(Id.)  The Food Service Manager, Robert Yarnell, advised Iseley that he would be

allowed to receive the pork alternative if he signed up for the program. (Id. ¶28 )

_____

[6]At his deposition, Iseley stated that he intended to drop numerous allegations contained
in his complaint.  These claims included:
¶80 alleging that Meyers, Horn, and Bitner denied his appeal concerning mail confiscation;
¶¶83-94 alleging that he was fired from his block job and that defendant Chesney wrongfully
terminated him and that defendants Dotter, Dragovich, Bitner and Horn denied his grievance in
retaliation for filing legal actions and grievances;
¶¶105-108 alleging that he was denied shaves, showers, recreation and harassed by defendants
Fryzel and Eichenberger in retaliation for filing grievances and legal actions, that his cell light
was used as a psychological weapon and the defendants Dotter, Dragovich, Bitner and Horn
sanctioned the actions against him in retaliation for his filing legal actions and grievances.
¶¶155-157 alleging that his guitar bag was confiscated and that he was never reimbursed for it in
retaliation for filing grievances and legal actions
¶¶166-171 alleging that his cell was searched and legal materials were read by Defendant
Dropinsky, who ordered him to throw away all his legal property and that he received a false
misconduct from officer Dropinski.  (See deposition Transcript, pp. 37-38 and Exhibit "B" ¶¶
80, 83-94, 105-108; 155-157 and 166-171.

-14-

Iseley was informed that his letters were confiscated because they had no return address on them and contained material which violated DOC policy governing incoming publications. (Id.¶38)

Iseley also was informed that he did not order photo grey lenses or sign a cash slip for the photo grey lenses and that treatment of his visual imperfection would not be corrected through corneal transplants or photo refractive keratotmy because this procedure is cosmetic and can be corrected through lenses. (Id.¶43) It was explained to Iseley that the guitar bag was confiscated for security reasons, pursuant to DOC policy. (Id.¶44) It was also explained to Iseley that in order to get a refund for the radio/ cassette player he had to send it to the vendor for the refund. Iseley chose not to do so. (Id.¶45) Iseley was placed on grievance restriction pursuant to DC-ADM 804, because Superintendent Dragovich believed that Iseley was not making a good faith use of the grievance system as outlined in DC-ADM 804. (Id.¶30) Furthermore, Iseley was afforded a prescriptive program plan while at SCI-Rockview. (Id.¶ 3).

These claims do not establish a violation of constitutional magnitude. Iseley can offer no proof that his grievances were denied because he files lawsuits and grievances and cannot prove a casual connection between the filing of his legal actions and the denial of the grievances. It is not sufficient for a plaintiff simply to argue that, because one event follows another, there must be a causal connection between the two.

-15-

*See* <u>Weston v. Commonwealth of Pennsylvania</u>, 2001 WL 539470 *9 (3rd Cir., May 22, 2001) (in employment discrimination action, timing of events that is not highly unusual is insufficient to create causal link).   Therefore summary judgment should be granted in favor of the defendants regarding these claims.

**D.    Iseley Has Cannot Prove That He Was Denied
       Parole For Retaliatory Purposes**

In his complaint, Iseley alleges that defendant Dennison lied to him in order to get him to sign a psychiatric consent form and that defendants Grown and Youron informed the Parole Board that he refused to sign the form.  He further alleges that defendants Unell, Dotter, Dragovich, Bushey, Bitner and Horn retaliated against him in denying his grievance regarding this form because he has filed lawsuits and grievances.  Iseley also alleges that false and misleading information was placed in his files and that Bushey permits his agents to deny parole based on reports that contain false data.  Finally, Iseley alleges that he was denied parole in retaliation for filing legal actions and grievances.

At the outset, it must be noted that a convict has no constitutionally protected liberty interest in parole unless state law requires parole upon specific substantive criteria.  <u>Greenholtz v. Nebraska Penal Institution</u>, 442 U.S. 1, 11-12 (1979); <u>Connecticut Board of Pardons v. Dumschat</u>, 452 U.S. 458 (1981);  <u>Kentucky Dep't of</u>

-16-

Corrections v. Thompson, 409 U.S. 454, 461-463 (1989); Olim v. Wakinekona, 461

U.S. 238, 249 (1983).  These holdings are a refinement of the Supreme Court's

fundamental observation that before the Constitution protects an interest defined by

state law, the claimant must "have more that a unilateral expectation of it.  He must,

instead have a legitimate claim of entitlement to it."  Board of Regents v. Roth, 408

U.S. 564, 577 (1972).  Relevant Pennsylvania law gives the Board of Probation and

Parole the discretion to grant or deny parole unconstrained by any substantive

predicates.[7]   If Iseley believes that the Parole Board has made any error in the reasons

set forth for the denial of his parole, that is a fact that Iseley can bring to the attention

of the Parole Board during his next parole hearing and or review.  It is not the basis

of a claim of a constitutional violation.

