# ●ORIGINAL●

⟨99 10/2 YK⟩

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,                :
                               :
         Plaintiff             :
                               :
     v.                        :   No. 1:00-CV-00577
                               :   (Judge Kane)
W. CONWAY BUSHEY, et al.,      :
                               :
         Defendants            :

FILED
HARRISBURG, PA

OCT 1 9 2001

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION FOR ENLARGEMENT OF TIME

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 alleging

claims under the First, Eighth and Fourteenth Amendment to the United States

Constitution.    The allegations in the complaint stem from alleged unlawful

misconducts, grievances, and conditions of confinement that affected plaintiff while

he was incarcerated at various state correctional institutions.

Plaintiff, Charles Iseley is a pro se prisoner currently incarcerated at the State

Correctional Institution at Huntingdon ("SCI-Huntingdon").    Defendants are

numerous employees or former employees of the Pennsylvania Department of

Corrections, who are or were employed at the State Correctional Institution at

Rockview ("SCI-Rockview"), the State Correctional Institution at Mahanoy ("SCI-

Mahanoy"), and officials at DOC's headquarters located in Camp Hill, Pennsylvania. Also named as defendants are employees of the Board.

On October 1, 2001, Iseley filed a Motion for Enlargement of Time in which to file a brief in opposition to defendants motion for summary judgment. In support of his motion, Iseley alleges that he does not have access to his legal property which contains exhibits necessary to file his brief. He further alleges that he is in the "hole" and does not have access to any legal research material necessary to draft a proper brief concerning a civil action. Finally, Iseley alleges that he has hepatitis and is not permitted to receive any medical treatment. He states that his present medical condition is and has been severely hampering any attempt in this action.

Discovery in this case closed on May 1, 2001. Defendants filed their motion for summary judgment on June 1, 2001 and their brief in support of that motion on June 15, 2001. Plaintiff's brief in opposition was do on or before July 3, 2001. Certainly, Iseley had ample time from the service of the brief until the July 3, 2001 deadline to request an extension of time to file his response. Iseley now expresses his concerns about his alleged inability to access the necessary legal materials and that his medical condition is "hampering" the preparation of his brief. For what ever reason, Iseley has let nearly four months pass before he elected to file this motion.

Attached to this response, is the Unsworn Declaration of Diana Baney, Assistant to the Superintendent at SCI-Huntingdon. (See Exhibit "A" attached) According to Ms. Baney's declaration, Iseley was transferred to SCI-Huntingdon from SCI-Mahanoy March 21, 2001. Upon his transfer to SCI-Huntingdon, he was placed in the RHU.

As Baney's declaration reveals, a mini law library is located within the RHU. This mini law library, is available to RHU inmates upon written request to the block sergeant. Inmates in the RHU may also request law books from the main library by using the library's Comprehensive Paging System Request Form. This form is available to all RHU inmates. (Id. at ¶ 6)

In addition, because Iseley is in the RHU, the amount of property he may retain in his cell is controlled. While RHU inmates receive basic issue items, which includes legal materials, any additional or excess property is stored in the RHU property room. Inmates do have access to review and exchange their legal property, upon written request and approval by the Program Review Committee. (Id. at ¶ 7) Iseley, in accordance with both the RHU regulations and DC-ADM 007, has had access to the mini-law library, the main law library and his legal property, provided he follow the prescribed rules, regulations and procedures. (Id. at ¶ 8)

-3-

Moreover, the exhibits attached to Baney's declaration reveal that both the mini law library and the main law library have legal materials necessary for Iseley to prepare his response to defendants' summary judgement motion.   As noted, in order to access these research materials as well as his access legal property, Iseley must simply follow the RHU rules and regulations.   (Id. at ¶ 8)   Therefore, Iseley's claim that he has been denied access to the law library, adequate research materials and his legal property is without merit.

Iseley also alleges that he needs an extension of time to file is response because he has a serious medical condition, Hepatitis C, which has been causing him severe pains including mental confusion.   He alleges that pursuant to DOC policy he is not permitted to receive any treatment whatsoever.   Attached as Exhibit "B" is the Unsworn Declaration of Esther Miller, the Infection Control Nurse at SCI-Huntingdon.   According to Iseley's medical file, he had refused protocol treatment for Hepatitis C.   In addition, Iseley was examined by the SCI-Huntingdon medical staff in September and October, 2001.   During these medical visits he complained only of asthma, and made no mention of any other medical ailments or made any mention of Hepatitis.   Iseley's claim that his current medical condition is hampering his attempts in this case is also without merit.

-4-

In short, Iseley motion for an extension of time is not only meritless, but untimely.  His futile attempt to prolong the disposition of this case should not be permitted.  Wherefore, his motion for an extension of time should be denied.

**Respectfully submitted,**

**D. MICHAEL FISHER**
**Attorney General**

By: _____
**MARYANNE M. LEWIS**
**Deputy Attorney General**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation**

**OFFICE OF ATTORNEY GENERAL**
**15th Fl., Strawberry Square**
**Harrisburg, PA 17120**
**(717) 787-9719**
**FAX:  (717) 772-4526**
**E-MAIL: mlewis@attorneygeneral.gov**
**DATE:    October 19, 2001**

**EXHIBIT "A"**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES ISELEY,<br>**Plaintiff** | : | |
| | : | |
| | : | |
| v. | : | No. 1:00-CV-00577 |
| | : | **(Judge Kane)** |
| W. CONWAY BUSHEY, et al., | : | |
| **Defendants** | : | |

## UNSWORN DECLARATION OF DIANA G. BANEY

I, **DIANA G. BANEY,** hereby declare under the penalty of perjury, that the following is true and correct, based upon my personal knowledge.

1.      I am currently employed by the Pennsylvania Department of Corrections ("DOC") as the Assistant to the Superintendent at the State Correctional Institution at Huntingdon, Pennsylvania ("SCI-Huntingdon"). I have been employed at SCI-Huntingdon since September, 1981. I have been employed in the capacity of Assistant to the Superintendent at SCI-Huntingdon since January, 1993.

2.      In that capacity, I am familiar with the standard operating policies and procedures followed at SCI-Huntingdon and the DOC. I am also familiar with the DOC Administrative Directives ("DC-ADM") and the rules, regulations and policies governing the Restrictive Housing Unit ("RHU") at SCI Huntingdon. In

addition, I am familiar with and have access to all records maintained by the institution in the course of regularly conducted business.

3.      RHU housing is used to separate those inmates whose presence in general population would constitute a threat to themselves, others or the safety and security of the institution.  The RHU also houses inmates who have violated DOC rules and regulations and are placed in disciplinary custody.