In support of his retaliation claim against these defendants, the best Iseley can

offer is his assertion that these defendants' actions were based upon his history as a

jailhouse lawyer, because he has filed previous lawsuits and grievances and because

---

[7]Parole, by its very nature is the exercise of a broad discretion concerning many subjective aspects of the inmate's prior crime, mental characteristics, family history, rehabilitation efforts, current and past behavior.  There is no fixed formula for determining when or if parole should be granted. As such, while some may disagree about the weight to be placed on various factors, it hardly can be said that the disagreement created by the exercise of broad discretionary authority concerning parole can be of an arbitrary and capricious nature in giving rise to a substantive due process violation.

they did not investigate when he filed grievances, appealed the grievances or wrote to them.  (See Depo. Trans. Pp. 146, 155, 157, 160, 163.)

The material facts and supporting documentation reveal that  Iseley was presented  with a mental health informed consent document which Iseley reviewed and signed. (SMF ¶31)   Iseley then wrote the chief psychologist Youron and requested that his consent be revoked and that the original document be returned to him. (Id. ¶32) Youron wrote to Iseley and informed him that his consent was revoked.  (Id.) The original document was returned to Iseley and a note was made on his DC-14 that Iseley revoked his consent and that the document was returned to him.  (Id.)  The grievance Iseley filed concerning the form was investigated and responded to.  (Id. ¶¶ 33-35) Iseley's appeals of that grievance were further reviewed by the Dragovich and Bitner.  (Id.¶36 )

Once again Iseley can offer no proof that any false information was placed in his file or that he was denied parole because he files lawsuits and grievances. In addition Iseley fails to prove a causal connection between the filing of his legal actions and the denial of the grievances.  Therefore summary judgment should be granted in favor of the defendants Unell, Bushey, Craig, Wildenstein Dotter, Dragovich, Bitner, Horn, Youron, Dennsion and Grow  regarding these claims.

-18-

### E. Iseley Cannot Prove A Claim of Retaliation For His Missing Property

Iseley alleges that after he was released from the RHU in January, 1999, he discovered that numerous items allegedly were missing from his personal property, which consisted of twelve publications that were exhibits in a federal lawsuit. (See Comp. ¶141) He also alleges that in August of 1999, he again found out that a large percent of his personal property was missing, including legal material. He alleges that he contacted defendants Peek, Birosak, Novotony, Dragovich, Bitner, Dotter, and Mahally concerning this missing property but they did nothing about it in retaliation for his filing his prison grievances and legal actions because he is a prisoner. (Id. ¶¶141, 175-176) In addition Iseley alleges that he believes that the legal material was intentionally taken by defendant Dropinski. [8] ( Id. 177).

In support of his retaliation claim, Iseley merely opines that these defendants retaliated against him for filing grievances and because he is a jailhouse lawyer. (See Dep. Trans. Pp. 152-154; 162 ) Furthermore, Iseley has not offered any evidence or proof, in his complaint or in his deposition, that he indeed did have these publications or legal materials.

_____

[8]At his deposition, Iseley stated that he intended to drop Office Dropinski from the complaint. (See Dep. Trans. Pg. 163).

The material facts and supporting documents reveal that Iseley's grievances concerning his allegedly missing property were investigated and responded to. Iseley was informed that his personal property inventory sheet that accompanied him to SCI-Mahanoy reflected that he had seven magazines/publications. Sgt. Mahally further explained to Iseley that following his placement in the RHU his property was packed and secured in the property room. The grievance was further reviewed by Dragovich and Bitner, who denied Iseley's appeal. (SMF ¶40-41).

Once again Iseley can offer no proof that any of his property, including his legal material, was taken in retaliation for filing lawsuits and grievances and because he is known as a jailhouse lawyer. These claims like his others, are based upon his mere speculation and belief. Absent more, there is no valid retaliation claim. *See* <u>Weston v. Commonwealth</u>, 2001 WL 539470 *9. Therefore, summary judgment should be granted in favor of defendants Peek, Birosak, Novotony, Dragovich, Gennarini, Bitner, Dotter, and Mahally regarding these claims.

## CONCLUSION

For the foregoing reasons, the Court should grant defendants' motion for summary judgment.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

By:    MARYANNE M. LEWIS
Deputy Attorney General

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation

OFFICE OF ATTORNEY GENERAL
15th Fl., Strawberry Square
Harrisburg, PA 17120
(717) 787-9719
E-MAIL: mlewis@attorneygeneral.gov

DATE: June 15, 2001

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                          :
                                     :
    Plaintiff          :
                                     :
    v.                 :    No. 1:00-CV-00577
                                     :    (Judge Kane)
W. CONWAY BUSHEY, et al.,                 :
                                     :
    Defendants          :

## CERTIFICATE OF SERVICE

I, Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this

date I caused to be served the foregoing Brief in Support of Defendants'

Motion for Summary Judgment, by depositing a copy of the same in the United States

mail, postage prepaid, in Harrisburg, PA., addressed to the following:

Charles Iseley, #AM-9320
SCI-Huntingdon
1100 Pike St.
Huntingdon, PA 16654

MARYANNE M. LEWIS
DEPUTY ATTORNEY GENERAL

DATE: June 15, 2001