4.      Upon arrival to the RHU, inmates are issued the SCI-Huntingdon RHU Handbook. This handbook contains the rules and regulations of the Unit, and includes, but is not limited to the policies regarding the library, the mini law library and property control. Attached as Exhibit "A" is a true and correct copy of selected pages of the RHU Handbook.    (See RHU Handbook, pp. 9-15, attached as Exhibit "A")

5.      In addition,  DC-ADM 007 governs an inmate's access to legal services, which includes use of the main law library and the mini law library. Attached as Exhibit "B" is a true and correct copy DC-ADM- 007, which includes a list of the legal reference  materials available in the main law library as well as the RHU's mini law library.

6.      A mini law library is located within the RHU.  To use the mini law library, the inmate must submit a written request to the block sergeant. Inmates in the RHU may also request law books from the main library by using the library's

the RHU may also request law books from the main library by using the library's Comprehensive Paging System Request Form. This form is available to all RHU inmates.  (See Exhibit "A" attached)

7.    The amount of property an inmate may retain in his cell while in the RHU is controlled.  RHU inmates receive basic issue items, which includes legal materials.  Any additional or excess property is stored in the RHU property room. Inmates do have access to review and exchange  their legal property, upon written request and approval by the Program Review Committee.  (Id. pg. 14)

8.    On March 21, 2001, inmate Charles Iseley, AM-9320 was transferred to SCI-Huntingdon from SCI-Mahanoy.   Upon his transfer to SCI-Huntingdon, he was placed in the RHU.  Iseley was placed in the RHU because of his numerous threats and assaults made to the  staff, including the Superintendent at SCI-Mahanoy.

9.    In accordance with both the RHU regulations and DC-ADM 007, Iseley has had access to the mini-law library, the main law library and his legal property, provided he follow the prescribed rules, regulations and procedures.

10/18/2001  15:52    814-949-7922              SCI HUNTINGDON              PAGE  05
  FILE No.147 10/18 '01 13:  ID:OFFICE OF ATTY. GENERAL  FAX:  7724526    PAGE  5/ 5

_10-18-01_

**DATE**

DIANA G. BANEY

**EXHIBIT "A" TO BANEY DELCARATION**

# Commonwealth
# of
# Pennsylvania

## Department of Corrections

### RHU Handbook
### Number

## SCI Huntingdon
## Restricted Housing Unit
## Inmate Handbook



c. Inmate barbers/cosmetologists, recommended by the facility barber, and approved by the Deputy Superintendent for Facilities Management shall be used.

d. You must send a request slip to the Block Sergeant to request Barber services. Haircuts are conducted in the RHU on Saturdays. Request slips must be in no later than Friday.

e. Fingernail clippers may be used on a scheduled haircut day and must be included on the request slip.

L. Library Services

a. The facility librarian shall provide services to the RHU inmates. Inmates shall request this service via written inmate request. Books may be received biweekly by submitting a Library slip. These slips will be furnished on Sundays. You may have two books in your possession at one time. You are required to keep those books in good condition and return them (approximately two weeks) back to the officers when finished.

b. Use of the library is considered a privilege and may be revoked by the Shift Commander or PRC if the privilege is abused by the inmate.

c. Access to legal materials shall be in accordance with Department policy, DC-ADM 007, "Access to Provided Legal Services."

M. Mini Law Library

a. A mini law library shall be located within the unit.

b. To use the mini law library, the inmate shall submit a request to the officer in charge or designee, who shall then schedule the times and notify the inmate.

c. Use of the mini law library may be denied if there is an immediate security concern.

d. The inmate and all reference materials shall be searched before going to and upon leaving the library.

e. To use the mini law library, you must submit a request slip to the Block Sergeant, which includes your name, DC#, date, and time, and what material you need from the law library. You may submit by request three days in advance. These requests must be in by 7:00 p.m. to the Block Sergeant. All request slips are done by first come, first serve

basis.  You may not submit a request slip for another inmate.  The hours of operation are 7:00 a.m. to 9:00 a.m., 9:00 a.m. to 11:00 a.m., 12:00 p.m. to 2:00 p.m., 5:00 p.m. to 7:00 p.m., and 7:00 p.m. to 9:00 p.m.  You may also submit to the institutions librarian for law books from the main library identifying the desired books.  Books must be returned on the due date.

N.    Visits

    a.  The frequency of visits for each RHU inmate shall be determined by his custody status.

        i.  DC status inmates shall be permitted one (1) visit per month with immediate family.

        ii.  AC status inmates shall be permitted one (1) visit per month with immediate family.

        iii.  RHU visits shall be permitted Monday through Friday.  No weekend, holiday, or extended visiting hours are permitted.

        iv.  All visits are restricted to a maximum of one (1) hour.

    b.  All RHU visits shall be non-contact and under direct/constant visual observation of a Corrections Officer.

    c.  The number of visitors permitted at any given time is limited to two (2). This may be two (2) adults, or one (1) adult and one (1) child under the age of eighteen (18).  The Shift Commander has the discretion to permit additional visitors such as small children and/or infants on a case-by-case basis.

    d.  All RHU inmates, regardless of Custody status, Phase or Level, may receive non-contact visits from legal counsel.  Legal visits shall not be limited in number or frequency absent security concerns, and then only upon the Facility Manager's approval following consultation with the Department's Office of Chief Counsel.

    e.  The inmate shall be escorted to and from visits by unit Officers or Corrections Officers assigned by the Shift Commander/designee.

    f.  Failure to comply with all rules and regulations during visits by the inmate or his visitor(s) shall result in the termination of the visit.



    ii.  Once the water is off, the Shift Commander shall determine if the water is to remain off.

    iii.  Water shall be turned on as needed to provide the inmate with drinking water and sanitary toilet facilities.

S.    **Property Control**

    a.  The Officer in charge shall assign a unit Officer as the Unit's Property Officer. This officer shall be responsible for inventory, control, securing, receiving, and issuing of all inmate property. An alternate may also be named. However, all Unit staff shall ensure that the property control procedures are followed.

    b.  When an inmate is placed in the RHU, the receiving RHU Unit Officer or the Unit Property Officer shall inventory all personal property. All prohibited property shall be confiscated and marked with the inmate's name, number, and housing unit he was received from, inventoried and a DC-153, Personal Property Inventory sheet completed and the property stored in a designated area. The inmate shall be issued a copy of the DC-153 Personal Property Inventory. The DC-154A, Confiscated Items Receipt shall be properly completed and a copy issued to the inmate for all those items denied to him by the Corrections Officer conducting the inventory.

    c.  Each inmate shall receive the approved items for his status (basic issue, legal materials, etc.) from his property; he shall not be permitted to access to his other property except for regulated legal materials or for items approved by PRC. When your personal property is inventoried, you will be permitted the following items, according to your status:

| | | |
|---|---|---|
| 1 Jumpsuit | 1 Blanket | 3 pairs Socks |
| 3 Undershorts | 3 Undershirts | 3 Sheets |
| 1 Pillowcase | 1 Pair Slip on Canvas Shoes | 2 Bars Soap |
| 1 Unit Handbook | 1 Toothbrush (RHU) | 1 Toothpaste |
| 1 Washcloth | 1 roll of toilet paper | 1 flexpen |
| 1 deodorant | 1 soap dish | 1 pair shower shoes |
| 1 religious book | 1 kuffee | |
| 1 shampoo/soap/shaving crème combination | | |

    d.  Each inmate shall receive the approved items for his status (Basic Issue, Legal materials, etc.) from his property; he shall not be permitted access to his other property except for regulated legal materials or for items approved by the PRC or the officer in charge.

e. The property shall be stored in the property room located within the unit, logged in the property log, properly labeled, and placed on appropriate shelving.

f. Upon being released back to general population, staff, in the presence of the inmate, shall remove and check the inmate's remaining property from storage and return it to the inmate. Any discrepancies or breakage shall be documented and forwarded to the appropriate staff. The inmate shall sign the DC-153, Personal Property Inventory for all property received.

g. Property may be confiscated through misconduct procedures from any RHU inmate who is abusing the property or fashioning it in such a way that it provides a threat to security or safety. The decision shall be made by the Officer in charge and/or Shift Commander and reviewed by the PRC. In addition, further disposition shall be made by the Hearing Examiner on the misconduct report.

T.   <u>Basic Issue</u>

a. You must send a request slip to the Sergeant no later than Friday requesting basic issue. You are permitted to have toothbrush, toothpaste, soap/shampoo/shaving creme combo, washcloth (one for one only), and a comb.

U.   <u>Cell Searches</u>

a. All cell searches in the unit shall be conducted in accordance with Department policy, DC-ADM 203, "Searches of Inmates and Cells."

b. When an inmate's cell is to be searched, he shall be strip searched and moved from the cell.

c. Cell searches shall be conducted as part of any cell-to-cell move within the unit; this includes all property within the cell.

V.   <u>Security Inspections of Inmate Cells</u>

a. All RHU cells shall have security inspections conducted in accordance with DC-ADM 203, "Searches of Inmates and Cells."

# COMPREHENSIVE PAGING SYSTEM REQUEST FORM
## SCI-H LIBRARY

INMATE NAME: _____    DATE: _____

INMATE NUMBER: _____ BLOCK, CELL & QUAD: _____

All requests must contain the full citation including case name, or it will be returned to you unprocessed.

The below listed materials must be returned to the SCI-H library in original condition or you will be subjected to a Class I misconduct and/or assessment of costs.

The materials are due by _____ to avoid penalties/fines.

LEGAL MATERIALS REQUESTED: (PLEASE **PRINT** LEGIBLY)

1. _____
2. _____
3. _____
4. _____
5. _____
6. _____

ALTERNATES:

1. _____
2. _____
3. _____

**CIRCLE** LINE NUMBERS OF CASES YOU WANT SHEPARDIZED.

STAFF MEMBERS RESPONSE:

_____
_____
_____

DATE RECEIVED: _____    DATE DELIVERED: _____

STAFF SIGNATURE: _____

INMATE SIGNATURE: _____

# D-BLOCK MINI LAW LIBRARY

## Purdon's Pennsylvania Statutes Annotated—Title 18

1. ☐ Purdon's Title 18 Crimes & Offenses ..................... 101-2500  (1998 Ed.)
2. ☐ Purdon's Title 18 Crimes & Offenses..................... 2501-2700  (1998 Ed.)
3. ☐ Purdon's Title 18 Crimes & Offenses..................... 2701-3900
4. ☐ Purdon's Title 18 Crimes & Offenses..................... 3901-5300  (1983)
5. ☐ Purdon's Title 18 Crimes & Offenses..................... 5301-End  (1983)

## Purdon's Pennsylvania Statutes Annotated—Title 35

6. ☐ Purdon's Title 35 Health and Safety ..................... 1-1150 (1993)
7. ☐ Purdon's Title 35 Health and Safety ..................... 1151-6200 (1993)
8. ☐ Purdon's Title 35 Health and Safety ..................... 6201-End (1993)

## Purdon's Pennsylvania Statutes Annotated—Title 42

9. ☐ Purdon's Title 42 ..................................... Rules of Civil Procedure 1-1300 (1987)
10. ☐ Purdon's Title 42 ..................................... Rules of Civil Procedure 1301-2325 (1987)
11. ☐ Purdon's Title 42 ..................................... Rules of Civil Procedure  2326-End (1987)
12. ☐ Purdon's Title 42 ..................................... Rules of Criminal Procedure 1-1099 (1989)
13. ☐ Purdon's Title 42 ..................................... Rules of Criminal Procedure 1100-End (1989)
14. ☐ Purdon's Title 42 ..................................... Judiciary & Judicial Procedure 101-1700 (1989)
15. ☐ Purdon's Title 42 ..................................... Judiciary & Judicial Procedures 1701-5100 (1989)
16. ☐ Purdon's Title 42 ..................................... Judiciary & Judicial Procedure 5101-5500 (1989)
17. ☐ Purdon's Title 42 ..................................... Judiciary & Judicial Procedure 5501-5900 (1989)
18. ☐ Purdon's Title 42 ..................................... Judiciary & Judicial Procedure 5901-7100 (1982)
19. ☐ Purdon's Title 42 ..................................... Judiciary & Judicial Procedure 7101-8700 (1998)
20. ☐ Purdon's Title 42 ..................................... Judiciary & Judicial Procedure 8701-2000 (1998)
21. ☐ Purdon's Title 42 ..................................... Judiciary & Judicial Procedure 2000-End (1989)

## Purdon's Pennsylvania Statutes Annotated—Title 61

22. ☐ Purdon's Title 60-61 ..................................... Peddlers and Penal Institutions

# G-BLOCK MINI LAW LIBRARY

## Purdon's Pennsylvania Statutes Annotated—Title 18

1. ☐ Purdon's Title 18 Crimes & Offenses ................... 101-2500  (1998 Ed.)
2. ☐ Purdon's Title 18 Crimes & Offenses ................... 2501-2700  (1998 Ed.)
3. ☐ Purdon's Title 18 Crimes & Offenses ................... 2701-3900
4. ☐ Purdon's Title 18 Crimes & Offenses ................... 3901-5300  (1983)
5. ☐ Purdon's Title 18 Crimes & Offenses ................... 5301-End  (1983)

## Purdon's Pennsylvania Statutes Annotated—Title 35

6. ☐ Purdon's Title 35 Health and Safety ................... 1-1150 (1993)
7. ☐ Purdon's Title 35 Health and Safety ................... 1151-6200 (1993)
8. ☐ Purdon's Title 35 Health and Safety ................... 6201-End (1993)

## Purdon's Pennsylvania Statutes Annotated—Title 42

9. ☐ Purdon's Title 42 ................... Rules of Civil Procedure 1-1300 (1987)
10. ☐ Purdon's Title 42 ................... Rules of Civil Procedure 1301-2325 (1987)
11. ☐ Purdon's Title 42 ................... Rules of Civil Procedure  2326-End (1987)
12. ☐ Purdon's Title 42 ................... Rules of Criminal Procedure 1-1099 (1989)
13. ☐ Purdon's Title 42 ................... Rules of Criminal Procedure 1100-End (1989)
14. ☐ Purdon's Title 42 ................... Judiciary & Judicial Procedure 101-1700 (1989)
15. ☐ Purdon's Title 42 ................... Judiciary & Judicial Procedures 1701-5100 (1989)
16. ☐ Purdon's Title 42 ................... Judiciary & Judicial Procedure 5101-5500 (1989)
17. ☐ Purdon's Title 42 ................... Judiciary & Judicial Procedure 5501-5900 (1989)
18. ☐ Purdon's Title 42 ................... Judiciary & Judicial Procedure 5901-7100 (1982)
19. ☐ Purdon's Title 42 ................... Judiciary & Judicial Procedure 7101-8700 (1998)
20. ☐ Purdon's Title 42 ................... Judiciary & Judicial Procedure 8701-2000 (1998)
21. ☐ Purdon's Title 42 ................... Judiciary & Judicial Procedure 2000-End (1989)

## Purdon's Pennsylvania Statutes Annotated—Title 61

22. ☐ Purdon's Title 60-61 ................... Peddlers and Penal Institutions

## Pennsylvania Rules of Court-State (West)

23. ☐ Pennsylvania Rules of Court ............................................................ State (2000 Revised Ed.)
24. ☐ Pennsylvania Rules of Court................................................................ Federal (2000 Revised Ed.)

## Federal Civil Judicial Procedure in Rules (West)

25. ☐ Federal Civil Judicial Procedure and Rules ........................... (2000)

## Federal Practice Digest Volumes on Constitutional Law and Habeas Corpus
### West's Federal Practice Digest 4th Ed.

26. ☐ 20B. Conspiracy 48– Constitutional Law 66 ........................ (1997)
27. ☐ 21 Constitutional Law ........................................................................ 67-84 (1997)
28. ☐ 21A. Constitutional Law .................................................................... 85-90.1 (6) (1997)
29. ☐ 21B. Constitutional Law .................................................................... 90.1 (7)-91 (1997)
30. ☐ 22 Constitutional Law ........................................................................ 92-223 (1999)
31. ☐ 22A. Constitutional Law .................................................................... 224-250.5 (1999)
32. ☐ 22B. Constitutional Law .................................................................... 251-255 (1999)
33. ☐ 23 Constitutional Law ........................................................................ 256-268
34. ☐ 23A Constitutional Law ...................................................................... 269-273
35. ☐ 23B. Constitutional Law .................................................................... 274-277
36. ☐ 24 Constitutional Law ........................................................................ 278-287 (1999)
37. ☐ 24A. Constitutional Law .................................................................... 3288-320.5 (1999)
38. ☐ 24B. Constitutional Law .................................................................... 21-Consumer Protection (1999)
39. ☐ 58 Guaranty to Habeas Corpus ...................................................... 366
39A ☐ Habeas Corpus...................................................................................... 367-430
40. ☐ 59 Habeas Corpus................................................................................ 431-499
40A ☐ 59A Habeas Corpus ............................................................................ 500-769
40B ☐ 59B Habeas Corpus ............................................................................ 770-Hawkers and Peddlers

## Pennsylvania Digest Volumes on Criminal Law and the Table of Case
### West's PA Digest 2nd

41. ☐ 13. Credit Reporting Agencies .......................................................... Criminal Law 303 (1983)
42. ☐ 14. Criminal Law .................................................................................. 304-447
43. ☐ 15. Criminal Law .................................................................................. 448-632 (1983)
44. ☐ 16. Criminal Law .................................................................................. 633-768 (1983)
45. ☐ 17. Criminal Law .................................................................................. 769-997 (1983)
46. ☐ 18. Criminal Law .................................................................................. 998-1157 (1984)
47. ☐ 19. Criminal Law .................................................................................. 1158-1199
48. ☐ 19A Criminal Law.................................................................................. 1200-Damages 140 (1997)
49. ☐ 70. Table of Cases................................................................................ A-B
49A ☐ 71. Table of Cases................................................................................ C-Comm. vs. T
49B ☐ 72. Table of Cases................................................................................ Comm. vs. U-D
49C ☐ 73. Table of Cases................................................................................ E-Hd

D. ☐ 74.  Table of Cases ................................................ He-L
E. ☐ 75.  Table of Cases ................................................ M-O
F. ☐ 76.  Table of Cases ................................................ P-R
G. ☐ 77.  Table of Cases ................................................ S-T
H. ☐ 78.  Table of Cases ................................................ U-End

## Pennsylvania and United States Constitution

50. ☐  Purdon's PA CSA Constitution ............................ Article 1 (1994)
51. ☐  Purdon's PA CSA Constitution ............................ Article 2 (1994)
52. ☐  USCA Article 1 ................................................ Constitution (1987)
53. ☐  USCA Article 2-7 ............................................ Constitution (1987)
54. ☐  USCA Amendment 1-3 ...................................... Constitution (1987)
55. ☐  USCA Amendment 4 ......................................... Constitution (1987)
56. ☐  USCA Amendment 5 ......................................... Constitution (1987)
57. ☐  USCA Amendment 6 ......................................... Constitution (1987)
58. ☐  USCA Amendment 7-14 .................................... Constitution (1987)
59. ☐  USCA Amendment 14 ....................................... Due Process in General (1987)
60. ☐  USCA Amendment 14 ....................................... Due Process Specific (1987)
61. ☐  USCA Amendment 14 ....................................... End (1987)

## Black's Law Dictionary—7th Ed. (1999)

62. ☐  Black's Law Dictionary ...................................... 7th Ed. (1999)

## USCA 28  Judiciary and Judicial Procedures

63. ☐  USCA 28 .................................................... Judiciary and Judicial Procedures 2201-2253 (1994)
64. ☐  USCA 28 .................................................... Judiciary and Judicial Procedures 2254 (1994)
65. ☐  USCA 42 .................................................... Public Health and Welfare 1771-1982 (1994)
66. ☐  USCA 42 .................................................... Public Health and Welfare 1983-1984 (1994)
67. ☐  USCA 42 .................................................... Public Health and Welfare 1985-2000 (1994)

## Title 37

68. ☐  Title 37 .................................................... PA Code with Updates

## West's PA Practice—PA Evidence 2nd Ed. (1999)

69. ☐  West's PA Practice ........................................ PA Evidence 2nd Ed #1 (1999) (T 101 286)
70. ☐  West's PA Criminal Procedure ........................... Forms and Commentary #2 (1991)
71.    Federal Habeas Corpus Practice & Procedure, V.1  (1998)
72.    Federal Habeas Corpus Practice & Procedure, V.2  (1998)
73.    Pa. Bar Assoc. Lawyer's Directory (previous year)

**EXHIBIT "B" TO BANEY DELCARATION**



**POLICY STATEMENT**
**Commonwealth of Pennsylvania • Department of Corrections**

| Policy Subject: | Policy Number |
|---|---|
| ACCESS TO PROVIDED LEGAL SERVICES | DC-ADM 007 |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| May 10, 1999 | Martin F. Horn | June 28, 1999 |

### I.  AUTHORITY

The authority of the Secretary of Corrections to direct the operations of the Department of Corrections is established by Sections 201, 206, 506, and 901(b) of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, 175, as amended.

### II.  PURPOSE

The purpose of this policy is to establish procedures regarding the acquisition, maintenance, availability, and assistance in the use of legal reference materials provided to inmates within state correctional institutions and regional correctional facilities.[1]

### III.  APPLICABILITY

This policy is applicable to all state correctional institutions, regional correctional facilities, and the Motivational Boot Camp operated under the authority of the Department of Corrections.

RECEIVED

MAY 1 0 1999

SCI-HUNTINGDON

---

[1] ACA Standard ACA 2-CO-5F-01

*Access to Provided Legal Services, DC-ADM 007*                                      **Page 2**

IV.    **DEFINITIONS**

A.    **Comprehensive Paging System**

The procedure established to allow inmates in a Restricted Housing Unit (RHU), Special Assessment Unit (SAU), Capital Case Unit or Special Management Unit (SMU) to request from the Main Library or State Law Library case opinions that are not available in the Mini Law Library.

B.    **Corrections Librarians**

Employees of the Department appointed to the Librarian I and Librarian II classifications.

C.    **Department (DOC)**

The Pennsylvania Department of Corrections.

D.    **Facility**

A state correctional institution, state regional correctional facility, and the Motivational Boot Camp operated by the Department of Corrections.

E.    **General Population**

The housing status that the majority of inmates within a particular facility are assigned.  General population consists of those inmates not housed within a Restricted Housing Unit (RHU), Special Management Unit (SMU), Special Assessment Unit (SAU), Capital Case Unit, or Diagnostic Unit of a particular facility.

F.    **Inmate Legal Reference Aide**

A work assignment given to an inmate committed to the Department who has received instruction by Staff Paralegals or who has a Paralegal certificate from an accredited Paralegal program and is authorized by the Department to assist other inmates about the use of legal materials.

G.    **Main Law Library**

The Legal Reference Collection materials located in an area accessible by General Population inmates.

*Access to Provided Legal Services, DC-ADM 007*    **Page 3**

H.    **Mini Law Library**

The Legal Reference Collection materials located in a restricted housing unit.

I.    **Non-English Speaking Inmates**

Inmates who are unable to speak the English language well enough to communicate their needs.

J.    **Restricted Housing Unit (RHU)**

An area or group of cells housing inmates assigned to disciplinary or administrative custody status pursuant to Department policy DC-ADM 801, "Inmate Disciplinary and Restricted Housing Procedures" or DC-ADM 802, "Administrative Custody Procedures".

K.    **Special Assessment Unit (SAU)**

A special unit at SCI-Waymart designated to provide independent assessment and initial treatment intervention to inmates whom, due to their mental illness, have demonstrated an inability to function successfully within the general population.

L.    **Special Management Unit (SMU)**

Special units within designated facilities, separate from an RHU, designated to safely and humanely handle inmates whose behavior presents a serious threat to the safety and security of the facility, staff, other inmates or him or herself.

M.    **Staff Paralegal**

An employee of the Department, who possesses paralegal certification from an accredited paralegal program or equivalent legal experience. A Staff Paralegal assists eligible inmates with materials and documents necessary to pursue legal claims.

## V.    POLICY

It is the policy of the Department that legal reference materials are acquired, maintained, and made available to inmates, and that assistance in the use of legal reference materials is made available to eligible inmates.[2]

## VI.   PROCEDURES

### A.    Facility Acquisition and Maintenance of Legal Reference Materials

1.  Each facility will acquire and maintain, in the facility's Main Law Library and Mini Law Library, the legal reference materials as set forth in Attachments A and B.[3]

2.  Legal reference materials will be supplemented or replaced according to the schedule established by the publisher and at the direction of the Corrections Librarian, as based upon the institution's specific need.[4]

3.  Where creation of a new Mini Law Library would constitute an undue expense, given its proposed usage, the facility may develop alternative procedures to ensure the protection of the inmate's constitutional rights. The proposed alternative is subject to the approval of the Regional Deputy Secretary.

### B.    Law Library Services

1.  Each facility shall develop local procedures governing the operation of the facility's Main Law Library and Mini Law Library. Local procedure shall establish the following:

    a.  specific hours during which the facility's Main Law Library and Mini Law Library shall be open;

    b.  the manner in which inmates must request access to the Main Law Library and Mini Law Library;

    c.  any other aspect of the operation of the facility's Main Law Library and Mini Law Library.

---

2 ACA Standard ACI 3-4262; ACI 3-4264; 1-ABC-5E-01; 1-ABC-3D-03
3 ACA Standard ACI 3-4450
4 ACA Standard 1-ABC-5E-03; 1-ABC-5E-02

*Access to Provided Legal Services, DC-ADM 007*                                    **Page 5**

2. Use of the Main Law Library at each facility shall be limited to inmates housed in general population at such facility.

3. Due to the limited size of each Mini Law Library, use of the Mini Law Library at a facility shall be limited to inmates housed in an RHU, SMU, SAU or Capital Case Unit located at such facility.[5]  Research periods will be scheduled and assigned in time blocks of two (2) hours each.

4. The Mini Law Libraries shall be available for legal research seven (7) days a week, six (6) hours per day, as needed.

5. Should library space be available due to a lack of demand, an inmate may be permitted to continue to use the library beyond the assigned period, not to exceed normal Mini Law Library hours of operation.

6. Legal reference materials acquired and maintained in the Mini Law Library shall not be circulated and shall remain within the Mini Law Library at all times.

7. The Mini Law Library at each facility shall accommodate and be used by up to two (2) inmates at a time.  Any two (2) inmates may be prohibited from using the Mini Law Library simultaneously if institutional staff determine that such inmates should be kept separate for security reasons.

8. No particular inmate or group of inmates is to be given priority access to the sign-up sheets or to the Mini Law Libraries.  Access to the sign-up sheets and to the Mini Law Libraries will neither be delayed nor withdrawn from any inmate for disciplinary reasons, unless the disciplinary violation is associated with the misuse of the Mini Law Library.

C.    **Comprehensive Paging System**

1. Requests for legal materials shall be made by using the Comprehensive Paging System Request Form (see attachment C). This form can be reproduced by each facility.  The Comprehensive Paging System Request form includes the following:

   a.    space for the inmate to list the name and citation of the material requested (up to six (6) published case opinions per delivery);

---

5 ACA Standard ACI 3-4261; ACI 3-4256

*Access to Provided Legal Services, DC-ADM 007*                                    **Page 6**

    b.   a space for the officer's signature acknowledging receipt of the request;

    c.   a space to record the date of the request;

    d.   a space for the Corrections Librarian or designee's signature acknowledging receipt of the request; and

    e.   a space to record the date on which the material was delivered to the inmate.

2. Comprehensive Paging System Request Forms

The procedure for completing the Comprehensive Paging System Request form is as follows:

    a.   form to be completed by the inmate;

    b.   a copy of the form shall be retained by the inmate for his or her records;

    c.   at the time of delivery of the requested legal materials, the inmate will sign the original form to acknowledge receipt and the date of delivery shall be recorded; and

    d.   the original request form shall be retained by the facility for six (6) month periods for verification purposes of processing the request.

3. Inmates shall be required to use the Comprehensive Paging System and photocopying services provided by the Department to obtain copies of desired legal materials.

4. Photocopies of requests for legal materials initially shall be provided **without charge** to the inmate for a period of up to a month. Thereafter, the inmate must either return the copies to the Corrections Librarian or pay for them at the prevailing photocopying rate for copying documents.

5. Each facility may charge inmates for copies that are returned in a defaced or damaged condition.  Such charge shall be based upon the damage to the copy and shall not exceed total replacement cost. Copies claimed to be lost or stolen from the receiving inmate shall be charged at replacement cost and considered contraband if later found in the possession of any inmate.  The inmate can also be subject to misconduct for the destruction of property if the inmate damages or

10/16/2001  13:39    814-940-5243            SCI H PURCHASING DEP              PAGE  09

refuses to return library materials.  The inmate may be restricted in his/her usage of legal materials upon approval of the Facility Manager or designee.

6.  The Corrections Librarian shall maintain a file of all copied case law, by Reporter, to fill future requests without incurring excessive copying expense.

7.  Each facility shall follow the procedure listed below governing the operation of a Comprehensive Paging System.  The Comprehensive Paging System shall:

    a.  permit inmates, whose library use is restricted to the facility's Mini Law Library, to obtain copies of legal materials from the facility's Main Law Library or the State Law Library;

    b.  include a timely schedule for delivery of requested legal materials (delivery of opinions from the facility's Main Law Library under the Comprehensive Paging System will be made, at a minimum, twice weekly to inmates housed in the restricted housing units);

    c.  permit a maximum of six (6) citations or photocopies thereof, per delivery from the Main Law Library or the State Law Library;

    d.  ensure that copies of opinions will be provided to inmates **without charge** and that inmates will be permitted to retain the photocopy of legal material for a period of up to a month without charge; and

    e.  ensure that local procedure is consistent with Department policy and the procedures set forth and address any other aspect of the Comprehensive Paging System.

D.  **Photocopying Services**

Each facility shall provide on site legal document photocopying services to inmates.  Photocopying services will be available to all inmates at $.10 cents per copy in accordance with Department policy 3.4.5, "Photocopying Charges for Inmates".

E.    **Inmate Access to Staff Paralegal Services**

Each facility will make Staff Paralegal services available to eligible inmates.[6]

1.   Staff Paralegal Responsibilities

Staff Paralegals will meet only with individual eligible inmates and provide assistance:

a.   only within those areas of the facility designated by the facility's local procedure or through videoconference technology (if available);

b.   to assist with legal research, as follows:

(1)   inform the inmate of available methods for informal dispute resolution including the consolidated inmate grievance system;

(2)   provide eligible inmates with citations to procedural rules, statutes, and cases and for instructing designated inmates to provide legal reference assistance to other inmates;

(3)   use oral and written communications with inmates, staff, and others as required;

(4)   with respect to drafting, a Staff Paralegal will assist inmates to prepare documents which are stylistically and grammatically suitable for filing with a state or federal court or administrative agency;

(5)   help inmates to use the law library and explain the proper methods for drafting pleadings and other documents to be filed <u>pro se</u> by inmates with a state or federal court or administrative agency;

(6)   identify procedural forms which will assist the inmate in preparing documents to be filed in cases pending before state or federal courts or administrative agencies;

---

6 ACA Standard ACI 3-4453

(7)  assist inmates in locating mailing addresses for the courts and preparing envelopes for mail;

(8)  read selected and relevant prepared packages of information, inmate required cases or materials, or correspondence or orders from Court verbatim to the inmate.  (The Staff Paralegal shall not translate legal material for non-English speaking inmates.  The facility will provide for non-employee translation services for inmates not proficient in English.); and

(9)  transcribe the inmate's oral statements into documents or forms for the inmate to file in court.  Such transcription services shall not include any **legal advice** (which constitutes the practice of law) to the inmate concerning the content of the filing.  In the event that the inmate seeks to prepare a document that contains threatening or obscene language or otherwise may violate federal, state or local law, the Staff Paralegal shall bring the matter to the attention of his or her supervisor before completing the proposed court document.

c.  The Staff Paralegal shall not engage in providing legal advice (advice regarding the substantive or procedural adequacy of any such pleading or document) or engage in any activity which constitutes the practice of law.

d.  The Staff Paralegal shall refer any matter which the Staff Paralegal determines to be frivolous or unlawful to the Superintendent for review.

e.  The Staff Paralegal shall not provide copies of legal material to inmates.

f.  Upon request by the Librarian, Staff Paralegals may assist in providing instruction to Inmate Legal Reference Aides.

2.  Eligibility requirements for inmates receiving assistance from a Staff Paralegal shall be those inmates who:

a.  are legitimately illiterate (pursuant to the paralegals determination after review of the inmate's DC-15, conducting interviews of the inmate, staff, and/or the inmate's counselor);

b.  are not proficient in English and need translation services (not proficient means lacks the skill or comprehension to speak or understand English in its written or verbal form); or

   c.  have a disability that substantially interferes with their ability to use or understand legal materials as determined by the inmate's initial classification.

3.  Inmate Requests for Staff Paralegal Assistance

Each facility shall follow the procedure listed below to process inmate requests for Staff Paralegal assistance.  Procedure will include:

   a.  the designation of the Corrections Librarian as the contact for all requests for Staff Paralegal assistance;

   b.  use of the DC-135A form, "Inmate's Request to Staff Member" for all inmate requests for Staff Paralegal assistance;

   c.  forwarding requests for Staff Paralegal assistance to the Corrections Librarian;

   d.  the Corrections Librarian will contact the Staff Paralegal assigned to the facility; and

   e.  a notice shall be posted in all Restricted Housing Units (RHU) indicating request forms for Staff Paralegal Assistance shall be provided as needed.

**F.**   **Inmate Legal Reference Aides**

1.  Administrative Considerations

Selection as an Inmate Legal Reference Aide shall be considered a full-time assignment.  The number of Inmate Legal Reference Aides appointed at each institution shall be based upon the following factors:

   a.  the total number of inmates in general population, however, at least one (1) Inmate Legal Reference Aide and one (1) alternate shall be selected for each seven hundred fifty (750) general population inmates;

   b.  the historical usage of the law library;

   c.  the number of hours the law library is open; and

   d.  the amount of space available in the law library.

2.  Selection of Inmates

    Each facility will select and appoint inmates to serve as Inmate Legal Reference Aides.  To be selected as an Inmate Legal Reference Aide, an inmate must meet the following **minimum** criteria:

    a.  have at least two (2) years remaining to the expiration of his/her minimum sentence;

    b.  not been found guilty of any Class I misconduct during the preceding nine (9) months;

    c.  have served at least six (6) months at a state correctional institution except that inmates serving life sentences or sentences longer than ten (10) years must have served at least three (3) years at a state correctional institution;

    d.  hold a high school diploma or GED equivalent;

    e.  display a high school reading level;

    f.  have good communication skills, including good command of the English language, both in terms of reading and vocabulary skills;

    g.  desire to work in the library and have the ability to establish rapport with people;

    h.  have moderate typing skills;

    i.  have the ability to learn the legal collection format and the proper methods of legal research;

    j.  must be designated as custody levels 3 (medium) or lower;

    k.  must be approved by the facility Inmate Program Coordinator; and

    l.  must be approved by the facility Corrections Librarian.

3.  Duties

    The Inmate Legal Reference Aides, under the supervision of the Corrections Librarian, shall:

a.  organize and maintain in proper order and in a neat and clean manner the institutional law library;

b.  complete miscellaneous correspondence related to the institutional law library;

c.  assist the Corrections Librarian in the filing of supplements and updates to the legal collection; and

d.  assist inmates to:

(1)  use legal digests and case reporters to locate relevant Pennsylvania and federal cases;

(2)  use indexes, statutory and regulatory compilations to locate relevant Pennsylvania and federal statutes and regulations;

(3)  locate rules of procedure governing proceedings before Pennsylvania and federal courts and administrative agencies;

(4)  locate forms useful in the preparation of pleadings and other documents to be filed in actions pending before Pennsylvania and federal courts and administrative agencies;

(5)  notify the Corrections Librarian of missing supplements or updates to the legal collection;

(6)  complete logs identifying for whom work was performed, when the work was received, and when a particular project was completed;

(7)  Inmate Legal Reference Aides may not provide legal advice (advice regarding the substantive or procedural adequacy of any such pleading or document) to or draft any document for an inmate.  An Inmate Legal Reference Aide may provide assistance that does not constitute the practice of law to a General Population Inmate in the facility at which both inmates are housed.  Inmates in an RHU, SMU, SAU or Capital Case Unit shall not receive assistance from Inmate Legal Reference Aides; and

(8)  Inmate Legal Reference Aides will not work on personal legal matters while on duty.  Personal legal matters must be completed as a patron of the library on the inmate's personal time.

4. Training

   The Department will provide or arrange for each Inmate Legal
   Reference Aide to receive instruction from the Staff Paralegals to
   perform the duties listed in Section VI (F)(3). Instruction may be
   offered in:

   a. the distinction between legal assistance and legal advice;

   b. proper abbreviations and citations;

   c. use of statutory sources (federal and state);

   d. use of case law sources (federal and state);

   e. use of any secondary authority sources available in the library;

   f. use of Shepard's (federal and state citations) if available in the
      library; and

   g. proper supplementation and maintenance of the legal collection.

5. Compensation for Inmate Legal Reference Aides

   Initially, Inmate Legal Reference Aides will be compensated at Class
   II, Step A of the DC-ADM 816, "Inmate Compensation System".
   Following an orientation period conducted by the Corrections
   Librarian, the compensation of an Inmate Legal Reference Aide may
   be increased to Class III, Step A. After being placed on Class III, Step
   A, an Inmate Legal Reference Aide may get raises in accordance with
   DC-ADM 816, at appropriate intervals.

6. Termination of Inmate Legal Reference Aide Assignment

   An inmate may be removed from his/her assignment as an Inmate
   Legal Reference Aide for inadequate performance by the
   Superintendent upon request from the Corrections Librarian or through
   a misconduct proceeding.

G.    **Non-English Speaking Inmates**

1.  The Department will make reasonable efforts to provide non-employee translation services for non-English speaking inmates for the purposes of:

    a.  communicating with the Corrections Librarian, Staff Paralegal, or Inmate Legal Reference Aides;

    b.  translating (orally or in writing) legal materials or court documents; and

    c.  transcribing into English, documents prepared for submission to court.

2.  Non-employee translator services are limited to the purposes set forth above and do not extend beyond those translator services available in the surrounding community.

3.  Translator services will only be available for on-site services and will not be available for any reason when inmates are away from the facility.

H.    **Notary Services**

If an inmate is required to have legal documentation notarized, the Notary at each facility will provide the requested service without charge to the inmate.

I.    **Inmates Transferred Out-of-State**

Requests for Pennsylvania legal materials received from inmates who have been transferred out-of-state pursuant to an Interstate Corrections Compact will be referred to the librarian at the inmate's last DOC institution. The institution will be responsible for copying the requested material and forwarding it to the law librarian at the out-of-state institution where the inmate is confined. Inmate Legal Reference Aids may perform the necessary copying operation.

VII.    **SUSPENSION DURING AN EMERGENCY**

In an emergency or extended disruption of normal institution operation, any provision or section of this policy may be suspended upon approval of the Secretary of Corrections.

## VIII.  RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual.  This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

## IX.  RELEASE OF INFORMATION and DISSEMINATION of POLICY

### A.  Release of Information

#### 1.  Policy

This policy document is public information and may be released to members of the public, staff, legislative, judicial, law enforcement and correctional agencies and/or inmates upon request.

#### 2.  Procedure Manual (if applicable)

The procedure manual for this policy is <u>not public information</u> and shall not be released in its entirety or in part, without the prior approval of the Secretary of Corrections or designee.  This manual or parts thereof, may be released to any Department of Corrections employee on an as needed basis.

### B.  Distribution of Policy

#### 1.  General Distribution

The Department of Corrections' policy and procedure manuals (when applicable) shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis.  Distribution to other individuals and/or agencies is subject to the approval of the Secretary of Corrections or designee.

#### 2.  Distribution to Staff

It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures.

*Access to Provided Legal Services, DC-ADM 007*                                    **Page 16**

X.    **SUPERSEDED POLICY and CROSS-REFERENCES**

A.    **Superseded Policy**

1.    **Department Policy**

This document supersedes the previous policy on this subject 7.6.7 issued August 25, 1995 by Secretary Martin F. Horn.

This document supersedes the policy on "Legal Reference Aides", 7.6.5, issued August 25, 1995 by Secretary Martin F. Horn.

2.    **Facility Policy**

This document supersedes all facility policy and procedures on this subject.

B.    **Cross References**

1.    **Administrative Manuals**

a.    DC-ADM 801  Disciplinary Custody Procedures

b.    DC-ADM 802  Administrative Custody Procedures

c.    DC-ADM 804  Consolidated Inmate Grievance Review System

d.    DC-ADM 816  Inmate Compensation System

e.    3.4.5,  Photocopying Charges for Inmates

2.    **Accreditation Standards**

a.    Administration of Correctional Agencies:  2-CO-5F-01

b.    Adult Correctional Institutions: 3-4261, 3-4262, 3-4294, 3-4265, 3-4256, 3-4450; 3-4453

c.    Adult Community Residential Services:  None

d.    Adult Correctional Boot Camp Programs:  1-ABC-5E-01, 1-ABC-5E-02, 1-ABC-5E-03; 1-ABC-3D-03

e.    Correctional Training Academies: None.

Access to Provided Legal Services DC-ADM 007                              Attachment A

### LEGAL REFERENCE MATERIALS
### MAIN LAW LIBRARY

1. United States Supreme Court cases for last 20 years

2. Federal Reporter and Federal Supplement for last 20 years

3. Pennsylvania Reporter for past 20 years (A.2d)

4. United Statutes Annotated – Titles 18, 28 §§2241-2255, 42 §§1981-1985

5. Purdon's Pennsylvania Statutes Annotated – Titles 18, 35, 42, 61

6. Pennsylvania Rules of Court - Federal and State (West)

7. Federal Civil Judicial Procedure in Rules (West)

8. Federal Practice Digest Volumes on Constitutional Law and Habeas Corpus

9. Pennsylvania Digest Volumes on Criminal Law and the Table of Cases

10. Pennsylvania and United States Constitution

11. Law Dictionary

12. Sample forms for:  PCRA, Federal Habeas Corpus, Federal Civil Rights, Commonwealth Court  and County Courts

13. List of addresses to request legal forms not readily available in the library

14. Other relevant legal materials as determined by the Corrections Librarian

Access to Provided Legal Services DC-ADM 007

Attachment B

## LEGAL REFERENCE MATERIALS
## MINI LAW LIBRARY

1. Purdon's Pennsylvania Statutes Annotated – Titles 18, 35, 42, 61

2. Pennsylvania Rules of Court - Federal and State (West)

3. Federal Civil Judicial Procedure in Rules (West)

4. Federal Practice Digest Volumes on Constitutional Law and Habeas Corpus

5. Pennsylvania Digest Volumes on Criminal Law  and the Table of Cases

6. Pennsylvania and United States Constitution

7. Law Dictionary

8. Forms to file actions regarding PCRA, Federal Habeas Corpus, and Federal Civil Rights.  Forms to file actions in Pennsylvania Commonwealth Court and County Courts.

9. List of addresses to request legal forms not readily available in the library

10. Other relevant legal materials as determined by the Corrections Librarian

DC-ADM 007 Access to Provided Legal Services                Attachment C

| DC-133 | |
|---|---|
| **COMPREHENSIVE PAGING SYSTEM REQUEST FORM** | **COMMONWEALTH OF PENNSYLVANIA**<br>**DEPARTMENT OF CORRECTIONS** |

Inmate Name:

Inmate Number:                                                            DATE:

Items Requested:

_____

_____

_____

_____

_____

_____

_____

_____

_____

RECEIVED BY:                                          DATE:

_____            _____
PRINT STAFF MEMBER NAME                     SIGNATURE

CORRECTION'S LIBRARIAN                                 DATE:

_____            _____
PRINT CORRECTION'S LIBRARIAN NAME           SIGNATURE

MATERIALS DELIVERED ON                                DATE:

_____            _____
INMATE NAME                                 SIGNATURE

SIGNED ORIGINAL TO CORRECTIONS LIBRARIAN    ·    COPY TO INMATE

**EXHIBIT "B"**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,          :
     Plaintiff         :
                       :
     v.                :     No. 1:00-CV-00577
                       :     (Judge Kane)
W. CONWAY BUSHEY, et al.,  :
     Defendants    :

## UNSWORN DECLARATION OF ESTHER MILLER

I, **ESTHER MILLER**, hereby declare under the penalty of perjury, that the following is true and correct, based upon my personal knowledge.

1.    I am currently employed by the Pennsylvania Department of Corrections ("DOC") as the   Infection Control Nurse at the State Correctional Institution at Huntingdon, Pennsylvania ("SCI-Huntingdon").   I have been employed in this position since 1994, and have been  employed at SCI-Huntingdon for seventeen years.

2.    In that capacity,  I am familiar with the medical policies and procedures followed at SCI-Huntingdon and the DOC.   In addition, I am familiar with and have access to the medical records of inmates maintained by the institution in the course of regularly conducted business.

3.    Pursuant to a request from Maryanne M. Lewis, Deputy Attorney

General, I reviewed the medical record of inmate Charles Iseley, AM-9320.

According to Iseley's medical records, he has refused protocol treatment for

Hepatitis C.

4.    In addition, I noted that Iseley was seen by the institution's physician

assistant on October 18, 2001.  The reason Iseley sought medical treatment was

for asthma, and did not make any complaints or mention any other ailments. Iseley

previous medical call was on September 29, 2001, and he once again complained

about his asthma.  During this medical call, Iseley did not make any complaints

concerning Hepatitis, or any other medical problem.

MED DEPT SCI-H          TEL:814-941-6811          Oct 19'01   12:02 No.001 P.04

*19 October 2001*

**DATE**

*Esther Miller*

**ESTHER MILLER**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES ISELEY,          :

     Plaintiff        :

     v.                 :     No. 1:00-CV-00577
                        :     (Judge Kane)

W. CONWAY BUSHEY, et al.,   :

     Defendants     :

### CERTIFICATE OF SERVICE

I, Maryanne M. Lewis, Deputy Attorney General, hereby certify that on this date I caused to be served the foregoing Defendants' Opposition to Plaintiff's Motion for Enlargement of Time, by depositing a copy of the same in the United States mail, postage prepaid, in Harrisburg, PA., addressed to the following:

Charles Iseley, #AM-9320
SCI-Huntingdon
1100 Pike St.
Huntingdon, PA 16654

 

 

**MARYANNE M. LEWIS**
**DEPUTY ATTORNEY GENERAL**

**DATE: October 19, 2001**